**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: Unassigned**

SEKO CUSTOMS BROKERAGE, INC.,
                              *Plaintiff,*
        v.

UNITED STATES,
                              *Defendant.*

**Court No.  24-cv-00097**

**NON-CONFIDENTIAL**

## COMPLAINT

Plaintiff SEKO Customs Brokerage, Inc. ("Plaintiff" or "SEKO"), by and through its undersigned attorneys, alleges and states for its complaint as follows:

## JURISDICTION

1.      This case involves United States Customs and Border Protection's ("Defendant'" or "CBP") unlawful suspension of Plaintiff's membership in the Automated Commercial Environment Entry Type 86 Test ("T86") and Customs-Trade Partnership Against Terrorism ("CTPAT") programs. Specifically, Defendant's actions have violated Plaintiff's Fifth Amendment Due Process Rights and the procedural protections put in place by Sections 558(c) and 706 of the Administrative Procedure Act ("APA"). Thus, because this case involves CBP's actions as they relate to violations of the Constitution and the APA, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i). *See United States Auto Parts Network, Inc. v. United States*, 319 F. Supp. 3d 1303 (Ct. Int'l Trade 2018); *Pillsbury Co. v. United States*, 18 F. Supp. 2d 1034 (Ct. Int'l Trade 1998); *see also Gallagher & Ascher Co. v. Simon*, 687 F.2d 1067 (7th Cir. 1982).

2.    This Court also has the authority to grant declaratory judgment pursuant to 28 U.S.C. §§ 2201–02.

## NATURE OF ACTION

3.    This is a civil action seeking immediate declaratory and injunctive relief to rescind SEKO's suspension from the Automated Commercial Environment Entry Type 86 Test ("T86") and Customs-Trade Partnership Against Terrorism ("CTPAT") programs by Defendant, United Stated Customs and Border Protection ("Defendant" or "CBP") and fully reinstate SEKO in the T86 and CTPAT programs.

4.    CBP's actions exceeded its authority and violated the Administrative Procedure Act ("APA") and the Fifth Amendment of the United States Constitution by and through the agency's decision to suspend SEKO from the T86 and CTPAT programs without providing the specific transactions and specific underlying facts used to identify alleged entry violations. *See Royal Brush Mfg. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023).

5.    CBP's actions have caused irreparable harm to SEKO's business reputation, goodwill, and imminent loss of business due to failure to comply with contractual obligations to provide T86 entry services.

### I.    Section 321 Entries

6.    Section 321(a)(2)(C) of the Tariff Act of 1930 (19 U.S.C. § 1321(a)(2)(C)), as amended by the Trade Facilitation and Trade Enforcement Act of 2015 ("TFTEA"), Section 901, Public Law 114–125, 130 Stat. 122 (19 U.S.C. § 4301 note), authorizes CBP to provide an administrative exemption to admit free from duty and any tax imposed on or by reason of importation, shipments of merchandise (other than bona-fide gifts and certain personal and household goods) imported by

one person on one day having an aggregate fair retail value in the country of shipment of not more than $800. The regulations issued under the authority of Section 321(a)(2)(C) are set forth in Sections 10.151 and 10.153 of Title 19 of the Code of Federal Regulations ("C.F.R") (19 C.F.R. §§ 10.151 and 10.153).

7.    This exemption is known as a "*de minimis*" or "Section 321" entry. *See* CBP, *Section 321 Programs*, CBP Publication No. 0941-0919, available at https://www.cbp.gov/sites/default/files/assets/documents/2020-Aug/Section-321-Data-Pilot-vs-Entry-Type-86-Test_v1-1.pdf (last visited May 29, 2024). CBP has created Section 321 programs to facilitate further monitoring and protection against illegitimate trade while providing the public the benefits of duty-free shipments for qualified imports.

8.    Customs entries for *de minimis* value shipments are generally entered in one of two ways – via "release from manifest" (also known as "manifest entries") or T86 entry. *See Test Concerning Entry of Section 321 Low-Value Shipments Through the Automated Commercial Environment (ACE) (Also Known as Entry Type 86); Republication With Modifications*, 89 Fed. Reg. 2630 (January 16, 2024) ("*T86 Modification Notice*"); *see also* 19 C.F.R. § 10.151. No electronic entry data is provided under a manifest entry. Manifest entries may be entered by presenting the bill of lading or a manifest listing each bill of lading to CBP. *See T86 Modification Notice*, at 2631; 19 C.F.R. § 143.23(j)(3). As such, manifest entries are then released by CBP based only on the information provided on these documents, which must only include the following on the documents:

     (1)    the country of origin of the merchandise;
     (2)    shipper name, address and country;
     (3)    ultimate consignee name and address;
     (4)    specific description of the merchandise;
     (5)    quantity;
     (6)    shipping weight; and

(7)    value.

*See* 19 C.F.R. §§ 143.23(k) and 128.21(a). Thus, for instance, no Harmonized Tariff Schedule of the United States classification is required.

9.    Alternatively, T86 entry filings require that additional data elements be provided to CBP electronically in order to provide the agency with greater visibility into the imported merchandise while "enhance[ing CBP's] targeting capabilities":

(1)    the bill of lading or the air waybill number;
(2)    entry number;
(3)    planned port of entry;
(4)    shipper name, address, and country;
(5)    consignee name and address;
(6)    country of origin;
(7)    quantity;
(8)    fair retail value in the country of shipment;
(9)    10-digit HTSUS number;
(10)   IOR number of the owner, purchaser, or broker when designated by a consignee (conditional).

*See T86 Modification Notice*, at 2633.

## II.    T86 Program Membership

10.    On August 13, 2019, CBP published a notice in the Federal Register introducing the T86 program. *See Test Concerning Entry of Section 321 Low-Valued Shipments Through Automated Commercial Environment (ACE)*, 84 Fed. Reg. 40079 (August 13, 2019) ("*T86 Initiating Notice*"); *see also T86 Modification Notice*.

11.    The T86 program was created to test the risk segmentation benefits of accepting advance data from e-commerce supply chain partners, as well as provide both CBP and the U.S. consumer more data and transparency on certain data elements for imported goods. *See* CBP Media Release, *CBP Expands 321 Data Pilot Participation* (February 16, 2023), available at

4

https://www.cbp.gov/newsroom/national-media-release/cbp-expands-321-data-pilot-participation; *see also Section 321 Programs*.

12.     CBP intended for the Type 86 program to provide for more efficient entry and release process for Section 321 shipments, including those shipments subject to Partner Government Agency ("PGA") data requirements, and expedite the clearance of compliant Section 321 shipments into the U.S. through the use of CBP's ACE system. *See T86 Initiating Notice* at 40080.

13.     When filing a T86 entry, the importing party is exempt from duties and payment of the harbor maintenance tax and merchandise processing fee for merchandise released as a Section 321 low-valued shipment. *See* 19 C.F.R. §§ 24.23(c)(1)(v) and 24.24(d)(3); *T86 Initiating Notice* at 40081; *see also* CBP, *E-Commerce Frequently Asked* Questions (May 21, 2024), available at https://www.cbp.gov/trade/basic-import-export/e-commerce/faqs.

14.     Due to improved entry filing efficiency, visibility, and speed, participation in the T86 program has become a de facto industry standard for customs brokers with clients in e-commerce.

        **III.     CTPAT Membership**

15.     The CTPAT program, codified in the Security and Accountability for Every Port Act ("SAFE Port Act") of 2006, Public Law 109-347, 120 Stat. 1884 (6 U.S.C. § 961 et seq.), is a public-private partnership in which CBP and members of the trade community work together to secure and facilitate the movement of legitimate trade. CTPAT participants are considered low-risk by CBP, which expedites cargo clearance based on the company's security profile and compliance history. *See* H.R. Conf. Rpt. No. 114-376, at 157 (2015); *see also* CBP, *Customs-Trade Partnership Against Terrorism (C-TPAT) Fact Sheet*, May 2013, available at https://www.cbp.gov/sites/default/files/documents/ctpat_factsheet_2.pdf; CBP, *CTPAT Trade Compliance Handbook*, September 2023, at 6, available at

https://www.cbp.gov/sites/default/files/assets/documents/2023-

Sep/Handbook%204.0%20September%202023%20%28508%29_0.pdf.

16.     CTPAT participation requires members to meet and maintain rigorous industry-specific

security requirements developed in close collaboration with CBP. Compliant members enjoy

various entry filing-related benefits, such as eligibility for U.S. Government pilot programs like

the T86 program. *See* CBP, *CTPAT Trade Compliance Handbook*, Vol. 4 (Sep. 19, 2023); CBP,

*CTPAT Minimum Security Criteria – U.S. Customs Brokers*, CBP Publication No. EO13891-

OFO-115 (May 12, 2022); CBP, *CTPAT: Customs Trade Partnership Against Terrorism* (May 13,

2024), https://www.cbp.gov/border-security/ports-entry/cargo-security/CTPAT.

17.     Similar to the T86 program, participation in the CTPAT program has become a necessity

for customs brokers to stay competitive in the industry as the program's benefits have evolved into

clients' expected minimal level of service.

#### IV.     APA Procedural Safeguards

18.     The Administrative Procedure Act ("APA"), as provided for under *inter alia* 5 U.S.C. §§

551-559 and 701-706, grants a right of review to "[a] person suffering legal wrong because of

agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702.

19.     The APA sets forth the definition of a license and establishes the parameters within which

an agency may grant and suspend or revoke licenses, grants, or forms of permission. 5 U.S.C. §

558(c). *See also Gallagher & Ascher Co. v. Simon*, 687 F.2d 1067 (7th Cir. 1982). Suspension or

revocation of such a license, grant, or permission is lawful only if, before the institution of agency

proceedings therefor, the licensee has been given notice by the agency in writing of the facts or

conduct which may warrant action and opportunity to demonstrate or achieve compliance with all

lawful requirements. 5 U.S.C. § 558(c).

20.     Under the APA, the "Second Chance" doctrine of Section 558(c) obligates CBP, before suspending a license or grant to file a specific type of entry, to provide the customs broker advance written notice of "the facts or conduct which may warrant the action" as well as an "opportunity to demonstrate or achieve compliance with all lawful requirements." *See Gallagher*, 687 F.2d at 1075.

21.     Further, by statute, the Court must set aside actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency action is arbitrary and capricious if: the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

## **FACTUAL BACKGROUND**

### I.     **Parties**

#### A.     **Plaintiff – SEKO Customs Brokerage, Inc.**

22.     Plaintiff SEKO is a privately held corporation organized and existing under the laws of the state of Illinois, with its principal place of business at 1501 East Woodfield Road Suite 210E Schaumburg IL, 60173.

23.     SEKO provides comprehensive customs brokerage with full customs clearance and entry services, including express e-commerce shipping solutions. As a well-established nationwide customs broker, SEKO has become a leader in the industry through its provision of T86 entries for major e-commerce clients.

24.    SEKO offers T86 services to a wide range of online retail clients engaged in e-commerce, including, [██████████████████], among others.

25.    SEKO is the real party in interest and has standing to bring this action.

### B.    Defendant – United States Customs and Border Protection

26.    CBP, a sub-agency housed under the Department of Homeland Security, has a statutory responsibility to administer import entry filing and cargo security statutes, regulations, and proposed procedures throughout the United States.

27.    As noted above, CBP is provided this authority through the TFTEA and the SAFE Port Act. *See* 19 U.S.C. § 1321; 19 U.S.C. § 4301; 6 U.S.C. § 961 et seq.; *see also* 19 C.F.R. § 101.9(a); *T86 Modification Notice* at 2632.

### II.    SEKO's CTPAT Suspension

28.    Since the inception of the CTPAT program, SEKO was certified by CBP to become a CTPAT participant.

29.    On May 17, 2024, SEKO received a letter from CBP stating that SEKO's participation in the CTPAT program was to be suspended with immediate effect.

30.    In the CTPAT Suspension Letter, CBP refers to alleged T86 entry filing violations as the basis for SEKO's suspension from the program. However, CBP failed to further identify which specific T86 entries contained the alleged violations, as well as which violations had in fact occurred. *See* CTPAT Suspension Letter (attached hereto as Exhibit A).

31.    On May 24, 2024, SEKO submitted a letter in response to CBP's intended CTPAT program suspension, which also included a response to CBP's intended suspension of SEKO from the T86 program. *See* SEKO T86 and CTPAT Suspension Response Letter (attached hereto as Exhibit B). In that letter, SEKO requested all information concerning the specific violations leading to CBP's

suspension of SEKO's participation in the CTPAT program. SEKO additionally requested an immediate delay in its suspension from the CTPAT program until CBP submits to SEKO all information regarding the specific allegedly violating T86 entries and an opportunity to review CBP's findings. As of the filing of this Complaint, CBP has not substantively responded to SEKO's request.

### III.    SEKO's T86 Suspension

32.    Since the inception of the T86 program in 2019, SEKO has been an active participant along with other major customs brokers with clients in the e-commerce industry., such as Amazon, eBay, Zulily, FedEx, DHL, and UPS. *See* CBP, *CBP Expands 321 Data Pilot Participation* (February 16, 2023).

33.    In 2019, SEKO was granted permission by CBP to begin filing T86 entries.

34.    During this time, SEKO collaborated extensively with CBP in order to align its business processes and entry submission systems to facilitate the T86 entry process. In so doing, SEKO invested substantial amounts in software costs and internal information technology team labor. Further, the increased volume of entries to process under the T86 program has since required SEKO to hire additional personnel[███████████████████████████████].

35.    From January, 2019, through April, 2024, SEKO has filed on average approximately [██████████████████████████].

36.    On July 17, 2023, CBP initiated its first T86 entry audit and made its first judgement sample request. *See* CBP First Judgement Sample Request (attached hereto as Exhibit C). CBP identified ten T86 entries which CBP stated "may or may not have been filed in accordance" with the T86 requirements. As such, CBP requested pertinent entry documentation associated with the following entries:

(1)    N4H85303461;
(2)    N4H85303404;
(3)    N4H03928382;
(4)    N4H03928390;
(5)    N4H98661178;
(6)    N4H98660907;
(7)    N4H98661046;
(8)    N4H98661442;
(9)    N4H98661111; and
(10)   N4H98660345.

37.    On September 29, 2023, CBP notified SEKO that the agency had detected "significant non-compliant" filings from its first judgement sample review of the ten Type 86 entries listed in the CBP First Request. *See* CBP First Violation Letter (attached hereto as Exhibit D). In an attempt to identify the alleged violations, CBP only cited to an undefined number of T86 entries [███████ ███████████████████████████████████████████████████████████].

38.    However, similar to CBP's conclusory statements in the CTPAT Suspension Letter, CBP failed to provide a report of its judgement sample review indicating which entry filing violation correlated to which T86 entry. Specifically, at no point in the CBP First Violation Letter did CBP identify the specific underlying facts used to determine an entry filing violation had occurred.

39.    On October 24, 2023, SEKO submitted its response, in which it outlined a detailed remedial action plan for some of the general allegations asserted:



███████████████████████████████████████

████████████████████ ].

*See* SEKO Response to CBP First Violation Letter (attached hereto as Exhibit E).

40.    CBP provided no further communication in response to the Initial SEKO Response Letter or SEKO's proposed remedial action plan.

41.    On January 22, 2024, CBP requested entry documentation for an additional ten Entry Type 86 entries to review a second judgement sample. *See* CBP Second Judgement Sample Request (attached hereto as Exhibit F). For this request, CBP selected the following entries:

(1)    N4H20885799;
(2)    N4H20909458;
(3)    N4H20885518;
(4)    N4H20888157;
(5)    N4H20888223;
(6)    N4H20888744;
(7)    N4H20888934;
(8)    N4H20889411;
(9)    N4H20888017; and
(10)   N4H20888405.

42.    On January 30, 2024, SEKO issued its response, in which it provided CBP with the specific entry documentation requested. After submitting its response, SEKO received no further correspondence from CBP regarding any specific filing deficiencies with the entries part of the second judgement sample.

43.    To date, SEKO has not received an audit report from CBP concerning either judgement sample.

44.    On May 20, 2024, SEKO received a letter from CBP stating that SEKO's participation in the T86 program was to be suspended as a result of [███████████████████████████

████████████████████ ]. *See* T86 Suspension Letter (attached hereto as Exhibit G). CBP's suspension of SEKO's T86 participation was scheduled to take effect on May

27, 2024. *Id.* Again, as with the CTPAT Suspension Letter, at no point in the T86 Suspension Letter did CBP correlate the alleged filing violations with the entries in either the first or second judgement samples, much less provide any results from CBP's judgement sample reviews indicating the specific facts used to determine that a violation had occurred with a specific entry. *Id.*; Exhibit A.

45.    Without an audit report or further information as to CBP's specific findings, CBP withheld facts used to make a determination in the administrative proceeding which led to SEKO's suspension from the Entry Type 86 and CTPAT programs.

46.    On May 21, 2024, one day after receiving its T86 Suspension Letter, SEKO received a notification from its online retailer customer, [███████], stating that CBP had made public an internal memo, in which SEKO was listed as a customs broker who would be prohibited from filing T86 customs entries beginning May 30, 2024. *See* [████████████] (attached hereto as Exhibit H). This indication from a client evidenced that CBP's anticipated suspension of SEKO's participation in the T86 and CTPAT programs was already in the public domain; as such, SEKO's reputation as a leader in the e-commerce industry had already been unlawfully harmed.

47.    On May 24, 2024, SEKO submitted a letter in response to CBP's intended T86 program suspension, which, as noted above, also included a response to CBP's intended suspension of SEKO participation in the CTPAT program. *See* Exhibit B. In that letter, SEKO requested all information concerning the specific violations upon which CBP based its determination to suspend SEKO from the T86 program, as well as the CTPAT program, and request that suspension be rescinded. To date, CBP has not substantively responded to SEKO's request.

48.    CBP's suspension of SEKO's participation in the T86 and CTPAT programs has already caused drastic harm to SEKO's business reputation and caused adverse unfounded speculation as

to its trade compliance performance without even a specific entry violation asserted by the agency. Regardless of the substantial investments lost in initial software and personnel that were committed to T86 processes in order to adhere to the filing requirements put forth by CBP, SEKO also now faces significant monetary losses by and through its inability to compete in the marketplace and being required to invest in alternative entry processes until its suspension from the T86 program is lifted.

49.     On May 29, 2024, the anticipated substantial harm to SEKO's business reputation came to fruition. Despite the lack of any official publication from CBP between [████] May 21 notification and May 29 identifying SEKO's suspension from the T86 and CTPAT programs, SEKO has evidence that a substantial number of Section 321 shipments have been lost to competing customs brokers who are still eligible to Participate in the T86 program.

50.     On May 29, 2024, SEKO submitted to CBP a draft copy of this Complaint and renewed its request for CBP to rescind the T86 and CTPAT suspension letters and provide details concerning the alleged violations underlying these suspensions. SEKO indicated it would file for injunctive relief with this Court on Friday, May 31, 2024, unless these actions were taken.

51.     On May 31, 2024, at 7:03 PM EST, CBP provided two letters alleging to provide SEKO with "conditional reinstatement" into the T86 and CTPAT programs provided the company agrees to implement remedial action plans. *See* CBP's Conditional Reinstatement Letters (attached hereto as Exhibit I). However, this demand was made without any indications as to the specific violations leading to the initial suspensions in the first place.

52.     CBP's May 31, 2024, letter concerning the T86 "conditional reinstatement" makes reference to a future CBP determination as to whether SEKO may "fully resume" participation in the T86 program at some later date to be determined, leaving unclear whether the company can

immediately resume T86 filings. The letter also indicates that CBP will provide a "date for reinstatement" at some later date.

53. CBP's May 31, 2024, letter concerning the T86 "conditional reinstatement" also recommends that SEKO identify "bad actors in the supply chain" as part of its future remedial action plan, however, CBP fails to identify any violations which would allow SEKO any meaningful way to determine which shippers or importers it should offer T86 services to if reinstated based on the violations alleged.

**COUNT I**
**VIOLATION OF APA 5 U.S.C. § 706(2)(A)**

54. SEKO realleges and incorporates by reference the preceding paragraphs of this Complaint, as if set forth fully herein.

55. Under the APA, 5 U.S.C. § 706(2)(A), this Court is required to hold unlawful and set aside any agency action that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." An agency's action is arbitrary and capricious if it is unsupported by substantial evidence or if the decision is contrary to the law.

56. CBP arbitrarily alleged T86 entry filing violations in its CTPAT Suspension Letter (issued on May 17, 2024), T86 Suspension Letter (issued on May 20, 2024), and CBP's Conditional Reinstatement Letters (issued on May 31, 2024). CBP provided insufficient notice and opportunity to SEKO outside of outside of generalized and terse statements in the letters identifying SEKO's alleged violations and suspension.

57. Finally, CBP is required to provide sufficient information as to the basis for its decisions to suspend SEKO from the T86 and CTPAT programs. However, no such information was provided other than generalized statements that a specific number of T86 entries filed by SEKO

included "violations." CBP's resulting decisions to suspend SEKO's membership in the T86 and CTPAT programs were therefore arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Therefore, CBP's actions are in violation of APA § 706(2)(A) and must be reversed.

**COUNT II**
**VIOLATION OF APA 5 U.S.C. §§ 558(c) and 706(2)(C)**

58.    SEKO realleges and incorporates by reference the preceding paragraphs of this Complaint, as if set forth fully herein.

59.    Under the APA, 5 U.S.C. § 706(2)(C), this Court is required to hold unlawful and set aside any agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

60.    Under the APA, 5 U.S.C. § 706(2)(C), this Court is required to hold unlawful and set aside any agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

61.    Further, pursuant to 5 U.S.C. § 558(c), the second chance doctrine of the same statute requires CBP provide advance written notice of the facts or conduct which may warrant the action as well as an opportunity to demonstrate or achieve compliance with all lawful requirements. *See Gallagher*, 687 F.2d at 1073.

62.    SEKO has a statutory right under the APA to an opportunity to refute the allegations made using the evidence upon which CBP based its conclusions. However, CBP failed to provide such evidence, i.e. identification of the specific T86 entry filing violations associated with each allegedly violating entry, on four separate occasions: (1) after review of the first judgement sample; (2) after review of the second judgement sample; (3) after SEKO's request for the identifying

15

information in the SEKO T86 and CTPAT Suspension Response Letter; and (4) after CBP's issuance of its Conditional Reinstatement Letters.

63.     As such, said agency action is required to be set aside.

## COUNT III
### Violation of Fifth Amendment Due Process Rights

64.     SEKO realleges and incorporates by reference the preceding paragraphs of this Complaint, as if set forth fully herein.

65.     The Fifth Amendment of the United States Constitution guarantees that no person shall be deprived of "life, liberty, or property" without the due process of law. Any action taken by the United States with respect to "persons" must comport with fundamental fairness. SEKO is a "person" within the meaning of the Due Process clause.

66.     CBP has violated SEKO's Due Process rights by failing to provide the specific results of the two judgement sample reviews and the underlying facts upon which CBP based its entry filing violation allegations. Furthermore, CBP's failure to respond to SEKO's remedial action plan or provide SEKO with an opportunity to discuss with CBP also constituted a clear violation of SEKO's Due Process rights. *See Royal Brush Mfg. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023).

67.     Accordingly, CBP's suspension of SEKO's participation in the T86 and CTPAT programs and conditional reinstatement are fundamentally unfair and a violation of the Due Process Claus of the Amendment of the United States Constitution.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in its favor, as follows:

(a)    entering temporary and preliminary relief pending final resolution of this action, SEKO having no adequate remedy at law and suffering irreparable injury;

(b)    entering a temporary restraining order and preliminary injunction, SEKO having no adequate remedy at law and suffering irreparable injury as a result of the unlawful, unconstitutional suspension of SEKO's membership in the T86 and CTPAT programs;

(c)    fully reinstating SEKO into the T86 and CTPAT programs;

(d)    enjoining CBP from making public disclosures and/or providing this information to anyone other than Plaintiff or Defendant;

(e)    requiring CBP to provide SEKO with a detail audit report specifying the alleged T86 entry filing violations committed by SEKO;

(f)    awarding SEKO its reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

(g)    granting such other additional relief as this honorable Court deems just and appropriate.

Respectfully submitted,

Dated:    June 1, 2024

Eric R. Rock, Attorney

Serhiy Kiyasov, Attorney
Austin J. Eighan, Attorney
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For SEKO Customs Brokerage, Inc.*

17

## CERTIFICATE OF SERVICE

Pursuant to U.S. Court of International Trade Rules 4(b), 4(h), and 5, I, Eric R. Rock, one of the attorneys for the Plaintiff, certify that a copy of the Summons, Complaint and the corresponding Exhibits were served on all parties by certified mail, return receipt requested, this Saturday, June 1, 2024, addressed to each party or its attorney of record at the address(es) listed below.

Justin R. Miller
Attorney in Charge
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza – Room 346
New York, New York 10278

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania
Ave., NW Washington,
DC 20229

Respectfully submitted,

Eric R. Rock, Attorney

Dated: ___June 1, 2024___

Serhiy Kiyasov
Austin J. Eighan
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff SEKO Customs Brokerage, Inc.*

18

**TABLE OF EXHIBITS TO COMPLAINT**

| Exhibit | Description |
|---------|-------------|
| A | CTPAT Suspension Letter |
| B | SEKO T86 and CTPAT Suspension Response Letter |
| C | CBP First Judgement Sample Request |
| D | CBP First Violation Letter |
| E | SEKO Response to CBP First Violation Letter |
| F | CBP Second Judgement Sample Request |
| G | T86 Suspension Letter |
| H | [█████████] |
| I | CBP's Conditional Reinstatement Letters |

# Exhibit A



1300 Pennsylvania Avenue, NW
Washington, DC 20229

U.S. Customs and
Border Protection





# Exhibit B

# ROCK

**ROCK TRADE LAW LLC**
134 N. LaSalle St., Suite 1800
Chicago, IL  60602
(312) 824-6190 tel
(312) 824-6191 direct

Eric R. Rock
erock@rocktradelaw.com



**Re:     Entry Type 86 and CTPAT Participation Suspension, SEKO Customs Brokerage, Inc.**







May 23, 2024
P a g e  | **4**





# Exhibit C

1300 Pennsylvania Avenue, NW
Washington, DC 20229


**U.S. Customs and Border Protection**



# Exhibit D

1300 Pennsylvania Avenue, NW
Washington, DC 20229





# Exhibit E



























# Exhibit F

477 Michigan Avenue, Suite 200
Detroit, MI 48226



U.S. Customs and
Border Protection





# Exhibit G



1300 Pennsylvania Avenue, NW
Washington, DC 20229

**U.S. Customs and
Border Protection**



# Exhibit H

# Exhibit I

1300 Pennsylvania Avenue, NW
Washington, DC 20229



**U.S. Customs and
Border Protection**







1300 Pennsylvania Avenue, NW
Washington, DC 20229

U.S. Customs and
Border Protection



