**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: Unassigned**

SEKO CUSTOMS BROKERAGE, INC.,
                                    *Plaintiff,*
                    v.

UNITED STATES,
                                    *Defendant.*

**Court No.  24-cv-00097**

**NON-CONFIDENTIAL**

## <u>PROPOSED ORDER</u>

Upon consideration of Plaintiff's Application for Temporary Restraining Order and

Motion for Preliminary Injunction, and all of the pleadings and papers on file herein, and after

due deliberation, it is hereby —

**ORDERED** that Plaintiff's Application for Temporary Restraining Order is granted; and

it is further

**ORDERED** that Plaintiff's Motion for Preliminary Injunction is granted; and it is further

**ORDERED** that Plaintiff's ongoing suspension in the T86 and CTPAT programs is

rescinded and that Plaintiff is fully reinstated in the T86 and CTPAT programs; and it is further

**ORDERED** that Defendant provide Plaintiff with a detailed audit report identifying the

specific alleged Automated Commercial Environment Entry Type 86 Test entry filing violations

and CTPAT Program violations; and it is further

**ORDERED** that Defendant refrain from making any information concerning alleged

violations available to anyone other than Plaintiff or Defendant.

_____
JUDGE, United States Court of International Trade

Dated: New York, New York

This _____day of _____, 2024, at the time of _____.

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: Unassigned**

SEKO CUSTOMS BROKERAGE, INC.,
                                        *Plaintiff,*
                    v.

UNITED STATES,
                                        *Defendant.*

**Court No.  24-cv-00097**

**NON-CONFIDENTIAL**

## PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION

In accordance with Rules 7 and 65 of the Rules of the United States Court of International Trade ("USCIT"), Plaintiff, SEKO Customs Brokerage, Inc. ("SEKO"), hereby applies for a Temporary Restraining Order and moves for a Preliminary Injunction:

(1)    Restraining Defendant United States Customs and Border Protection ("CBP") from requiring Plaintiff to take remedial action(s) as to the alleged violation(s) concerning the Automated Commercial Environment Entry Type 86 Test ("T86") and Customs-Trade Partnership Against Terrorism ("CTPAT") programs without providing any specific facts concerning such alleged violation(s);

(2)    Enjoining Defendant from requiring Plaintiff to take remedial action(s) as to the alleged violations concerning the T86 and CTPAT programs without providing any specific facts concerning such alleged violation(s);

(3)    Requiring Defendant to provide to Plaintiff meaningful and reasonable timeline to address such specific facts of alleged violation(s) when provided; and

(4)    Restraining Defendant from making such alleged violation(s) or anything identifying such alleged violation(s) available to anyone other than Plaintiff or Defendant.

The issuance of the Temporary Restraining Order is necessary to preserve the *status quo* in this action *pendent lite*, to prevent further suspension of Plaintiff's participation in the T86 and CTPAT programs without identifying the specific underlying facts of the alleged violation(s), leaving Plaintiff without redress to continue a substantial portion of its business.

Plaintiff seeks a Preliminary Injunction for the pendency of this litigation, including all relevant appeals and remands, until such time as a final court decision is rendered. Plaintiff moves for such Preliminary Injunction on the basis of CBP's actions suspending Plaintiff's participation in T86 and CTPAT programs and requiring remedial action(s) as to the alleged violations without identifying the specific underlying facts of the alleged violation(s), which renders compliance practically impossible.

Further, Plaintiff requests that this Application for a Temporary Restraining Order and Motion for Preliminary Injunction be set for hearing at the Court's earliest convenience.

In support of this Motion, Plaintiff relies upon its Complaint filed herein, the accompanying Declaration of James Gagne, the accompanying Declaration of Lila Landis, and the following Memorandum of Points and Authorities in Support of its Application for Temporary Restraining Order and Motion for Preliminary Injunction.

Respectfully submitted,

Dated:    June 1, 2024

Eric R. Rock, Attorney

Serhiy Kiyasov
Austin J. Eighan
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For SEKO Customs Brokerage, Inc.*

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii

BACKGROUND ...................................................................................................... 2

I.     Factual Background ...................................................................................... 2

       A.     SEKO Customs Brokerage, Inc. ................................................... 2

       B.     United States Customs and Border Protection ............................. 2

II.    Legal Background ........................................................................................ 2

       A.     Section 321 Entries ...................................................................... 2

       B.     T86 Program Membership ............................................................ 3

       C.     CTPAT Membership ..................................................................... 4

       D.     Fifth Amendment of the United States Constitution .................... 5

       E.     APA Procedural Safeguards ......................................................... 6

SUMMARY OF THE ARGUMENT ........................................................................ 7

ARGUMENT ........................................................................................................... 7

I.     Imminent and Substantial Irreparable Harm .............................................. 8

II.    Likelihood to Succeed on Merits ............................................................... 12

       A.     Jurisdiction under 28 U.S.C. § 1581(i) ...................................... 12

       B.     Violations of Procedural Due Process under the Fifth Amendment and APA ..... 12

III.   Balance of Equities .................................................................................... 15

IV.    Public Interest in Injunctive Relief ........................................................... 16

CONCLUSION ....................................................................................................... 17

CERTIFICATE OF COMPLIANCE ...................................................................... 18

CERTIFICATE OF SERVICE ............................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Celsis In Vitro v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012)..................................................................................8

*Doty v. United States*,
53 F.3d 1244 (Fed. Cir. 1995)..................................................................................5

*Gallagher & Ascher Co. v. Simon*,
687 F.2d 1067 (7th Cir. 1982) ......................................................................6, 12, 14

*Johnston v. Commissioner*,
429 F.2d 804 (6th Cir. 1970) ...................................................................................5

*Kemet Elec. Corp. v. Barshefsky*,
969 F. Supp. 82 (Ct. Int'l. Trade 1997) ...................................................................7

*Kwo Lee, Inc. v. United States*,
24 F. Supp. 3d 1322 (Ct. Int'l. Trade 2015)  ....................................................7, 8, 15, 16

*Pillsbury Co. v. United States*,
18 F. Supp. 2d 1034 (Ct. Int'l Trade 1998) ...........................................................12

*PPG Indus. v. Guardian Indus. Corp.*,
75 F.3d 1558 (Fed. Cir. 1996)................................................................................10

*Qingdao Taifa Grp. Co. v. United States*,
581 F.3d 1375 (Fed. Cir. 2009)................................................................................7

*Royal Brush Mfg. v. United States*,
75 F.4th 1250 (Fed. Cir. 2023) ...........................................................................5, 14

*Sampson v. Murray*,
415 U.S. 61 (1974).....................................................................................................8

*SKF USA Inc. v. United States*,
28 Ct. Int'l Trade 170 (2004)..................................................................................12

*Sofamor Danek Grp., Inc. v. DePuyMotech, Inc.*,
74 F.3d 1216 (Fed. Cir. 1996)..................................................................................7

*United States Auto Parts Network, Inc. v. United States*,
307 F. Supp. 3d 1373 (Ct. Int'l Trade 2018) .........................................................16

*United States Auto Parts Network, Inc. v. United States*,
319 F. Supp. 3d 1303 (Ct. Int'l Trade 2018) ....................................................12

*Winter v. Natural Res. Defense Council, Inc.*,
555 U.S. 7 (2008) ...........................................................................................7, 15

*Zenith Radio Corp. v. United States,*
710 F.2d 806 (Fed. Cir. 1983)................................................................................8

## **Statutes**

19 U.S.C. § 1321 ("Section 321")...........................................................................2

19 U.S.C. § 1321(a)(2)(C) ...............................................................................2, 3

19 U.S.C. § 4301 ...................................................................................................2

28 U.S.C. § 1581(i) .........................................................................................7, 12

5 U.S.C. § 558(c) ...........................................................................................6, 15

5 U.S.C. § 702 .......................................................................................................6

5 U.S.C. § 706(2)(A)......................................................................................6, 15

Security and Accountability for Every Port Act ("SAFE Port Act") of 2006,
Public Law 109-347, 120 Stat. 1884 (6 U.S.C. § 961 et seq.) ..............................4

The Administrative Procedure Act ("APA"),
5 U.S.C. §§ 551-559 and 701-706 ........................................................................6

Trade Facilitation and Trade Enforcement Act of 2015 ("TFTEA"),
Section 901, Public Law 114–125, 130 Stat. 122 (19 U.S.C. § 4301 note).........................2

## **Other Authorities**

19 C.F.R. § 10.151 ................................................................................................3

19 C.F.R. § 10.153 ................................................................................................3

19 C.F.R. § 24.23(c)(1)(v) ...................................................................................4

19 C.F.R. § 24.24(d)(3)..........................................................................................4

CBP, *CBP Expands 321 Data Pilot Participation* (February 16, 2023) .............................3

CBP, *CTPAT Minimum Security Criteria – U.S. Customs Brokers*, CBP Publication No. EO13891- OFO-115 (May 12, 2022)..................................................................................5

CBP, *CTPAT Trade Compliance Handbook*, Vol. 4 (Sep. 19, 2023)............................4, 5

CBP, *CTPAT: Customs Trade Partnership Against Terrorism* (May 13, 2024)................5

CBP, *Customs-Trade Partnership Against Terrorism (C-TPAT) Fact Sheet*, May 2013 ...4

CBP, *E-Commerce Frequently Asked Questions* (May 21, 2024).....................................4

CBP, *Section 321 Programs*, CBP Publication No. 0941-0919 (August 13, 2020)...........3

H.R. Conf. Rpt. No. 114-376 (2015) .................................................................................4

*Test Concerning Entry of Section 321 Low-Value Shipments Through the Automated Commercial Environment (ACE) (Also Known as Entry Type 86); Republication With Modifications*, 89 Fed. Reg. 2630 (January 16, 2024) ("*T86 Modification Notice*") ...............................................................................................3

*Test Concerning Entry of Section 321 Low-Valued Shipments Through Automated Commercial Environment (ACE)*, 84 Fed. Reg. 40079 (August 13, 2019) ("*T86 Initiating Notice*")............................................................................................3, 4

USCIT Rule 65 ..................................................................................................................2

USCIT Rule 7 ....................................................................................................................2

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: Unassigned**

SEKO CUSTOMS BROKERAGE, INC.,
                              *Plaintiff,*
            v.

UNITED STATES,
                              *Defendant.*

Court No.  **24-cv-00097**

**NON-CONFIDENTIAL**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
MOTION FOR PRELIMINARY INJUNCTION**

In accordance with Rules 1, 7, and 65 of the Rules of the United States Court of
International Trade ("USCIT"), Plaintiff SEKO Customs Brokerage, Inc. ("Plaintiff" or
"SEKO"), hereby respectfully moves this Court to grant its Application for Temporary
Restraining Order ("TRO") restraining United States Customs and Border Protection's
("Defendant'" or "CBP") from suspending SEKO's participation in the Automated Commercial
Environment Entry Type 86 Test ("T86") and Customs-Trade Partnership Against Terrorism
("CTPAT") programs. Further, Plaintiff respectfully moves this Court for entry of a Preliminary
Injunction enjoining Defendant from suspending Plaintiff's participation in the T86 and CTPAT
programs.

Defendant's suspension of Plaintiff's participation in the T86 and CTPAT program
suspensions, if not enjoined, will cause imminent irreparable harm – within a matter of days,
SEKO has already suffered a substantial decline in business and permanent damage to its
relations with business partners and clients. *See* Exhibit A, Declaration ("Dec.") of James Gagne
in Support of Plaintiff's Application for Temporary Restraining Order and Motion for

Preliminary Injunction ("Gagne Dec.") at ¶¶ 11, 13–19. Thus, good cause exists to enter Plaintiff's Application for TRO and grant Plaintiff's Motion for Preliminary Injunction.

## BACKGROUND

### I.    Factual Background

#### A.    *SEKO Customs Brokerage, Inc.*

Plaintiff SEKO is a privately held corporation organized and existing under the laws of the state of Illinois, with its principal place of business at 1501 East Woodfield Road Suite 210E Schaumburg IL, 60173.

SEKO provides comprehensive customs brokerage with full customs clearance and entry services, including express e-commerce shipping solutions. As a well-established nationwide customs broker, SEKO has become a leader in the industry through its provision of T86 entries for major e-commerce clients.

#### B.    *United States Customs and Border Protection*

CBP, a sub-agency housed under the Department of Homeland Security, has a statutory responsibility to administer import entry filing and cargo security statutes, regulations, and proposed procedures throughout the United States.

### II.    Legal Background

#### A.    *Section 321 Entries*

Section 321(a)(2)(C) of the Tariff Act of 1930 (19 U.S.C. § 1321(a)(2)(C)), as amended by the Trade Facilitation and Trade Enforcement Act of 2015 ("TFTEA"), Section 901, Public Law 114–125, 130 Stat. 122 (19 U.S.C. § 4301 note), authorizes CBP to provide an administrative exemption to admit free from duty and any tax imposed on or by reason of importation, shipments of merchandise (other than bona-fide gifts and certain personal and household goods) imported by

2

one person on one day having an aggregate fair retail value in the country of shipment of not more than $800. The regulations issued under the authority of Section 321(a)(2)(C) are set forth in Sections 10.151 and 10.153 of Title 19 of the Code of Federal Regulations ("C.F.R") (19 C.F.R. §§ 10.151 and 10.153).

This exemption is known as a "*de minimis*" or "Section 321" entry. *See* CBP, *Section 321 Programs*, CBP Publication No. 0941-0919, available at https://www.cbp.gov/sites/default/files/assets/documents/2020-Aug/Section-321-Data-Pilot-vs-Entry-Type-86-Test_v1-1.pdf (last visited May 29, 2024). CBP has created Section 321 programs to facilitate further monitoring and protection against illegitimate trade while providing the public the benefits of duty-free shipments for qualified imports.

B.    *T86 Program Membership*

On August 13, 2019, CBP published a notice in the Federal Register introducing the T86 program. *See Test Concerning Entry of Section 321 Low-Valued Shipments Through Automated Commercial Environment (ACE)*, 84 Fed. Reg. 40079 (August 13, 2019) ("*T86 Initiating Notice*"); *see also Test Concerning Entry of Section 321 Low-Value Shipments Through the Automated Commercial Environment (ACE) (Also Known as Entry Type 86); Republication With Modifications*, 89 Fed. Reg. 2630 (January 16, 2024) ("*T86 Modification Notice*").

The T86 program was created to test the risk segmentation benefits of accepting advance data from e-commerce supply chain partners, as well as provide both CBP and the U.S. consumer more data and transparency on certain data elements for imported goods. *See* CBP, *CBP Expands 321 Data Pilot Participation* (February 16, 2023), available at https://www.cbp.gov/newsroom/national-media-release/cbp-expands-321-data-pilot-participation; *see also*, *Section 321*.

CBP intended for the Type 86 program to provide for more efficient entry and release process for Section 321 shipments, including those shipments subject to Partner Government Agency ("PGA") data requirements, and expedite the clearance of compliant Section 321 shipments into the U.S. through the use of CBP's ACE system. *See T86 Initiating Notice* at 40080.

When filing a T86 entry, the importing party is exempt from duties and payment of the harbor maintenance tax and merchandise processing fee for merchandise released as a Section 321 low-valued shipment. *See* 19 C.F.R. §§ 24.23(c)(1)(v) and 24.24(d)(3); *T86 Initiating Notice* at 40081; *see also* CBP, *E-Commerce Frequently Asked Questions* (May 21, 2024), available at https://www.cbp.gov/trade/basic-import-export/e-commerce/faqs.

Due to improved entry filing efficiency, visibility, and speed, participation in the T86 program has become a de facto industry standard for customs brokers with clients in e-commerce.

C.    *CTPAT Membership*

The CTPAT program, codified in the Security and Accountability for Every Port Act ("SAFE Port Act") of 2006, Public Law 109-347, 120 Stat. 1884 (6 U.S.C. § 961 et seq.), is a public-private partnership in which CBP and members of the trade community work together to secure and facilitate the movement of legitimate trade. CTPAT participants are considered low-risk by CBP, which expedites cargo clearance based on the company's security profile and compliance history. *See* H.R. Conf. Rpt. No. 114-376, at 157 (2015); *see also* CBP, *Customs-Trade Partnership Against Terrorism (C-TPAT) Fact Sheet*, May 2013, available at https://www.cbp.gov/sites/default/files/documents/ctpat_factsheet_2.pdf; CBP, *CTPAT Trade Compliance Handbook*, Vol. 4, at 6 (Sep. 19, 2023).

CTPAT participation requires members to meet and maintain rigorous industry-specific security requirements developed in close collaboration with CBP. Compliant members enjoy

various entry filing-related benefits, such as eligibility for U.S. Government pilot programs like the T86 program. *See CTPAT Trade Compliance Handbook*; CBP, *CTPAT Minimum Security Criteria – U.S. Customs Brokers*, CBP Publication No. EO13891- OFO-115 (May 12, 2022); CBP, *CTPAT: Customs Trade Partnership Against Terrorism* (May 13, 2024), available at https://www.cbp.gov/border-security/ports-entry/cargo-security/CTPAT.

Similar to the T86 program, participation in the CTPAT program has become a necessity for customs brokers to stay competitive in the industry as the program's benefits have evolved into clients' expected minimal level of service. *See* Gagne Dec., at ¶¶ 8, 13.

       D.    *Fifth Amendment of the United States Constitution*

The Fifth Amendment Due Process Claus of the United States Constitution requires that proceedings accord a "fundamental process of fairness." *Johnston v. Commissioner*, 429 F.2d 804, 806 (6th Cir. 1970). As affirmed by the 2023 decision of the Federal Circuit Court of Appeals in *Royal Brush Mfg. v. United States*, CBP's reliance on information not provided to a party against whom an allegation is made unequivocally violates Due Process:

> One relatively immutable principle of due process is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. This immutable principle applies to cases where facts have been withheld from an entity during an administrative proceeding.

75 F.4th 1250, 1257 (Fed. Cir. 2023) (quoting *Doty v. United States*, 53 F.3d 1244, 1251 (Fed. Cir. 1995) ("The agency's . . . withholding of the evidence on which [it] purported to rely . . . w[as] … egregiously removed from the fairness required of an agency in its administrative responsibilities…")).

E.    *APA Procedural Safeguards*

The Administrative Procedure Act ("APA"), as provided for under inter alia 5 U.S.C. §§ 551-559 and 701-706, grants a right of review to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702.

The APA sets forth the definition of a license and establishes the parameters within which an agency may grant and suspend or revoke licenses, grants, or forms of permission. 5 U.S.C. § 558(c). *See also Gallagher & Ascher Co. v. Simon*, 687 F.2d 1067 (7th Cir. 1982). Suspension or revocation of such a license, grant, or permission is lawful only if, before the institution of agency proceedings therefor, the licensee has been given notice by the agency in writing of the facts or conduct which may warrant action and opportunity to demonstrate or achieve compliance with all lawful requirements. 5 U.S.C. § 558(c).

Under the APA, the "Second Chance" doctrine of Section 558(c) obligates CBP, before suspending a license or grant to file a specific type of entry, to provide the customs broker advance written notice of "the facts or conduct which may warrant the action" as well as an "opportunity to demonstrate or achieve compliance with all lawful requirements." *See Gallagher*, 687 F.2d at 1075.

Further, by statute, the Court must set aside actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency action is arbitrary and capricious if: the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

## SUMMARY OF THE ARGUMENT

SEKO seeks a TRO and Preliminary Injunction against CBP's suspension of SEKO's participation in the T86 and CTPAT programs, which were purportedly imposed as a result of alleged entry filing violations. The Court has subject matter jurisdiction over pursuant to 28 U.S.C. § 1581(i), and should grant SEKO's relief because, as discussed more fully below, every factor of the test governing injunctions weighs heavily in SEKO's favor.

## ARGUMENT

The review and subsequent suspension of T86 and CTPAT participation is an issue of first impression for this Court. A motion for a TRO is considered based on the same standard as that governing motions for preliminary injunctions. *See, e.g.*, *Kemet Elec. Corp. v. Barshefsky*, 969 F. Supp. 82, 84 (Ct. Int'l. Trade 1997). Although a preliminary injunction is an "extraordinary remedy never awarded as of right," the courts must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," as well as the "public consequences" of granting a preliminary injunction. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (internal quotation marks and citations omitted). As such, in order to obtain relief through a preliminary injunction and/or a TRO, the movant must establish that it is: (1) likely to suffer imminent, irreparable harm in the absence of preliminary relief; (2) likely to succeed on the merits; (3) the balance of equities tips in his favor; and (4) injunctive relief is in the public interest. *Kwo Lee, Inc. v. United States*, 24 F. Supp. 3d 1322, 1326 (Ct. Int'l. Trade 2015) (quoting *Winter*, 555 U.S., at 20). The first two factors, a likelihood of success on the merits and irreparable harm, are "central to the movant's burden." *Id.* (quoting *Sofamor Danek Grp., Inc. v. DePuyMotech, Inc.*, 74 F.3d 1216, 1219 (Fed. Cir. 1996)). Requests for a preliminary injunction are evaluated on a "sliding scale," whereby

"the more the balance of irreparable harm inclines in the plaintiff's favor, the smaller the likelihood of prevailing on the merits he need show in order to get the injunction." *Id.* (quoting *Qingdao Taifa Grp. Co. v. United States*, 581 F.3d 1375, 1378–89 (Fed. Cir. 2009)).

As detailed below, SEKO will suffer irreparable injury should this Court deny its request for TRO and Preliminary Injunction; SEKO has sufficiently demonstrated a likelihood of success on the merits; the balance of equities favors SEKO; and granting SEKO's request for an injunction would best serve the public interest.

### I.     Imminent and Substantial Irreparable Harm

Irreparable harm includes a viable and immediate "threat of serious harm which cannot be undone." *Kwo Lee*, 24 F. Supp. 3d at 1326; *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983). As such, the irreparable harm inquiry "seeks to measure harms that no damages payment, no matter how great, could address." *Celsis In Vitro v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). Thus, "loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Kwo Lee*, 24 F. Supp. 3d at 1326. An allegation of financial loss alone, generally, does not constitute irreparable harm if future money damages can provide adequate corrective relief. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974). However, "the simple fact that one could, if pressed, compute a money damages award does not always preclude a finding of irreparable harm." *Kwo Lee*, 24 F. Supp. 3d at 1326. In this case, SEKO will present ample evidence of loss of goodwill, damage to reputation, and loss of business opportunities that have and will result from CBP's suspension of SEKO's participation in the T86 and CTPAT programs amount to immediate and irreparable harm.

In order to build goodwill and confidence in SEKO's trade compliance, SEKO has consistently collaborated with CBP to build a robust T86 entry filing processes. During the implementation of the T86 program, SEKO was faced with substantial software costs and internal information technology investments team labor in order to align its business processes and entry submission systems to facilitate the T86 entry process. *See* Complaint at ¶ 34; Gagne Dec., at ¶ 9; Exhibit B, Dec. of Lila Landis in Support of Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction ("Landis Dec."), at ¶¶ 7–8. For example, in 2019, SEKO acquired Air-City, an e-commerce shipping expert, for the express purpose of expanding T86 capabilities and making additional product offerings in the e-commerce market. *See* Gagne Dec., at ¶ 10. Between 2019 and 2023, SEKO processed, on average [██████████████████]. *See* Gagne Dec., at ¶ 11. However, since Seko has been suspended from the T86 program, these substantial initial investments, as well as the labor to maintain the processes and file T86 entries, are in jeopardy. *See* Gagne Dec., at ¶¶ 16-19.

Further, SEKO has lost goodwill and the confidence of long-standing customers as a direct result of CBP's suspensions and the corresponding public disclosure. This irreparable harm became undeniable as long-standing customers began to question SEKO's trade compliance processes, with some customers eventually even pulling their business. One day after receiving its T86 Suspension Letter, SEKO received a notification from its online retailer customer, [████], stating that CBP had made public an internal memo, in which SEKO was listed as a customs broker who would be prohibited from filing T86 customs entries as of May 30, 2024. *See* Complaint at ¶ 43; Gagne Dec., at ¶ 20. Since the receipt of the suspension letter on May 20, there has been a [██████████████] in the number of low value shipments offered

to SEKO for clearance, equating to a drop in business of approximately [██████████████] in this product sector for T86 entries, resulting in an immediate loss of profit in excess of [███ ██████████] for current and existing clients SEKO was forced to stop servicing in this e-commerce space. *See* Gagne Dec., at ¶ 16. In addition, SEKO had already been awarded additional business from new clients [█████████████████] for T86 entries representing annualized profit in excess of [████████████████████] that can no longer be implemented and realized as a result of the suspension letter. *Id.*

SEKO is currently also actively trading with many clients who are not impacted by T86 suspension, but who have expressed concern to SEKO and indicated a potential likelihood of their transitioning business to other providers, due to perception of SEKO as having a weak compliance program after learning of the SEKO CTPAT and T86 suspension actions taken by CBP. *See* Gagne Dec., at ¶ 19.

SEKO also now faces significant monetary losses by and through its inability to compete in the marketplace. As SEKO is currently in a contractual relationship with a number of clients based on its ability to perform T86 clearances, CBP's actions have deprived SEKO of its strong interest in fulling its contractual obligations. *See* Gagne Dec., at ¶¶ 14, 17; *PPG Indus. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996). Market indicators currently show that *de minimis* entry filing outside of the T86 program will likely be delayed or receive lower clearance priority, given that the T86 program has become the standard platform to process e-commerce shipments. *See* Landis Dec., at ¶ 13. As such, adherence to previously agreed-upon performance metrics for expedited release of *de minimis* value shipments are in danger. *Id.*; *see* Gagne Dec., at ¶¶ 14, 17.

Further, since CBP only provided SEKO with 7-day notice between the time SEKO was made aware of its suspension from the T86 program and when the suspension was to become effective, SEKO was forced to swiftly find alternative entry clearance means for its clients. *See* Landis Dec., at ¶¶ 10–11. For instance, SEKO sought out the assistance of [█████████████ █████] with T86 entry filing capabilities. *See* Landis Dec., at ¶ 12. However, [█████████████] refused to assist in light of SEKO's recent suspension leaked in the public domain. *Id.* While SEKO has continued to look for short-term alternatives, SEKO has incurred further harm by the need to redesign the Section 321 low-value entry filing process until its suspension from the T86 program is lifted. *See* Landis Dec., at ¶¶ 10–13.

Looking beyond SEKO's existing contracts in jeopardy, SEKO frequently receives requests for proposals ("RFPs") which also rely on T86 capabilities, trade compliance, and CTPAT participation. *See* Gagne Dec., at ¶¶ 8, 13, 18. At present, SEKO is responding to several RFPs that may be impacted by T86 and CTPAT suspension, resulting in loss of business. Other RFPs which were entirely focused on T86 entry services which have had to be abandoned include but are not limited to [███████████████████████]. *See* Gagne Dec., at ¶ 18. Without being able to participate in the T86 and CTPAT programs, the sustainability of SEKO's business is at significant risk. *Id.*

As evidenced by long-standing customers expressing doubt in SEKO's trade compliance and rerouting their T86 shipments to other customs brokers, SEKO's failure to uphold its contractual obligations, and inability to partake in bid processes, SEKO has suffered considerable loss of goodwill, irreparable damage to SEKO's reputation, and a loss of business opportunities.

## II.     Likelihood to Succeed on Merits

Due to CBP's infringement upon SEKO's procedural due process rights under the Fifth Amendment of the United States Constitution and the APA, SEKO will prove that not only does this Court have jurisdiction to hear this matter, but also that CBP clearly violated the Fifth Amendment and APA in its suspension actions taken against SEKO.

### A.     *Jurisdiction under 28 U.S.C. § 1581(i)*

SEKO is likely to succeed in establishing that this Court has jurisdiction to review CBP's suspension of SEKO's participation in the T86 and CTPAT programs. In this case, CBP's are subject to review by this Court pursuant to 28 U.S.C. § 1581(i), which vests in this Court exclusive jurisdiction over:

> [C]ivil actions commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for revenue for – (1) revenue from imports or tonnage; (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue; . . . or (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of [Section 1581].

28 U.S.C. § 1581(i). Because this case involves CBP's actions as they relate to violations of the Constitution and the APA, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i). *See United States Auto Parts Network, Inc. v. United States*, 319 F. Supp. 3d 1303 (Ct. Int'l Trade 2018); *Pillsbury Co. v. United States*, 18 F. Supp. 2d 1034 (Ct. Int'l Trade 1998); *see also Gallagher & Ascher Co. v. Simon*, 687 F.2d 1067 (7th Cir. 1982).

### B.     *Violations of Procedural Due Process under the Fifth Amendment and APA*

This Court has held that the extent of the showing required to establish a likelihood of prevailing on the merits is in inverse proportion to the degree of irreparable harm: "The greater the potential harm to the plaintiff, the lesser the burden on Plaintiffs to make the required showing of likelihood of success on the merits." *SKF USA Inc. v. United States*, 28 Ct. Int'l

Trade 170, 176 (2004). As such, SEKO need only demonstrate a minimal likelihood of success on the merits. Nonetheless, SEKO will show that its argument has a great likelihood of success on the merits because CBP violated SEKO's procedural protections under the Fifth Amendment and the APA in three ways: (1) failing to provide SEKO with the specific results of judgement samples demonstrating the specific violations per entry underpinning the suspensions; (2) issuing the suspension decisions without responding to SEKO's remedial action plan; and (3) failing to grant SEKO a means of responding to CBP's violation allegations.

The first and most important Due Process violation occurred as a result of CBP's failure to provide the specific results of two separate Entry Type 86 judgement sample reviews. On two occasions, CBP requested entry documentation for 10 Entry Type 86 shipments to review as part of judgement samples. *See* Complaint, at ¶¶ 36, 41. Following its two investigations, CBP alleged that SEKO had committed entry filing violation in each judgment sample. *See* Complaint, at ¶¶ 37, 44. However, in presenting its findings to SEKO, at no point did CBP identify the specific underlying facts used to determine an entry filing violation had occurred, nor which alleged violation corresponded with which entry. *See* Complaint, at ¶¶ 38, 44; Gagne Dec., at ¶ 15.

To date, SEKO has not received an audit report from CBP concerning either judgement sample. Without an audit report or further information as to CBP's specific findings, CBP withheld facts used to make a determination in the administrative proceeding which led to SEKO's suspension from the Entry Type 86 and CTPAT programs. *See* Complaint, at ¶ 45. As outlined by the Federal Circuit Court of Appeal's decision in *Royal Brush Mfg.*, CBP's actions therefore constitute a clear violation of due process because the agency has taken enforcement

action without providing SEKO with details of any violations. *See Royal Brush Mfg.*, 75 F.4th at 1259.

CBP's second violation of SEKO's Due Process rights resulted from CBP's failure to respond to SEKO's remedial action plan had CBP identified any genuine deficiencies in the proposed course of action. In response to CBP's allegations regarding the first judgement sample, SEKO outlined a detailed remedial action plan for some of the general allegations asserted. *See* Complaint, at ¶ 39. However, CBP never provided any feedback or further communications regarding SEKO's remedial action plan. *See* Complaint, at ¶ 40. Had CBP taken issue with any of the proposed corrective courses of action, it could have communicated such to SEKO. Instead, CBP failed to provide any indication that the remedial action plan was insufficient in any way. As such, CBP deprived SEKO have any "second chance" afforded by Section 558(c) of the APA to further "demonstrate or achieve compliance with all lawful requirements." *See Gallagher*, 687 F.2d at 1075.

CBP's third violation of SEKO's Due Process Rights resulted from CBP depriving SEKO of the opportunity to meaningfully respond to CBP's violation allegations and show how SEKO's remedial action plan put in place may have erred. In response to CBP's first allegation of T86 entry filing violations, SEKO offered a remedial action plan to correct any shortcomings in SEKO's filing processes. *See* Complaint, at ¶ 36. As a result of CBP's review of the second entry judgement sample, CBP similarly alleged T86 entry filing violations. *See* Complaint, at ¶¶ 39–40.  However, now, instead of providing SEKO with an opportunity to respond or amend its remedial action plan, CBP declared that with almost immediate effect, SEKO's participation in the Entry Type 86 and CTPAT programs is to be suspended for a minimum of 90 days. *See* Complaint Exhibit A (CTPAT Suspension Letter) and Complaint Exhibit G (T86 Suspension

Letter). Complaint Specifically, CBP issued the Suspension Letters on May 17 and May 20, 2024, with the CTPAT suspension to take immediate effect and the Entry Type 86 Program suspension to take effect on May 27, 2024, i.e. within seven days of the letter's issuance.

A timeframe of only seven days provides no meaningful means for SEKO and CBP to discuss the issues at hand. As such, CBP's sudden and unexpected decision to suspend SEKO's participation in the T86 and CTPAT programs was not only surprising – it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and failed to provide SEKO with a "second chance" to contest the allegations made against it in a meaningful discourse with CBP. *See* 5 U.S.C. §§ 558(c), 706(2)(A).

Even when CBP offered to "conditionally reinstate" SEKO on May 31, the agency failed to identify violations or provide meaningful details about shippers or importers causing violations. *See* Complaint Exhibit I (CBP's Conditional Reinstatement Letters). Without this data, the offer to "conditionally reinstate" SEKO continues a repeated pattern of demanding remedial action and alleging violations without providing an actual factual basis for its enforcement conclusions. As such, CBP violated SEKO's due process rights. *See* Complaint, ¶¶ 51–53.

### III.    Balance of Equities

The balance of hardships also favors granting SEKO's Application for TRO and Motion for Preliminary Injunction.  "Before granting a preliminary injunction, the court 'must balance the competing claims of injury and must consider the effect' that granting or denying relief will have on each party." *Kwo Lee*, 24 F. Supp. 3d at 1331 (quoting *Winter*, 555 U.S. 7, 24 (2008)).

Here, SEKO has not been afforded the opportunity to even *understand* the alleged violations that CBP used to determine non-compliance with T86 entry filing procedures. As

noted above, CBP has failed to adhere to constitutionally and statutorily protected due process requirements and provide SEKO with the facts used to make its suspension determinations. *See supra* Argument Section 2(B). Thus, by granting the Application for TRO and Motion for Preliminary Injunction, this Court ensures that SEKO's procedural due process protections provided for under the Fifth Amendment and APA are properly followed.

Should the Court choose to grant the injunctive relief sought by SEKO, CBP will not be materially harmed. As SEKO's clients requiring T86 entry have already begun to move their business to other customs brokers still participating in the T86 program, CBP will have the same opportunity to review and collect any fees associated with these T86 entries. Further, CBP will not be harmed by justly administering its own guiding statutes and regulations.

### IV.  Public Interest in Injunctive Relief

The public interest will best be served by granting SEKO's Application for TRO and Motion for Preliminary Injunction. The litigation of meritorious claims provides a check on Government enforcement and ensures the proper administration of the law. *See United States Auto Parts Network, Inc. v. United States*, 307 F. Supp. 3d 1373, 1380 (Ct. Int'l Trade 2018). In fact, there exists a "strong public interest in the proper execution of and compliance with the law … [and t]he public interest is served by the accurate and effective, uniform and fair enforcement of trade laws." *Kwo Lee*, 24 F. Supp. 3d at 1332 (citations omitted).

Accordingly, granting SEKO's Application for TRO and Motion for Preliminary Injunction best serves the public interest.

## **CONCLUSION**

For the reasons set forth herein, Plaintiff, SEKO Customs Brokerage, Inc., respectfully requests that this Court grant its Application for Temporary Restraining Order and grant its Motion for Preliminary Injunction pending the Court's final judgement in this action. A proposed order is attached.

Respectfully submitted,

Dated: ___June 1, 2024___

Eric R. Rock, Attorney

Serhiy Kiyasov
Austin J. Eighan
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff SEKO Customs
Brokerage, Inc.*

17

## CERTIFICATE OF COMPLIANCE

I, Eric R. Rock, hereby certify that this brief complies with the 14,000 word-count limitation of the United States Court of International Trade set forth in Standard Chambers Procedure § 2(B)(1) because this brief contains 4,669 words. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

Respectfully submitted,

Dated:   June 1, 2024

_____

Eric R. Rock, Attorney

Serhiy Kiyasov
Austin J. Eighan
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff SEKO Customs Brokerage, Inc.*

18

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to U.S. Court of International Trade Rules 4(b), 4(h), and 5, I, Eric R. Rock, one

of the attorneys for the Plaintiff, certify that copies of the forgoing were served on all parties by

certified mail, return receipt requested, this Saturday, June 1, 2024, addressed to each party or its

attorney of record at the address(es) listed below.

Justin R. Miller
Attorney in Charge
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza – Room 346
New York, New York 10278

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania
Ave., NW Washington,
DC 20229

Respectfully submitted,

Dated: ___June 1, 2024___

_____
Eric R. Rock, Attorney

Serhiy Kiyasov
Austin J. Eighan
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff SEKO Customs
Brokerage, Inc.*

# Exhibit A

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: Unassigned**

SEKO CUSTOMS BROKERAGE, INC.,
                    *Plaintiff,*
          v.

UNITED STATES,
                    *Defendant.*

Court No.  **24-cv-**

**DECLARATION OF JAMES GAGNE IN SUPPORT OF PLAINTIFF'S APPLICATION
FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY
<u>INJUNCTION</u>**

    I, James Gagne, on behalf of SEKO Customs Brokerage, Inc. ("SEKO"), hereby declare

under penalty of perjury, in accordance with 28 U.S.C. § 1746, as follows:



I declare under penalty of perjury that the foregoing is true and correct. Executed on May 31, 2024.

James T. Gagne

Dated:   May 31, 2024

James Gagne
President & Chief Executive Officer
SEKO Customs Brokerage, Inc.

4

# Exhibit B

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: Unassigned**

SEKO CUSTOMS BROKERAGE, INC.,
                                *Plaintiff,*
        v.

UNITED STATES,
                                *Defendant.*

**Court No.  24-cv-**

**DECLARATION OF LILA LANDIS IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

I, Lila Landis, on behalf of SEKO Customs Brokerage, Inc. ("SEKO"), hereby declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, as follows:

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 31, 2024.


Dated:   __May 31, 2024____

                                        Lila Landis,
                                        Chief Compliance Officer
                                        SEKO Customs Brokerage, Inc.