UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

SEKO CUSTOMS BROKERAGE, INC.,
                     *Plaintiff,*
      v.

UNITED STATES,
                     *Defendant.*

Court No. <u>24-cv-00097</u>

NON-CONFIDENTIAL

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO CHIEF JUDGE BARNETT'S QUESTIONS

Plaintiff, SEKO Customs Brokerage, Inc. ("SEKO"), respectfully submits its reply to the Defendant's Response to Chief Judge Barnett's Questions ("*Defendant's Response*") (ECF Nos. 20 and 22) regarding the questions posed by the Court during a Teams Conference held on June 3, 2023 (ECF No. 12).

**Question 1**: Has CBP reinstated SEKO into both the Automated Commercial Environment Entry Type 86 Test ("T86") and Customs Trade Partnership Against Terrorism ("CTPAT") programs? If so, is that reinstatement unconditional?

**Plaintiff's Reply to Defendant's Response for Question 1**:

As a practical matter, CBP has not reinstated SEKO into the T86 and CTPAT programs. Despite Defendant's claim that Plaintiff has been "conditionally reinstated" as of May 31, 2024 (*see Defendant's Response*, at 1–2), Defendant fails to explain its own conflicting language. For example, the agency wrote:

> Upon receipt, CBP will review SEKO's submission and other available information and assess whether SEKO is eligible to **fully resume** participation in the Entry Type 86 Test and **provide a date for reinstatement**.

*Defendant's Response*, Exhibit B, at 1 (emphasis added); *see also* Complaint, at ¶ 52. By the explicit terms of its reinstatement letter, CBP declares that even though SEKO's participation has

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

been "reinstated," SEKO must still submit a remedial action plan in order for CBP to "provide a date for reinstatement." If a date is yet to be determined upon which SEKO's participation is to be reinstated, then SEKO's reinstatement has not yet occurred.

Further, assuming *arguendo* that Plaintiff has been reinstated into the T86 and CTPAT programs, Defendant has still conditioned the reinstatement upon the submission and approval of an "**updated action plan** that demonstrates to CBP [that SEKO] has taken sufficient **remedial actions** to ensure compliance with the [T86] requirements" without ever informing Plaintiff of the underlying violations. *Defendant's Response*, at 2 (emphasis added); *Defendant's Response*, Exhibit B; *see also* CBP, *CTPAT Bulletin - Suspension Removal Appeals and Reinstatement Processes*, at 5 (August 1, 2021) ("*CTPAT Bulletin*"). Plaintiff cannot comply with any of the conditions identified by CBP which render the "conditional reinstatement" moot.

With respect to the CTPAT program, Defendant made clear in its suspension letter that the agency's actions were prompted by T86 entry filing violations. *See* Complaint, Exhibit A [[ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ]]; Complaint, Exhibit G [[ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ]] Thus, the CTPAT suspension is intrinsically tied to alleged T86 entry filing violations.

Defendant identifies a CTPAT Bulletin that discusses how CTPAT remedial/corrective action plans must address "gaps, vulnerabilities, and/or weaknesses identified during the review [of the participant's actions]." *CTPAT Bulletin*, at 5; *see also* CBP, *CTPAT Trade Compliance Handbook*, Vol. 4, at 30 (Sep. 19, 2023) ("*Compliance Handbook*"), at 30. The *CTPAT Bulletin*

also notes that a "review is almost always conducted by CTPAT prior to taking an action to suspend a Partner in order to determine how and why the breach [of CTPAT protocols] occurred." *CTPAT Bulletin*, at 3. Also, CBP's *CTPAT Trade Compliance Handbook* reiterates that "each suspension is preceded by extensive outreach efforts [by CBP] to provide the company with the opportunity to demonstrate compliance with program requirements. *Compliance Handbook*, at 30. Ironically, none of this has occurred in this case, and CBP has not followed its stated process.

Rather, in this case, there was no action taken by CBP to discuss how and why a breach of CTPAT protocols occurred. The CTPAT suspension was not preceded by extensive outreach efforts by CBP for the company to demonstrate its compliance efforts with the program. CBP's suspension letter makes reference only to T86 entry violations, which have not been identified. If there is a CTPAT administrative process for suspending a partner, the agency did not follow it. More importantly, this demonstrates that CBP has not developed procedures that provide appropriate protections to CTPAT participants before benefits are denied, as required pursuant to 6 U.S.C. 967(a).

Additionally, the CTPAT "conditional reinstatement" requires Plaintiff to, *inter alia*, carry out the following:

> To mitigate the risk of compliance violations, your plan should demonstrate how SEKO will work with its customers to eliminate inaccurate or insufficient descriptions, bad actors in the supply chain, along with other appropriate actions to address the concerns listed above.

*Defendant's Response*, Exhibit B. However, in order to "eliminate inaccurate or insufficient descriptions, bad actors in the supply chain, [and carry out] other appropriate actions", Defendant must provide Plaintiff with a means of identifying specific violations before Plaintiff can address the root cause of the issues and block shipments from so called "bad actors." *Id.* Even if Plaintiff were to avail itself of a CTPAT appeal process, the underlying violations asserted are not CTPAT

3

related and such process cannot be undertaken to address T86 entry violations which have not been identified.

In light of CBP's suspensions of SEKO's participation in the T86 and CTPAT programs, SEKO has requested on at least three separate occasions all information used by the agency to identify any alleged violations in order to craft an appropriate remedial action plan that directly addresses the underlying issues.

- On October 24, 2023, Plaintiff submitted to Defendant a detailed remedial action plan in response to alleged T86 entry filing violations. *See* Complaint, Exhibit B, at 3–4. However, Defendant failed to issue any response to the corrective course of action in the proposed plan, nor provide Plaintiff with any of the facts identified in the review of the T86 entries. *See Id.* at 4.

- On May 23, 2024, Plaintiff submitted a response to the intended suspensions, in which Plaintiff requested all information concerning the specific violations upon which CBP based its determination and to reinstate Plaintiff's participation in the programs at least until Plaintiff had an opportunity to review the details of the alleged violations. *See* Complaint, at ¶ 47. Therein, Plaintiff also reserved its right to initiate litigation seeking full reinstatement and the requested information, if the agency was unwilling to do so itself. *Id.* However, Defendant never provided a substantive response to this request until it was issued a copy of the Complaint. *See Id.*, at ¶ 50.

- On May 29, 2024, Plaintiff submitted the copy of the Complaint and therewith notified Defendant that it was prepared to initiate litigation if Defendant failed to reinstate Plaintiff's full participation in the T86 and CTPAT programs, as well as

4

provide all details concerning the alleged violations causing the suspensions. *See* Complaint, at ¶ 50. To date, Defendant has failed to provide the information in this third request.

Plaintiff is left with no meaningful way of addressing any alleged T86 entry violations in order to compile a corresponding remedial action plan. Consequently, Plaintiff has not been effectively reinstated into the T86 and CTPAT programs. Moreover, the conditional reinstatement states that Plaintiff must submit a remedial action plan along with "substantiating evidence of its successful implementation" within 30 days (now with only 24 days remaining) of the letter's issuance. *See* Complaint, Exhibit I. CBP will not provide evidence of violations yet continues to demand imminent remedial actions. Plaintiff seeks this Court's injunctive relief to put an end to these arbitrary agency actions.

**Question 2**: The CTPAT program is codified into law by 6 U.S.C. § 967. Where can the Court find the processes and procedures for CTPAT participants who face suspension from, or other adverse action in relation to, the CTPAT program?

**Plaintiff's Reply to Defendant's Response for Question 2:**

The CTPAT program is codified into law by the Security and Accountability for Every Port Act ("SAFE Port Act") of 2006, Public Law 109-347, 120 Stat. 1884 (6 U.S.C. § 961 *et seq*.), with the program's appeals/reinstatement processes identified under 6 U.S.C. § 967(c). However, Defendant admits "there are no regulations that govern the appeals and/or reinstatement process for CTPAT partners. *See Defendant's Response*, at 4. Defendant relies heavily upon guidance materials to lay out how appeals and/or reinstatements under the CTPAT program are to be carried out. *See Defendant's Response*, at 3–6.

5

Most importantly, as discussed in response to Question 1, *supra*, Defendant based both the CTPAT and T86 program suspensions on alleged T86 entry filing violations. *See* Complaint, Exhibits A and G. As such, any suspension appeal process provided for redress of Plaintiff's suspension from the CTPAT program necessarily requires a corresponding appeal process for the T86 program suspension. On this issue, Defedant's Response is silent.

CBP has also failed to promulgate any regulations implementing the T86 program. As a result, the only source of any level of authority pertaining to appeals and/or reinstatements under the T86 program are the Federal Register Notices used to introduce and subsequently modify the T86 program. *See Test Concerning Entry of Section 321 Low-Valued Shipments Through Automated Commercial Environment (ACE)*, 84 Fed. Reg. 40079 (August 13, 2019) ("*T86 Initiating Notice*"); *Test Concerning Entry of Section 321 Low-Value Shipments Through the Automated Commercial Environment (ACE) (Also Known as Entry Type 86); Republication With Modifications*, 89 Fed. Reg. 2630 (January 16, 2024) ("*T86 Modification Notice*"). Notably, neither the *T86 Initiating Notice* nor the *T86 Modification Notice* provide for any suspension appeal process. In fact, it was not until January 16, 2024, that CBP published the *T86 Modification notice*, in which the agency makes mention of the possibility of suspension from the T86 program.

With a clear lack of statutory and regulatory guidance concerning the suspension and appeal process for both the T86 and CTPAT[1] programs, there is no administrative procedure for the Plaintiff to avail itself, especially when using T86 violations as a basis to suspend CTPAT participation. Assuming *arguendo* that Plaintiff was required to submit in writing its CTPAT

---

[1] As a further example of the lack of clarity and specific regulatory guidance plaguing the CTPAT appeal process, Section 217(c)(1) of the SAFE Port Act states that "appeal[s] shall be filed with the Secretary [of Homeland Security],", while the *CTPAT Bulletin* states that the "Executive Director of Cargo and Conveyance Security in Washington, D.C." is to handle appeals. *See* 6 U.S.C. §§ 901(15) and 967(a); *CTPAT Bulletin*, at 9; *Defendant's Response*, at 4.

suspension appeal to Defendant (*see* 6 U.S.C. § 967(c)), it did so on May 23, 2024, when it asked for complete details for the violations leading to these actions. *See* Complaint, Exhibit B. Defendant's refusal to provide Plaintiff with the information concerning the specific alleged violations leading to the suspensions has continued to violate Plaintiff's constitutional and statutory rights (*see* Complaint, at 14–16) and, furthermore, constituted a final agency action. *See supra,* Plaintiff's Reply to Defendant's Response for Question 1. Plaintiff cannot be required to exhaust any further administrative remedies when none exist here, as similarly concluded by the Court in *Ninestar Corp. v. United States*, No. 23-00182, 2024 Ct. Intl. Trade LEXIS 24 (Ct. Int'l Trade Feb. 27, 2024).

This Court has discretion to determine when to require the exhaustion of administrative remedies when an issue is not expressly required by the statute. *See One World Techs., Inc. v. United States*, 380 F. Supp. 3d 1300, 1320 (Ct. Int'l Trade 2019). In this case, since there is no administrative remedy to exhaust by statute or regulation, the Court can conclude that CBP's actions here to-date constitute final agency action which would allow the injunctive relief sought.

**Question 3**: How much time does the Government anticipate needing to respond to Plaintiff's Motion for a Temporary Restraining Order/Preliminary Injunction?

**Plaintiff's Reply to Defendant's Response for Question 3:**

Due to the imminent, irreparable harm being caused by Defendant's unlawful suspensions, Plaintiff requests that the Court expedite the hearing and briefing schedule for this case as quickly as possible. As detailed in Plaintiff's Complaint and Application for Temporary Restraining Order and Motion for Preliminary Injunction, SEKO has and is currently suffering further substantial losses to its technology and labor investments tied to T86 entry filing; lost goodwill and the confidence of long-standing customers; and the inability to compete in the marketplace as required

under current contractual obligations and upcoming bids for new business. *See* Complaint, at ¶¶ 48–49; Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction, at 7–11 (ECF Nos. 8 and 21). Consequently, an expedited response from the Defendant is warranted in this case.

In order to mitigate the harm imposed by Defendant's actions, Plaintiff will file a Motion to Expedite under 28 U.S.C. § 1657(a) and Rule 3(g)(5) of the United States Court of International Trade within 24 hours of this filing for this Court's consideration.

|  |  |
|---|---|
| Dated:   June 6, 2024 | Respectfully submitted,<br><br>*/s/ Eric R. Rock*<br>Eric R. Rock, Attorney<br><br>Serhiy Kiyasov<br>Austin J. Eighan<br>Rock Trade Law LLC<br>134 North LaSalle Street, Suite 1800<br>Chicago, Illinois 60602<br>312-824-6191 (telephone)<br>erock@rocktradelaw.com (e-mail)<br><br>*Counsel For Plaintiff SEKO Customs Brokerage, Inc.* |