**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, JUDGE**

SEKO CUSTOMS BROKERAGE, INC.,
                                    *Plaintiff,*

            v.

UNITED STATES,

                                    *Defendant.*

**Court No.  24-cv-00097**

**NON-CONFIDENTIAL**

**REPLY IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

ARGUMENT ............................................................................................................................... 2

I.     Substantial Irreparable Harm To SEKO Is Imminent Absent Injunctive Relief ............... 2

     A.     SEKO Is Suffering Significant Financial Harm And Ongoing Loss Of Business Due To CBP's Enforcement Actions Under The T86 Program ........................... 2

     B.     SEKO Is Suffering From The Unlawful Transfer Of Liability For Third-Party Fraud To SEKO Without A Meaningful Opportunity To Defend Itself ................. 6

II.     SEKO Has Established a Likelihood to Succeed on The Merits ..................................... 10

     A.     SEKO's Claims are Ripe ..................................................................................... 10

          1.     Final Agency Action ............................................................................... 10

          2.     Fifth Amendment Property Interest ........................................................ 11

          3.     APA Property Interest ............................................................................. 13

          4.     Exhaustion of Administrative Remedies ................................................ 15

     B.     SEKO's Claims Are Not Moot ............................................................................ 17

III.     The Public Interest and The Balance Of Equities Weigh In SEKO's Favor ................... 18

CONCLUSION .......................................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Cases**

Am. Customs Brokers Co. v. U.S. Customs Serv.,637 F. Supp. 218 (Ct. Int'l Trade 1986) ..................................................................................................................................14

American Customs Brokers Co. v. United States Customs Serv., 637 F. Supp. 218 (Ct. Int'l Trade 1986) ..............................................................................................................5

AVCO Fin. Corp. v. Commodity Futures Trading Comm'n., 929 F. Supp. 714 (S.D.N.Y. 1996) ...............................................................................................................................4, 5

Barnes v. Zaccari, 669 F.3d 1295 (11th Cir. 2012) ...........................................................12

Barry v. Barchi, 443 U.S. 55 (1979) ...................................................................................12

Bd. of Regents of State Colls. v. Roth, 408 U.S. 564 (1972) ............................................12

Bennett v. Spear, 520 U.S. 154 (1997) ...............................................................................11

Blackwell Coll. of Bus. v. Attorney General, 454 F.2d 928 (1971) ..................................14

Cemex, S.A. v. United States, 133 F.3d 897 (Fed. Cir. 1998)............................................16

Clarke v. CFTC, 74 F.4th 627 (5th Cir. 2023)...................................................................14

Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985) ..................................11

Corus Grp. PLC v. Int'l Trade Comm'n, 352 F.3d 1351 (Fed. Cir. 2003) ........................11

Elkem Metals Co. v. United States, 135 F. Supp. 2d 1324 (Ct. Int'l Trade 2001) .............4

F.C.C. v. Fox Tel. Stations, Inc., 556 U.S. 502 (2009).....................................................13

Gallagher & Ascher Co. v. Simon, 687 F.2d 1067 (7th Cir. 1982) ...........................14, 15

Kwo Lee, Inc. v. United States, 24 F. Supp. 3d 1322 (Ct. Int'l. Trade 2015) ................2, 4

Lois Jeans & Jackets, U.S.A. v. United States, 566 F. Supp. 1523 (Ct. Int'l Trade 1983)..6

Mallinckrodt Inc. v. United States FDA, Civil Action No. DKC 14-3607, 2015 U.S. Dist. LEXIS 193019 (D. Md. July 29, 2015) ..............................................................................12

Nat'l Hand Tool Corp. v. United States, 14 Ct. Int'l Trade 61 (U.S. 1990)........................4

Ninestar Corp. v. United States, 687 F.Supp.3d 1308 (Ct. Int'l Trade 2024) .......15, 16, 17

Nken v. Holder, 556 U.S. 418 (2009)...................................................................................2

Nken v. Holder, 556 U.S. 418 (2009).................................................................................18

One World Techs. v. United States, 357 F. Supp. 3d 1278 (Ct. Int'l Trade 2018)..............4

One World Techs., Inc. v. United States, 380 F. Supp. 3d 1300 (Ct. Int'l Trade 2019) ...16

Pillsbury Co. v. United States, 18 F. Supp. 2d 1034 (Ct. Int'l Trade 1998)...............14, 15

Richardson v. Town of Eastover, 922 F.2d 1152, 1156 (4th Cir. 1991)............................12

S. J. Stile Assoc. Ltd. v. Snyder, 646 F.2d 522 (C.C.P.A. 1981) ........................................6

Sea Shepherd N.Z. v. United States, 639 F. Supp. 3d 1367 (2023)....................................17

Semaphore Entertainment Group Sports Corp. v. Gonzalez, 919 F. Supp. 543 (D. P.R. 1996) ....................................................................................................................................5

Strickland v. United States, 32 F.4th 311 (4th Cir. 2022) ...........................................12, 13

Winter v. Natural Res. Defense Council, Inc., 555 U.S. 7 (2008)......................................2

Zenith Radio Corp. v. United States, 710 F.2d 806 (Fed. Cir. 1983) .................................6

**Statutes**

19 U.S.C. § 1321(a)(2)(C) ...............................................................................................5, 9

19 U.S.C. § 1484.................................................................................................................8

19 U.S.C. § 1641 .................................................................................................8
19 U.S.C. § 4301 .................................................................................................5
28 U.S.C. § 2637(d) ..........................................................................................16
5 U.S.C. § 551(8) ..............................................................................................14
5 U.S.C. § 706(2)(A) .........................................................................................14
5 U.S.C. §§ 551-559 ..........................................................................................13
5 U.S.C. §§ 701-706 ..........................................................................................13
5 U.S.C. 558(c) ...........................................................................................14, 15
U.S. Const. Amend. V .......................................................................................11

**Other Authorities**

19 C.F.R. § 10.151 .......................................................................................5, 8, 9
19 C.F.R. § 10.153 .......................................................................................5, 8, 9
19 C.F.R. § 101.9(a) ..........................................................................................13
19 C.F.R. § 128.21(a) ..........................................................................................9
19 C.F.R. § 143.23(j)(3) .......................................................................................9
19 C.F.R. § 143.23(k) ..........................................................................................9
19 C.F.R. § 143.26(b) ..........................................................................................8
19 C.F.R. § 143.26(b) ..........................................................................................9
CBP, CBP Expands 321 Data Pilot Participation (February 16, 2023) ...........................12
CBP, E-Commerce Frequently Asked Questions (May 21, 2024), available at
https://www.cbp.gov/trade/basic-import-export/e-commerce/faqs ....................................9
CBP, Test Concerning Entry of Section 321 Low-Value Shipments Through the
Automated Commercial Environment (ACE) (Also Known as Entry Type 86);
Republication With Modifications, 89 Fed. Reg. 2630 (January 16, 2024) ("T86
Modification Notice") ..................................................................................3, 8, 9, 13
Dep't of the Treasury, Customs Service, Test Programs, 60 Fed. Reg. 14,211 (Mar. 16,
1995) ..............................................................................................................13
Mara Lee, CBP: Brokers Not Responsible for Contraband, but Must Have Proper Names,
Addresses, Descriptions, International Trade Today, June 21, 2024 ...............................8
Stephen Finan, "Clothing" The De Minimis Loophole: The Story of An Exception
Swallowing the Rule, 76 Ad. L. Rev. 453 (2024) .........................................................9
"Trade Facilitation and Trade Enforcement Act of 2015,
Section 901, Public Law 114–125, 130 Stat. 122 (19 U.S.C. § 4301 note) ("Section
321")" .................................................................................................................5
USCIT Rule 1 ......................................................................................................1
USCIT Rule 7 ......................................................................................................1

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, JUDGE**

SEKO CUSTOMS BROKERAGE, INC.,
                                    *Plaintiff,*

                    v.

UNITED STATES,

                                    *Defendant.*

**Court No.  24-cv-00097**

**NON-CONFIDENTIAL**

### REPLY IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION

In accordance with Rules 1 and 7 of the Rules of the United States Court of International Trade ("USCIT"), Plaintiff SEKO Customs Brokerage, Inc. ("Plaintiff" or "SEKO"), hereby respectfully submits its Reply to Defendant United States Customs and Border Protection's ("Defendant" or "CBP") filing on July 1, 2024 ("Defendant's Response"),[1] and in support of Plaintiff's Application For Temporary Restraining Order And Motion For Preliminary Injunction ("Plaintiff's Motion for TRO/PI") pursuant to this Court's grant of leave to do so. *See* ECF Nos. 35-38.

The Defendant's Response is dependent upon three critical misstatements: (1) CBP has provided SEKO with the specific underlying facts supporting the agency's decision to suspend SEKO from the Automated Commercial Environment Entry Type 86 Test ("T86") program; (2) the administrative process is ongoing; and (3) SEKO is no longer irreparably harmed by CBP's actions because it has been "conditionally" reinstated into the T86 and Customs-Trade

---

[1] As noted in Plaintiff's Motion for Leave to File its Reply (ECF No. 37), Defendant's Response combines two distinct sections: (1) a dispositive motion section (the Motion to Dismiss); and (2) a non-dispositive motion section (Defendant's Opposition to Plaintiff's Motion for TRO/PI). *See* ECF Nos. 35-36. This Reply only responds to the non-dispositive motion section of Defendant's Response.

Partnership Against Terrorism ("CTPAT") programs. However, the alleged violations of the T86 program provided by CBP were not violations or violations committed by SEKO. As such, CBP's requirement that SEKO submit a remedial action plan to correct these alleged violations compels SEKO to accept liability for third-party fraud where CBP has no statutory or regulatory basis to do so. Further, because there is no statutory or regulatory appeal process to review suspensions and enforcement actions under the T86 program, SEKO's suspensions concluded the administrative process and continue to irreparably harm its business operations and reputation throughout the customs brokerage community. In light of the narrowly tailored relief Plaintiff seeks, good cause persists to enter Plaintiff's Motion for TRO/PI.

## **ARGUMENT**

The basis for the injunctive relief sought in this case requires that SEKO establish that it is: (1) likely to suffer imminent, irreparable harm in the absence of preliminary relief; (2) likely to succeed on the merits; and the (3) balance of equities tips in its favor and is in the public interest. *See Kwo Lee, Inc. v. United States*, 24 F. Supp. 3d 1322, 1326 (Ct. Int'l. Trade 2015) (quoting *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008)); *Nken v. Holder*, 556 U.S. 418, 435 (2009) (merging the final two factors ((3) balance of hardships and (4) in the public interest)) together when the Government is the opposing party).

### I.    **Substantial Irreparable Harm To SEKO Is Imminent Absent Injunctive Relief**

#### A.    *SEKO Is Suffering Significant Financial Harm And Ongoing Loss Of Business Due To CBP's Enforcement Actions Under The T86 Program*

In the modern landscape of customs brokerage, the improved entry filing efficiency, visibility, and speed inherent in the T86 program have transformed what was originally coined as "voluntary" into the de facto standard across the industry. *See* Defendant's Response at 1, 10, 29, 30, 31, and 33. To compete for the customs brokerage business of e-commerce clients, entry

2

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

filers **must** be able to participate in the T86 programs. *See* Exhibit ("Ex.") A, Declaration ("Dec.") of James Gagne in Further Support of Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction ("Gagne Dec.") at ¶ 7. CBP's unsupported decision to suspend SEKO's participation in the T86 program went beyond falsely labeling SEKO as an "unacceptable compliance risk," it substantially and irreparably harmed SEKO's business and reputation by precluding it from being able to service e-commerce clients. *See* Defendant's Response at 11; CBP, *Test Concerning Entry of Section 321 Low-Value Shipments Through the Automated Commercial Environment (ACE) (Also Known as Entry Type 86); Republication With Modifications*, 89 Fed. Reg. 2630 (January 16, 2024) ("T86 Modification Notice").

Since the inception of the program in 2019, SEKO has filed T86 entries for its clients in the e-commerce industry. *See* Plaintiff's Motion for TRO/PI, Ex. A at ¶ 9. From 2019 to 2023, SEKO filed, on average, over [[███████]] T86 entries annually. *Id.* at ¶ 11. However, between the initiation of SEKO's suspension from the T86 program on May 27, 2024, to May 31, 2024, SEKO lost approximately [[█████████]] of its established business associated with filing T86 entries for customers in the e-commerce industry. *See* Plaintiff's Motion for TRO/PI at 9-10; *Id.* Ex. A at ¶ 16. Year-to-date, this significant loss of current business amounts to a decrease of approximately [[█████████████████ █████████]]. *See* Gagne Dec. at ¶ 8.

SEKO's ability to gain future e-commerce customs brokerage business has also been irreparably harmed as a direct result of CBP's enforcement actions. In order to submit bids in response to requests for proposals ("RFPs") for e-commerce clients, the entry filer **must** be able to participate in the T86 and CTPAT programs. *See* Plaintiff's Motion for TRO/PI, Ex. A at ¶¶ 8, 13, 18; *see* Gagne Dec. at ¶ 8. To date, SEKO has been unable to compete in [[███████]]

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

RFPs and opportunities due to CBP's suspensions and "conditional" reinstatements, which would have earned SEKO over [[███████████]]. See Gagne Dec. at ¶ 12. Thus, as provided for in the affidavit of James Gagne, SEKO's President and Chief Executive Officer, this irreparable harm is imminent, viable, and demonstrable. *See Elkem Metals Co. v. United States*, 135 F. Supp. 2d 1324 (Ct. Int'l Trade 2001) (citing *Nat'l Hand Tool Corp. v. United States*, 14 Ct. Int'l Trade 61, 66 (U.S. 1990)); *see also Kwo Lee*, 24 F. Supp. 3d at 1326.

CBP's enforcement actions and unsupported allegations have also substantially and irreparably harmed SEKO's reputation in the e-commerce community. Contrary to Defendant's implication that SEKO will no longer suffer the irreparable harm it faced while it was suspended and unable to file T86 entries, [[███]] of SEKO's e-commerce clients have returned since SEKO was suspended. Defendant's Response at 35; *see* Gagne Dec. at ¶ 10. From a reputational standpoint, being falsely labeled as an "unacceptable compliance risk" means that established and prospective e-commerce clients avoid your services for fear of increased inspections, delays, or other potential disturbances to their supply chains. *See* Gagne Dec. at ¶ 11. As such, the permanent damage to the relationships between SEKO and its e-commerce customers will continue to impact SEKO's ability to conduct business. *See One World Techs. v. United States*, 357 F. Supp. 3d 1278 (Ct. Int'l Trade 2018) (granting a preliminary injunction because plaintiff proffered sufficient evidence of irreparable harm based on testimony that its relationship with its exclusive distributor would be permanently damaged absent injunctive relief).

Defendant cites to *AVCO Fin. Corp. v. Commodity Futures Trading Comm'n.*, 929 F. Supp. 714 (S.D.N.Y. 1996) ("*AVCO*"), nonbinding caselaw, to maintain that loss of business and reputational harm are insufficient to demonstrate irreparable harm. Defendant's Response at 36.

Specifically, CBP attempts to broadly analogize harm caused by a government agency's

investigation with its own administrative enforcement action by broadly stating the following:

> Holding in the context of a preliminary injunction motion that the plaintiff's claim
> loss of business, "skittish" existing users, and an overall "tarnished" reputation
> was insufficient to establish irreparable injury, noting that for a business whose
> "practices are investigated, it is a necessary hazard of doing business to be the
> subject of an inquiry by a government regulatory agency.

Defendant's Response at 36. However, *AVCO* is sufficiently distinguishable from the facts

present in SEKO's case because the injunctive relief sought in *AVCO* was to, *inter alia*, enjoin

the governmental agency from committing further irreparable harm while it carried out

an investigation. *Avco,* 929 F. Supp. In SEKO's case, CBP went beyond merely investigating

alleged noncompliance and instead carried out enforcement actions to suspend SEKO from the

T86 and CTPAT programs. To this end, the court even highlighted cases applicable to SEKO's

harm and why the applicable courts held that granting injunctive relief was appropriate:

> The cases relied upon by AVCO are inapposite because they present
> circumstances **where an agency has taken concrete enforcement action
> beyond investigation or made a final determination adverse to the
> complaining party**. *See, e.g., Semaphore Entertainment Group Sports Corp. v.
> Gonzalez*, 919 F. Supp. 543, 548 (D. P.R. 1996) (granting preliminary injunction
> where agency issued an immediately effective cease and desist order); *American
> Customs Brokers Co. v. United States Customs Serv.*, 637 F. Supp. 218, 219 (Ct.
> Int'l Trade 1986) (granting preliminary injunction where Customs Service
> discontinued plaintiff's brokerage privileges).

*AVCO*, 929 F. Supp. at 723 n.5 (emphasis added).

Defendant additionally claims that Plaintiff could have availed itself of the "release from

manifest" process as an alternative to filing T86 entries. Defendant's Response at 31; *see* Section

321(a)(2)(C) of the Tariff Act of 1930 (19 U.S.C. § 1321(a)(2)(C)), as amended by the Trade

Facilitation and Trade Enforcement Act of 2015, Section 901, Public Law 114–125, 130 Stat.

122 (19 U.S.C. § 4301 note) ("Section 321"); 19 C.F.R. §§ 10.151 and 10.153. However, this

impractical recommendation is not based in the modern practicalities of *de minimis* entry filing

for e-commerce clients. The "release from manifest" entry process is manual, meaning that the lack of electronic transparency in the filing and subsequent clearance processes may only be rectified through significant investments in hands-on labor. *See* Plaintiff's Motion for TRO/PI, Ex. A at ¶¶ 16-19; Ex. B, Dec. of Lila Landis in Further Support of Plaintiff's Motion for TRO/PI ("Landis Dec.") at ¶ 9. From CBP's perspective, these types of entries are generally cleared by the agency with a lower priority status, which often results in multiple-day clearance delays and thus, serves no functional purpose as a legitimate alternative. *See* Plaintiff's Motion for TRO/PI, Ex. B at ¶ 13; Landis Dec. at ¶ 10. As a result, e-commerce retailers are less willing to entrust their cargo to non-T86 entry filers.

As such, the irreparable harm to SEKO's present and future financial wellbeing, as well as its reputation, prove not just a "mere possibility of injury," but rather, a "presently existing, actual threat" to SEKO's livelihood. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983) (quoting *S. J. Stile Assoc. Ltd. v. Snyder*, 646 F.2d 522, 525 (C.C.P.A. 1981)); *see also Lois Jeans & Jackets, U.S.A. v. United States*, 566 F. Supp. 1523, 1527 (Ct. Int'l Trade 1983) ("[t]he lost benefits from its past advertising, substantial expenditures for marketing and promotional efforts, and the loss of plaintiff's reputation in the trade and with the consuming public are significant actual and potential injuries which warrant the extraordinary relief of a preliminary injunction."). However, the substantial, irreparable financial harms suffered by SEKO pale to the more significant harm of CBP's attempt to transfer third-party liability.

> **B.**    ***SEKO Is Suffering From The Unlawful Transfer Of Liability For Third-Party Fraud To SEKO Without A Meaningful Opportunity To Defend Itself***

In the Violation Letter issued by CBP on June 11, 2024, CBP alleges that its suspension of SEKO from the T86 and CTPAT programs was based on the agency's analysis of two judgment samples of T86 entries. *See* Defendant's Response to Plaintiff's Motion for Expedited

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

Briefing and Expedited Consideration ("Defendant's Response to Expedite"), Ex. A (ECF No.

30). Each judgment sample consisted of 10 individual entries, in addition to CBP's reference to

two separately noted T86 entries. *Id.* CBP's analysis concluded in the following finding:



Complaint, Ex. G at 49. However, a careful review of the violations CBP associates with each

T86 entry shows that **none** of CBP's allegations are the result of SEKO's noncompliance with

customs laws. Rather, each of the alleged violations were either not committed by SEKO or were

not violations.

The first judgement sample of T86 entries, in addition to the one entry added subsequent

to CBP's analysis, serves as the only identification of any seizures of merchandise associated

with SEKO's T86 filings. SEKO was never made aware by CBP that these shipments were

seized prior to the issuance of CBP's June 11 Violation Letter, much less that they also served as

the cause for its suspension from the T86 program. In fact, CBP never issued SEKO civil

penalties, administrative sanctions, or liquidated damages for these seizures. Yet, CBP

unjustifiably suspended SEKO for these seizures, and now CBP requires it to submit a remedial

action plan to eliminate the risk of third-party fraud.

Further, CBP's has since recognized its lack of legal authority to hold T86 entry filers accountable for seizures of merchandise based on the misconduct of third-parties. The terms of the T86 program require that entry filers serve as the importer of record ("IOR") for each T86 entry they file. *See* Plaintiff's Motion for TRO/PI, Ex. B at ¶ 8; *see also* T86 Modification Notice at 2633. However, under current customs statutes and regulations for *de minimis* value entries, no IOR is required under any circumstances outside of the T86 environment. *See* 19 U.S.C. §§ 1484 and 1641; 19 C.F.R. §§ 10.151, 10.153, and 143.26(b). CBP's e-commerce and small business branch chief, Ms. Christine Hogue, recognized this discrepancy and stated that the agency will not hold brokers responsible for contraband inside a box when the exporter lied about its contents. *See* Mara Lee, *CBP: Brokers Not Responsible for Contraband, but Must Have Proper Names, Addresses, Descriptions*, INTERNATIONAL TRADE TODAY, June 21, 2024. However, in this case, CBP is attempting to do exactly that by arguing that the seizures associated with SEKO's T86 entries support its suspension from the program and render it an "unacceptable compliance risk."

The second judgement sample of T86 entries contained no seizures and alleges violations associated with vague commodity descriptions. *See* Defendant's Response to Expedite, Ex. A at 6-9. As is standard practice in the customs brokerage industry, SEKO bases its T86 entries on information provided by the entry's associated shipper or manufacturer. *See* Landis Dec. at ¶ 11. Although SEKO requests that the shipper or manufacturer provide as much detail as available pertaining to the commodity's description, SEKO cannot be held liable for inaccurate or incomplete information provided by third-parties. *Id.*

CBP also cites to a single occurrence where a shipper and consignee have fraudulently abused the value threshold for the *de minimis* entry exemption. *See* Defendant's Response to

Expedite, Ex. A at 9; 19 U.S.C. 1321(a)(2)(C); 19 C.F.R. §§ 10.151 and 10.153. However, as with the other data elements used by SEKO to file T86 entries, the merchandise value, consignee name, and consignee address are based on information provided by a third-party. In this singular instance, the value error was an abuse of the *de minimis* provisions by the shipper. Consequently, SEKO cannot be held similarly liable for third-party fraud.

CBP's position that SEKO should be held liable for seizures, commodity descriptions, and values based on information provided by third-parties creates a hypocritical double-standard between customs brokers who participate in the T86 program and those that file *de minimis* entries with even less information provided to the Government. Outside of the T86 program, standard *de minimis* shipments, i.e. those that are valued at not more than $800 and are not under subject to Partner Government Agency oversight, may be entered into the U.S. via "release from manifest" informal filing procedures. *See* 19 C.F.R. §§ 10.151 and 10.153. With such "manifest entries," no electronic entry data is provided, since the shipments are entered for clearance by presenting the bill of lading or a manifest listing each bill of lading to CBP. *See* T86 Modification Notice at 2631; 19 C.F.R. § 143.23(j)(3). Manifest entries are then released by CBP based only on the "very limited and inadequate information" provided on these documents. Stephen Finan, *"Clothing" The De Minimis Loophole: The Story of An Exception Swallowing the Rule*, 76 AD. L. REV. 453 (2024); *see* 19 C.F.R. §§ 143.23(k) and 128.21(a). Since carriers generally serve as the designated party "affecting entry for a *de minimis* shipment by clearing a shipment off the manifest," they also are subject to the standard of reasonable care. CBP, *E-Commerce Frequently Asked Questions* (May 21, 2024), available at https://www.cbp.gov/trade/basic-import-export/e-commerce/faqs; 19 C.F.R. § 143.26(b). However, those entry filers are not held liable for incorrect descriptions, erroneous values or

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

seizures. In comparison, T86 entry filers, such as SEKO, are inserted to act as the importer of record and are being held liable for incorrect descriptions, erroneous values, or seizures when no importer of record is required for *de minimis* entries by statute or regulation. SEKO is suffering irreparable harm as CBP attempts to hold SEKO liable for third-party fraud and create two separate and distinct environments for entry filers.

CBP's attempt to transfer third-party liabilities to SEKO also impacts its participation in the CTPAT program. Defendant undisputably based SEKO's CTPAT program suspension on alleged T86 entry filing violations. *See* Complaint, Exs. A and G. Accordingly, any suspension appeal process provided for redress of Plaintiff's suspension from the CTPAT program necessarily requires a corresponding appeal process for the T86 program suspension. As noted in Defendant's Response, CBP's May 17, 2024 CTPAT Suspension Letter declared that SEKO was [[███████████████████████████████████████]] *specifically because* [[████████████████████████████████████████ ███████████████████████████████]] *Id.* at 13; Complaint, Ex. A at 1 (ECF No. 19). In fact, CBP further reiterates the linkage between SEKO's suspension from the CTPAT program and allegations of T86 violations: [[█████████████ ██████████████████████████████████████████ ██████████████████████████████████████ ████████████████████]] *Id.*

## II.    SEKO Has Established a Likelihood to Succeed on The Merits

### A.    *SEKO's Claims are Ripe*

#### 1.    *Final Agency Action*

The determination as to whether an action constitutes a "final agency action" is made after conducting a two-pronged analysis: (1) Whether the agency action marks the consummation

of the agency's decision-making process; and (2) Whether the agency action is one by which rights or obligations have been determined, or from which legal consequences will flow. *Bennett v. Spear*, 520 U.S. 154 (1997); *see also Corus Grp. PLC v. Int'l Trade Comm'n*, 352 F.3d 1351, 1358 (Fed. Cir. 2003). In this case, there is final agency action because prior to the lawsuit, CBP suspended SEKO under its May 17 and May 20 Letters (*see* Complaint, Ex. A and G), and post lawsuit, made its decision to conditionally reinstate SEKO into the programs on May 31 (*see id.*, Ex. I), subject to a remedial action plan to address violations detailed in the agency's June 11 Violation Letter (*see* Defendant's Response to Expedite, Ex. A). With regard to the conditional reinstatement, there is final agency action because the request for the remedial action plan to address violations requires SEKO to accept them as its own and that is a legal consequence under the foregoing test.

The stipulations associated with SEKO's "conditional" reinstatement has "direct and appreciable legal consequences" to which SEKO is subject, as compared to the legal status of any other participant in the programs, because SEKO's memberships may also be revoked depending on CBP's approval of remedial action plans addressing violations committed by third-parties. *Bennett*, 520 U.S. at 178.

### 2.    *Fifth Amendment Property Interest*

Under both the Fifth Amendment and the APA, SEKO maintains a property interest in continued participation in the T86 and CTPAT programs. *See* Defendant's Response at 2 and 29. Consequently, any deprivation of this right without notice and an opportunity to respond to the charges violates these procedural safeguards. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

Fifth Amendment procedural protections attach to property interests if there is more than a "unilateral expectation of it" and a "legitimate claim of entitlement to it." U.S. CONST. Amend.

11

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

V; *Strickland v. United States*, 32 F.4th 311, 348 (4th Cir. 2022) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Notably, "property interests are not created by the constitution, but rather are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Here, CBP's admittance of SEKO into the T86 program created an understanding between the parties that SEKO would submit more entry data elements than required by law in exchange for expeditious processing and clearance of these *de minimis* entries. *See* CBP*, CBP Expands 321 Data Pilot Participation* (February 16, 2023), available at https://www.cbp.gov/newsroom/national-media-release/cbp-expands-321-data-pilot-participation.

As previously discussed, SEKO has been a participant in the T86 program since 2019 and annually files, on average, [[████████]] T86 entries. *See* Plaintiff's Motion for TRO/PI, Ex. A at ¶¶ 9 and 11. The T86 program is the de facto standard for handling e-commerce imports into the U.S. *See* Gagne Dec. at ¶ 7. Any suspension or conditions placed on the participation in this program affect SEKO's legitimate claim of entitlement to participation in the T86 program.

The hallmark of a property interest under the Fifth Amendment is an individual entitlement "which can be suspended or revoked only upon a showing of cause creates a property interest protected' by the Due Process Clause." *Mallinckrodt Inc. v. United States FDA*, Civil Action No. DKC 14-3607, 2015 U.S. Dist. LEXIS 193019 (D. Md. July 29, 2015) (quoting *Richardson v. Town of Eastover*, 922 F.2d 1152, 1156 (4th Cir. 1991); *Barnes v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012); *see also Barry v. Barchi*, 443 U.S. 55, 64 (1979)). In this case, CBP's decision to suspend SEKO from the T86 and CTPAT programs failed to adhere to the agency's own guidance requiring good cause. Although Defendant cites to CBP's "broad general

testing authority pursuant to 19 C.F.R. § 101.9(a)…to make sure rules and regulations as may be necessary to carry out the provisions of the Tariff Act of 1930," the agency failed to exercise this authority and promulgate regulations dictating how T86 suspension appeals should be administered. *See* Defendant's Response at 7-8; *see also* Dep't of the Treasury, Customs Service, *Test Programs*, 60 Fed. Reg. 14,211 (Mar. 16, 1995). The T86 Modification Notice dictates that:

> A test participant may be subject to civil and criminal penalties, administrative sanctions, or liquidated damages, as provided by law, for any of the following:
>
> (1)    Failure to follow the rules, requirements, terms, and conditions of this test;
> (2)    Failure to exercise reasonable care in the execution of participant obligations; or
> (3)    Failure to abide by applicable laws and regulations that have not been waived.

*Id.* at 2634. The Notice goes on to state that "CBP may suspend or remove a filer from further participation in the [T86 program] based on a determination that that filer's participation in the test poses an unacceptable compliance risk." *Id.* Here, CBP's discretion to suspend SEKO's participation in the T86 program was not unfettered because it must have been based on the "factual predicate" underlying one of the above reasons. Further, at no point during CBP's investigation into the alleged violations did the agency find that good caused existed to issue SEKO any civil or criminal penalties, administrative sanctions, or liquidated damages. *See Id.*

### 3.    APA Property Interest

Similarly, the APA provides procedural safeguards to those suffering a legal wrong as a result of an adverse agency action. *See* 5 U.S.C. §§ 551-559 and 701-706. The APA ensures that "agencies follow constraints even as they exercise their powers," and "[o]ne of those constraints is the duty of agencies to find and formulate policies that can be justified by neutral principles and a reasoned explanation." Strickland, 32 F.4th at 368 (quoting *F.C.C. v. Fox Tel. Stations, Inc.*, 556 U.S. 502, 537 (2009)). Additionally, the APA provides procedural protections for

property interests, such as licenses, grants, and other forms of permission provided by

governmental authorities. *See* 5 U.S.C. 558(c); *see also Gallagher & Ascher Co. v. Simon*, 687

F.2d 1067 (7th Cir. 1982) (ruling that a broker's term special permit exempting it from ordinary

entry procedures was considered a "license" under the APA).

      As determined by this Court in *Am. Customs Brokers Co. v. U.S. Customs Serv.*, 637 F.

Supp. 218 (Ct. Int'l Trade 1986), the grant of special entry procedures takes the form of a

"license" under the APA. *See* 5 U.S.C. § 551(8) (defining "license"). In that case, this Court

granted the customs broker's request for a preliminary injunction to enjoin the U.S. Customs

Service from the revocation of brokers immediate delivery privileges. Multiple courts share the

same understanding that a property interest in the form of a "license" vests under the APA upon

the issuance of a special grant of permission. *See, e.g., Pillsbury Co. v. United States*, 18 F.

Supp. 2d 1034 (Ct. Int'l Trade 1998) (ruling that by bestowing of authority on the claimant to

use Exporter's Summary Procedures, CBP granted a "license," which could not be revoked

without adherence to the APA and the agency's own rules); *Blackwell Coll. of Bus. v. Attorney

General*, 454 F.2d 928 (1971) (revoking appellant school's approved status as a school for alien

students violated due process because the status was a "valuable asset in the nature of a license

which the governmental proceedings threatened to terminate"); *Clarke v. CFTC*, 74 F.4th 627

(5th Cir. 2023) (noting that a no-action letter which grants permission to avoid compliance with

administrative requirements is a "form of permission," and therefore a "license").

      As designed by statute, the APA requires that the Court set aside agency actions that are

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.

§ 706(2)(A). Arbitrary and capricious agency actions may also violate the APA's "Second

Chance" doctrine, which obligates agencies to provide advance written notice of "the facts or

conduct which may warrant the action" as well as an "opportunity to demonstrate or achieve compliance with all lawful requirements." *See* 5 U.S.C. § 558(c); *Gallagher*, 687 F.2d at 1075. In a substantially similar case, this Court has previously held that when CBP fails to "identify a means by which [the accused] would be afforded an opportunity to address or rebut the vaguely stated reason" for the agency's enforcement action, it denies the accused the "opportunity for the "second chance" that the APA guarantees. *Pillsbury*, 18 F. Supp. 2d 1038. As compared to the case at hand, SEKO has repeatedly requested the underlying factual and legal basis for CBP's violation allegations in order to correct any misstatements in the agency's analysis. *See* Plaintiff's Motion for Leave to File Reply In Support of Plaintiff's Motion for TRO/PI, Exhibit A at 12-13. While CBP continuously refused to provide such details, it did, however, submit a list of alleged violations because of a direct order from this Court compelling the agency to do so. However, as noted above, the information given to SEKO fails to provide it with an adequate means to refute the allegations, as the details provided only demonstrate that the alleged violations were not violations committed by SEKO and for which SEKO is neither liable nor has any control over. As such, CBP's revocation of SEKO's "license," as provided for under the APA, violated the APA's procedural Due Process protections.

### 4.    *Exhaustion of Administrative Remedies*

SEKO has exhausted all available administrative remedies to seek both a complete record of the facts and legal basis used to attach liability for the alleged T86 violations to SEKO,  as well as the company's unconditional reinstatement into the T86 and CTPAT programs. There are no administrative appeal processes provided by statute, regulation, or agency guidance concerning suspensions from the T86 program. As a result, Plaintiff cannot be required to exhaust any further administrative remedies when none exist here, as also concluded by this Court in *Ninestar Corp. v. United States*, 687 F.Supp.3d 1308 (Ct. Int'l Trade 2024).

Assuming *arguendo* that administrative remedies specifically created through statute or regulation did exist, this Court would still have discretion as to when to require the exhaustion of those remedies. 28 U.S.C. § 2637(d); *see One World Techs., Inc. v. United States*, 380 F. Supp. 3d 1300, 1320 (Ct. Int'l Trade 2019) ("Even if Customs' decision was not a final agency action, the court has discretion to determine the circumstances under which the court will require exhaustion of administrative remedies.") (quoting *Cemex, S.A. v. United States*, 133 F.3d 897, 905 (Fed. Cir. 1998) (reasoning that "where Congress has not clearly required exhaustion, sound judicial discretion governs")). However, this discretion is curtailed by certain exceptions. *See Ninestar*, 687 F.Supp.3d at 1324. As applied to this case, the following exceptions are relevant: (1) when there is a lack of timely access to the confidential record; and (2) the Court determines that "raising the issue at the administrative level would have been futile." *Id.* (citations and internal quotation marks omitted); *see* Defendant's Response at 28.

The appropriateness of the first noted exception is evident in CBP's continued refusal to provide further information regarding specific transactions and underlying facts used to identify alleged T86 entry violations. By withholding from SEKO the information upon which the agency based its allegations for weeks until ultimately compelled by this Court, CBP's actions squarely fall within the exception for a "lack of timely access to the confidential record." *See Ninestar,* 687 F.Supp.3d at 1324.

The second applicable exhaustion requirement exception arises out of the inherent futility of raising the issue with the agency. *Id.* In this case, appeals concerning the suspensions of T86 program participants are not provided for in any of the applicable statutes or regulations. Further, Defendant describes at length the administrative remedies available to address suspensions from the CTPAT program. *See* Defendant's Response at 20. However, Defendant agrees that CBP has

failed to promulgate any regulations implementing an appeal process under CTPAT for suspensions related to alleged T86 violations. *See* Defendant's Response to Chief Judge Barnett's Questions at 4 (ECF Nos. 20 and 22) ("[T]here are no regulations that govern the appeals and/or reinstatement process for CTPAT partners."). As noted above, the CTPAT and T86 suspensions are intrinsically linked, because CBP based SEKO's suspension from CTPAT on alleged T86 entry violations. *See supra* Section I(B). Without a viable means of appealing a T86 suspension, any further attempt at an administrative remedy would be futile. *See Ninestar,* 687 F.Supp.3d at 1324. Therefore, because no means of relief are specifically provided for under the law addressing suspensions and appeals from the T86 program and the applicability of the Court's exhaustion requirements exceptions, SEKO has exhausted all available administrative remedies.

### B.    SEKO's Claims Are Not Moot

The relief SEKO requests from this Court is still outstanding. This Court recently held that an issue "becomes moot when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Ninestar*, 687 F.Supp.3d at 1331 (internal quotation marks omitted) (quoting *Sea Shepherd N.Z. v. United States*, 639 F. Supp. 3d 1367, 1376 (2023)). In this case, Plaintiff has sought, *inter alia*, injunctive relief from this Court to compel Defendant to provide the specific underlying factual and legal basis supporting CBP's decision to suspend SEKO from the T86 and CTPAT programs, enjoin the enforcement of the remedial action plan requirement, and unconditionally reinstate SEKO into both programs. *See* Plaintiff's Motion for TRO/PI. Despite Defendant's assertion that it has submitted to SEKO a list of the facts used to allege the T86 violations, the list of "facts" enumerated by CBP fail to identify violations committed by SEKO and for which SEKO is liable under the law. *See* Defendant's Response at 31; *see also supra* Section I(B). CBP's refusal to grant SEKO unconditional reinstatement into

the programs before the agency's approval of a remedial action plan presumes SEKO committed

trade violations. This also necessitates that SEKO accept liability for all of the associated

underlying violations asserted by CBP which are unproven or erroneous. *Id.* Therefore, the

injunctive relief originally requested is still available and, accordingly, SEKO's claims are not

moot.

### III.    The Public Interest and The Balance Of Equities Weigh In SEKO's Favor

The public interest and the balance of hardships, factors which "merge when the

Government is the opposing party," weigh heavily in SEKO's favor to prevent CBP from not

only holding it, but also any member of the customs brokerage community at large, liable for

unforeseen third-party acts. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Because injunctive relief

would mitigate CBP's inconsistent enforcement of the T86 entry filing procedures, which has

irreparably harmed SEKO and caused widespread confusion within the industry, the public

interest and balance of equities weigh heavily in SEKO's favor.

## **CONCLUSION**

For the reasons set forth herein, Plaintiff, SEKO Customs Brokerage, Inc., respectfully requests that this Court grant its Application for Temporary Restraining Order and grant its Motion for Preliminary Injunction pending the Court's final judgement in this action.

Respectfully submitted,

Dated:   July 10, 2024   

_____
Eric R. Rock, Attorney

Serhiy Kiyasov
Austin J. Eighan
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff SEKO Customs Brokerage, Inc.*

## **CERTIFICATE OF COMPLIANCE**

I, Eric R. Rock, hereby certify that this brief complies with the 7,000 word-count

limitation of the United States Court of International Trade set forth in Standard Chambers

Procedure § 2(B)(1) because this brief contains 5,659 words. In making this certification, I have

relied upon the word count function of the Microsoft Word processing system used to prepare

this brief.

Respectfully submitted,

Dated:   July 10, 2024

Eric R. Rock, Attorney

Serhiy Kiyasov
Austin J. Eighan
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff SEKO Customs*
*Brokerage, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Eric R. Rock, one of the attorneys for the Plaintiff, certify that a copy of the foregoing

was served on all parties by filing a copy via the U.S. Court of International Trade's CM/ECF

System, this Wednesday, July 10, 2024.

Attorney-in-Charge
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza - Room 346
Civil Division
New York, NY 10278
(212) 264-9230
civil.itfoecf@usdoj.gov

Edward F. Kenny
Senior Trial Counsel
International Trade Field Office
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-0480 or (202) 305-5216
edward.kenny@usdoj.gov

Nico Gurian
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-0583 or 9230
nico.gurian@usdoj.gov

Alexandra Khrebtukova
U.S. Customs & Border Protection
26 Federal Plaza, Suite 258
New York, NY 10278
(202) 845-6431
alexandra.khrebtukova@cbp.dhs.gov

Zachary Simmons
U.S. Customs & Border Protection
26 Federal Plaza, Suite 258
New York, NY 10278
(646) 341-2726
zachary.s.simmons@cbp.dhs.gov

Jennifer L. Petelle
U.S. Customs and Border Protection
Office of the Chief Counsel
1300 Pennsylvania Ave., NW
Washington, D.C. 20229
(202) 344-2940
jennifer.l.petelle@cbp.dhs.gov

Respectfully submitted,

Dated:   July 10, 2024

_____
Eric R. Rock, Attorney

Serhiy Kiyasov
Austin J. Eighan
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff SEKO Customs
Brokerage, Inc.*

2

# Exhibit A

# THIS PAGE CONTAINS CONFIDENTIAL INFORMATION

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, JUDGE**

SEKO CUSTOMS BROKERAGE, INC.,

*Plaintiff,*

v.

UNITED STATES,

*Defendant.*

**Court No.  24-cv-00097**

**CONFIDENTIAL**

### DECLARATION OF JAMES GAGNE IN FURTHER SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR <u>PRELIMINARY INJUNCTION</u>

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**



# Exhibit B

# THIS PAGE CONTAINS CONFIDENTIAL INFORMATION

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, JUDGE**

SEKO CUSTOMS BROKERAGE, INC.,

*Plaintiff,*

v.

UNITED STATES,

*Defendant.*

**Court No. 24-cv-00097**

**CONFIDENTIAL**

**DECLARATION OF LILA LANDIS IN FURTHER SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR <u>PRELIMINARY INJUNCTION</u>**

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**



**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

