Slip Op. 24-78

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **SEKO CUSTOMS BROKERAGE, INC.** | Before: Claire R. Kelly, Judge |
| Plaintiff, | |
| v. | Court No. 24-00097 |
| **UNITED STATES,** | **PUBLIC VERSION** |
| Defendant. | |

## OPINION AND ORDER

[Denying Seko Customs Brokerage, Inc.'s application for temporary restraining order and motion for preliminary injunction.]

Dated: July 15, 2024

Eric R. Rock, Serhiy Kiyasov, and Austin J. Eighan, Rock Trade Law LLC, of Chicago, IL, for plaintiff Seko Customs Brokerage, Inc.

Edward F. Kenny, Senior Trial Counsel, and Nico Gurian, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY for defendant United States. Also on the brief were Patricia M. McCarthy, Director, Brian M. Boynton, Principal Deputy Assistant Attorney General, and Justin R. Miller, Attorney-In-Charge. Of counsel on the brief were Alexandra Khrebtukova, Office of Chief Counsel, International Trade Litigation, Jennifer L. Petelle, Office of Chief Counsel, and Zachary S. Simmons, U.S. Customs and Border Protection.

  **Kelly, Judge:** Before the Court is Plaintiff Seko Customs Brokerage, Inc.'s ("Seko") application for temporary restraining order ("TRO") and motion for preliminary injunction (collectively "the motion" or "Seko's motion"). See generally [Pl. Mot.] June 4, 2024, ECF No. 21. Seko's motion requests that this Court: (1) restrain U.S. Customs and Border Protection ("CBP") from requiring that Seko remedy its alleged violations of Customs-Trade Partnership Against Terrorism

("CTPAT") and the Automated Commercial Environment Entry Type 86 Test ("T86") (collectively "the programs") without providing facts of the underlying violations that led to Seko's suspension from the programs; (2) enjoin CBP from requiring Seko to take remedial action concerning the alleged violations of the programs without access to the facts of the underlying violations; (3) require CBP to provide Seko with a meaningful and reasonable timeline to address the specific facts of the underlying program violations; and (4) restrain CBP from making information concerning the violations of and suspension from the programs "available to anyone other than" Seko and CBP. Pl. Mot. at 1. Since filing the motion, Seko has modified its request for injunctive relief, now seeking a mandatory injunction that CBP unconditionally reinstate Seko's privileges unless and until CBP proves its case. Reply Supp'n [Pl. Mot.] at 17–18, July 10, 2024, ECF No. 40 ("Pl. Reply"). Defendant opposes Seko's request. See Def's Mot. Dismiss & Opp'n [Pl. Mot.] at 31–38, July 1, 2024, ECF No. 35 ("Def. Resp."). For the following reasons, Seko's motion is denied.

## BACKGROUND

Seko is a privately held corporation based in Illinois that provides customs brokerage services, including full customs clearance, entry services, and express e-commerce shipping solutions to e-commerce clients. Compl. at ¶ 22–23, June 4, 2024, ECF No. 19. Seko participates in the CTPAT and T86 programs, offered by CBP to facilitate the tax and duty-free de minimis entries of merchandise under $800, pursuant to Section 321(a)(2)(C) of the Tariff Act of 1930, as amended 19 U.S.C.

Court No. 24-00097                                                                                                   Page 3
**PUBLIC VERSION**

§ 1321.[1]  See id. at ¶¶ 28, 32; Def.'s Resp. [The Court's] Questions at 1–3, June 4, 2024, ECF No. 20.

Congress established CTPAT, through passage of the Security and Accountability for Every Port Act of 2006, Pub. L. Mo. 109–347, 120 Stat. 1884 (codified at 6 U.S.C. § 961 et seq.), as a voluntary public-private partnership intended to strengthen national security and facilitate the movement of secure cargo throughout the international supply chain.  See 6 U.S.C. § 961(a).  Applications for CTPAT participation is available to "[i]mporters, customs brokers, forwarders, air, sea, land carriers, contract logistics providers, and other entities in the international supply chain and intermodal transportation system."  6 U.S.C. § 962.  The statute prescribes the minimum requirements for participation in the program, including that participants implement and maintain security measures meeting the criteria established by CBP.  6 U.S.C. § 963(2)–(3).  Moreover, Section 967 delineates the consequences for lack of compliance with CBP's requirements and establishes the right to appeal such consequences.  See 6 U.S.C. § 967.

The T86 program is a pilot program,[2] established by CBP in 2019 seeking to measure the effectiveness of the Automated Commercial Environment ("ACE") to

---

[1]  Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.
[2]  CBP is permitted to conduct test programs and procedures to "evaluate the effectiveness of new technology or operational procedures regarding the processing of

(footnote continued)

Court No. 24-00097                                                                                                    Page 4
**PUBLIC VERSION**

streamline entry of de minimis entries. See Test Concerning Entry of Sect. 321 Low-Value Shipments Through Automated Commercial Environment (ACE), 84 Fed. Reg. 40,079, 40,080–82 (Dept' Homeland Sec. Aug. 13, 2019) ("T86 Announcement"). The test is open to all "owners, purchasers, consignees, and designated customs brokers of Section 321 low-valued shipments," as well as "all modes of cargo transportation." Id. at 40,081. As a condition of participation in the T86 program, participants agree to exercise "reasonable care" in executing their obligations under the test, including adherence to certain reporting requirements outlined by CBP for entries.[3] Id. at 40,081–82.

Under both programs, failure to adhere to CBP's requirements may result in the assessment of penalties, sanctions, and damages that CBP deems appropriate, including the possibility of suspension or termination. See T86 Announcement, 84

---

passengers, vessels or merchandise." 19 C.F.R. § 101.9(a). CBP may "impose requirements different from those specified in the CBP regulations," provided that the differences do not affect "the collection of revenue, public health, safety, or law enforcement." Id.

[3] CBP requires T86 participants to submit the following data elements on entry of de minimis imports:

> (1) The bill of lading or the air waybill number; (2) Entry number; (3) Planned port of entry; (4) Shipper name, address, and country; (5) Consignee name and address; (6) Country of origin; (7) Quantity; (8) Fair retail value in the country of shipment; (9) 10-digit HTSUS number; (10) IOR number of the owner, purchaser, or broker when designated by a consignee (conditional).

T86 Announcement, 84 Fed. Reg. 40,082.

Fed. Reg. at 40,082 (notifying the public of the T86 test and possible repercussions for misconduct); <u>Test Concerning Entry of Section 321 Low-Value Shipments Through the Automated Commercial Environment (ACE) (Also Known as Entry Type 86); Republication With Modifications</u>, 89 Fed. Reg. 2,630, 2,634 (Dept' Homeland Sec. Jan. 16, 2024) ("T86 Modification") (clarifying that CBP may suspend a T86 participant if it is determined that the participant poses an "unacceptable compliance risk"); 6 U.S.C. § 961(a) (establishing CTPAT program); 6 U.S.C. § 963 (outlining minimum requirements for CTPAT participation); 6 U.S.C. § 967 (explicating consequences for lack of compliance with the CTPAT program as well as prescribing the right to appeal suspension from the program).

On May 17, 2024, CBP suspended Seko from participation in the CTPAT program for 90 days, which was followed by a 90-day suspension from the T86 program on May 20, 2024. See Exh. A: Letter CBP to Seko Re CTPAT Suspension at 1–2, May 17, 2024, ECF No. 19 ("CTPAT Suspension"); Exh. G: Letter CBP to Seko Re T86 Suspension at 1–2, May 20, 2024, ECF No. 19 ("T86 Suspension"). CBP explained that the suspensions stemmed from inconsistent data in T86 entry filings and corresponding manifests submitted by Seko, posing a risk to "revenue and admissibility." CTPAT Suspension at 1; T86 Suspension at 1. Thus, CBP determined that Seko failed to meet the minimum-security requirements for participation in both programs. CTPAT Suspension at 1; T86 Suspension at 1.

After receipt of Seko's request that CBP reconsider the suspensions, see Exh. B: Letter Seko to CBP Re [CTPAT Suspension & T86 Suspension] at 1–5, May 23, 2024, ECF No. 19, CBP granted Seko a 90-day conditional reinstatement into both programs, effective May 31, 2024. See Exh. I: Letter CBP to Seko [Re CTPAT & T86 Reinstatement] at 1–2, May 31, 2024, ECF No. 19 ("CTPAT & T86 Reinstatement").[4]

On June 1, 2024, Seko filed its complaint, asserting jurisdiction under 28 U.S.C. § 1581(i),[5] and requested injunctive relief against Defendant. See generally Pub. Compl., June 1, 2024, ECF No. 2; Pub. Mot. Prelim. Injunct. & [TRO], June 1, 2024, ECF No. 8. On June 3, 2024, the Court held a virtual conference requesting certain information from the parties. See Teams Conf., June 3, 2024, ECF No. 12. On June 4, 2024, the parties applied for a judicial protective order, which was granted by the Court. See Order, June 4, 2024, ECF No. 18. That same day, after entry of the judicial protective order, Seko filed its confidential complaint and confidential motion for a preliminary injunction & TRO. See generally Compl.; Pl. Mot.

---

[4] To obtain unconditional reinstatement, CBP instructed Seko to develop, update, and implement an action plan in 30 days demonstrating that, inter alia, Seko (i) has taken "sufficient remedial actions" to ensure that accuracy of its T86 submissions; and (ii) show compliance with program requirements as well as CBP regulations. CTPAT & T86 Reinstatement at 1.

[5] Defendant has challenged the jurisdictional grounds on which Seko's suit rests, and the Court will address that challenge when ruling on Defendant's motion to dismiss. See Def. Resp. at 17–30. The Court only addresses Seko's motion at this time, as Defendant's motion to dismiss is not yet fully briefed.

Court No. 24-00097 Page 7
**PUBLIC VERSION**

On June 7, 2024, the Court held a telephone status conference with the parties. See Telephone Conf., June 7, 2024, ECF No. 27. That same day, Seko moved the Court to expedite briefing on the instant motion, but the Court found that the circumstances did not justify an accelerated briefing schedule. See generally Pl. Mot. Exped., June 7, 2024, ECF No. 29; Order, June 12, 2024, ECF No. 32. On June 11, 2024, Defendant provided additional detailed information to Seko concerning its initial suspension from the programs. Def. Resp. Pl. Mot. Exped. at Exh. A, June 11, 2024, ECF No. 30 ("Add. Info."). On July 1, 2024, Defendant filed its response in opposition to Seko's motion, consolidated with its motion to dismiss Seko's action. See generally Def. Resp. After being given leave to file a reply to Defendant's response by the Court, Seko filed its reply brief on July 10, 2024. See generally Pl. Reply. On July 12, 2024, the Court held an evidentiary hearing on Seko's request.[6] Oral. Arg., July 12, 2024, ECF No. 43.

The parties have also engaged in extensive dialogue throughout the litigation. See, e.g., Letter Seko to CBP Re [Req. Unconditional Reinstatement into Type 86 & CTPAT Programs] at 2–3, June 28, 2024, ECF No. 37 ("Seko June 28 Letter") (detailing timeline of communications between the parties from May 17, 2024, to June 25, 2024). After receiving the additional violation details from CBP on June 11, Seko indicated its desire to stay proceedings in this Court on June 13 and 21; the offer was

---

[6] Despite the opportunity to call witnesses at the July 12, 2024, hearing, neither party opted to do so. Compare Order at 1, July 8, 2024, ECF No. 39, with Oral Arg.

rejected by CBP on June 25. Id. On July 3, 2024, CBP notified Seko that it was extending the deadline for submission of Seko's remedial action plan to July 31, 2024. See CBP Letter to Seko Re [Seko June 28 Letter] at 2, July 3, 2024, ECF No. 42 ("CBP Ext.").

## JURISDICTION AND STANDARD OF REVIEW

The Court is authorized to issue injunctive relief in the form of a preliminary injunction or temporary restraining order pursuant to United States Court of International Trade Rule 65. See Harmoni Int'l Spice, Inc. v. United States, 211 F. Supp. 3d 1298, 1306 (Ct. Int'l Trade 2017). Injunctive relief is "an extraordinary remedy never awarded as of right." Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). A movant is entitled to injunctive relief if the following conditions are satisfied: "(1) likelihood of success on the merits, (2) irreparable harm absent immediate relief, (3) the balance of interests weighing in favor of relief, and (4) that the injunction serves the public interest." Silfab Solar, Inc. v. United States, 892 F.3d 1340, 1345 (Fed. Cir. 2018) (citing Winter, 555 U.S. at 20).

## DISCUSSION

Seko requests that the Court grant its motion for injunctive relief because (1) it is likely to suffer imminent, irreparable harm in the absence of preliminary relief; (2) it is likely to succeed on the merits; (3) the balance of equities tips in Seko's favor; and (4) injunctive relief is in the public interest. Pl. Mot. at 7; id. at 8–17; Pl. Reply at 2–19. Defendant responds that Seko is not entitled to injunctive relief because all

Court No. 24-00097                                                                                       Page 9
**PUBLIC VERSION**

factors weigh against granting Seko's request. Def. Resp. at 31–38. For the following reasons, Seko's motion is denied.

Although courts weigh all the articulated factors in determining whether to grant injunctive relief, the requirement that the movant demonstrate some form of irreparable harm is indispensable. See Winter, 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction" (emphasis omitted)); Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States, 393 F. Supp. 3d 1271, 1276 (Ct. Int'l Trade 2019) ("COALITION") ("Critically, irreparable harm may not be speculative or determined by surmise" (internal citations omitted)); Bill Barrett Corp. v. U.S. Dep't of Interior, 601 F. Supp. 2d 331, 334–35 (D.D.C. 2009) (citing Winter, 555 U.S. at 22) ("While these factors interrelate on a sliding scale, the movant must, at a minimum, demonstrate that irreparable injury is likely in the absence of an injunction" (internal citations, quotations, and emphasis omitted)). Thus, failure to show irreparable harm alone is sufficient to deny injunctive relief. See, e.g., Sumecht NA, Inc. v. United States, 923 F.3d 1340, 1348 (Fed. Cir. 2019) (affirming the lower court's denial of injunctive relief to movant on sole grounds that it could not show irreparable harm); Matsushita Elec. Indus. Co. v. United States, 823 F.2d 505, 509–10 (Fed. Cir. 1987) (reversing grant of injunctive relief upon failure to show irreparable harm without consideration of other factors).

Court No. 24-00097                                                                          Page 10
**PUBLIC VERSION**

      Irreparable harm is a near certain and serious harm that cannot be undone. Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983). As the Court of Appeals explained:

> Only a viable threat of serious harm which cannot be undone authorizes exercise of a court's equitable power to enjoin before the merits are fully determined. A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great. A presently existing, actual threat must be shown.

Id. (internal citations and emphasis omitted). The moving party assumes the "extremely heavy burden" of putting forth more than merely speculative evidence to demonstrate the level of harm requiring injunctive relief. Grupo Simec S.A.B. de C.V. v. United States, No. 22-CV-00202, 2023 WL 2202813, at *5 (Ct. Int'l Trade Feb. 24, 2023). Typically, loss of income alone is not sufficient to constitute irreparable harm, particularly when there is the possibility of compensatory or corrective relief in the future. Sampson v. Murray, 415 U.S. 61, 90 (1974). However, other harms such as price erosion, damage to customer relationships or reputation, and loss of business opportunities can be considered irreparable harm. Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012). To show irreparable harm under these standards, the movant must demonstrate a "slowing or discontinuation of its business while awaiting [the agency's] determination [that] would be immediate, irreparable, and out of its own control." See Harmoni, 211 F. Supp. 3d at 1308 (emphasizing that the plaintiff failed to demonstrate that "it lack[ed] sufficient access to capital" to continue doing business until the agency issued its final determination when denying

Court No. 24-00097                                                            Page 11
**PUBLIC VERSION**

request for injunctive relief); see also Winter, 555 U.S. at 22 (clarifying that the proper standard for irreparable harm is "likely" harm, not a "possibility" of harm)

Even though economic loss alone is insufficient for a finding of irreparable harm warranting injunctive relief, see Sampson, 415 U.S. at 90, when monetary damages are unavailable, such as in cases where the defendant benefits from sovereign immunity, "courts have recognized that economic loss may constitute 'irreparable harm.'"[7] Clarke v. Office of Fed. Hous. Enter. Oversight, 355 F. Supp. 2d 56, 65–66 (D.D.C. 2004). Nonetheless, "the mere fact that economic losses may be irrecoverable does not, in and of itself, compel a finding of irreparable harm." Nat'l Min. Ass'n v. Jackson, 768 F. Supp. 2d 34, 53 (D.D.C. 2011); see also Luokong Tech. Corp. v. Dep't of Def., 538 F. Supp. 3d 174, 192 (D.D.C. 2021) ("[That courts have recognized that unrecoverable economic loss can constitute irreparable harm from an immune defendant] is not to say that the existence of any unrecoverable financial injury from an entity that enjoys sovereign immunity means irreparable harm can be established"); Ninestar Corp. v. United States, 687 F. Supp. 3d 1308, 1338 (Ct. Int'l Trade 2024) (citing Luokong Tech. Corp., 538 F. Supp. 3d at 192). To treat unrecoverable damages as per se irreparable "would essentially eviscerate the irreparable harm requirement for any cases brought against the government."

---

[7] The United States and its agencies are protected by sovereign immunity; thus, a plaintiff may only seek monetary damages from agencies if there has been an affirmative waiver of immunity by Congress. See Lane v. Pena, 518 U.S. 187, 192 (1996).

Court No. 24-00097　　　　　　　　　　　　　　　　　　　　　　　　Page 12
**PUBLIC VERSION**

Xiaomi Corp. v. Dept. of Def., No. CV 21-280 (RC), 2021 WL 950144, at *10 (D.D.C. Mar. 12, 2021) (reasoning that "[a]ny movant that could show any damages against an agency with sovereign immunity—even as little as $ 1—would satisfy the standard" (internal citations omitted)).

Here, Seko's allegations are either moot or speculative. First, the evolving nature of Seko's claims for injunctive relief, much of which are now moot, undermines its view that it will suffer irreparable harm absent injunctive relief. Seko's motion sought an order:

> (1) Restraining [CBP] from requiring [Seko] to take remedial action(s) as to the alleged violation(s) concerning [the T86 and CTPAT programs] without providing any specific facts concerning such alleged violation(s);
> (2) Enjoining [CBP] from requiring [Seko] to take remedial action(s) as to the alleged violations concerning the T86 and CTPAT programs without providing any specific facts concerning such alleged violation(s);
> (3) Requiring [CBP] to provide to [Seko] meaningful and reasonable timeline to address such specific facts of alleged violation(s) when provided; and
> (4) Restraining [CBP] from making such alleged violation(s) or anything identifying such alleged violation(s) available to anyone other than [Seko] or [CBP].

Pl. Mot. at 1. Since filing its motion, Seko has been provided with a detailed explanation of the specific facts of the violation. See Add. Info. at 1–10 (explaining the illicit nature of seized items, the inadequate and erroneous HTSUS descriptions, defects with the Power of Attorney signatures, and instances of exceeding the daily entry limit per ultimate consignee). Further, since filing the motion, Seko has been

Court No. 24-00097                                                                                                                                      Page 13
**PUBLIC VERSION**

conditionally reinstated into the CTPAT and T86 programs, see CTPAT & T86 Reinstatement at 1, and CBP has provided Seko with a timeline for unconditional reinstatement as well as an extension for submission of the remedial action plan. See Def's Resp. Pl. Mot. Expedite at 1, June 11, 2024, ECF No. 30 (explaining the additional detailed information concerning the identified violations and remedial actions CBP expects Seko to address); id. at 11–17 (same); CBP Ext. at 2. Moreover, Defendant has filed its submissions under seal, with the relevant sensitive information redacted as requested by Seko, since entry of the judicial protective order on June 4, 2024. Thus, all of the alleged harms it proffered in its motion have been addressed.

Nonetheless, Seko maintains that it is "suffering significant financial harm and ongoing loss of business due to CBP's enforcement actions under the T86 program" because the suspensions have inhibited its ability to retain future business and marred Seko's reputation in the e-commerce community.[8] Pl. Reply at 3–4. Thus, Seko currently seeks a mandatory injunction that the government unconditionally reinstate Seko's privileges unless and until the government proves it case. Pl. Reply

---

[8] Prior to being conditionally reinstated, Seko claimed its suspension (a) jeopardized the investments Seko made to comply with and maintain the T86 program's requirements; (b) caused losses of goodwill and confidence in its customers through publication of the suspensions; (c) resulted in significant monetary losses "by and through its inability to compete in the marketplace"; (d) required Seko to overhaul its Section 321 low-value entry filing process; and (e) otherwise impacted its business operations. Pl. Mot. at 8–11.

Court No. 24-00097                                                                                                         Page 14
**PUBLIC VERSION**

at 17–18 (arguing that CBP's refusal to unconditionally reinstate Seko presumes Seko committed trade violations, which "necessitates that Seko accept liability for all of the associated underlying violations asserted by CBP which are unproven or erroneous"). Ignoring the changes in the relief sought by Seko, its motion must fail because (1) the evidence it offers in support of its alleged injuries is lacking, and (2) the purported injuries it claims, i.e., interference with business and harm to reputation, fail in this case to overcome the high burden the law imposes for injunctive relief. See Zenith Radio Corp., 710 F.2d at 809.

      First, the evidence supplied by Seko alludes to speculative harm at best. Seko predicts it has permanently lost customers, who allegedly severed business with Seko after suspension from both programs, due to the cloud cast by CBP's suspension and conditional reinstatement under which Seko operates. See generally Decl. James Gagne Supp'n [Pl. Mot.], May 31, 2024, ECF No. 21 (" May Gagne Decl."); Decl. Lila Landis Supp'n [Pl. Mot.], May 31, 2024, ECF No. 21 ("May Landis Decl."); See generally Decl. James Gagne Further Supp'n [Pl. Mot.], July 10, 2024, ECF No. 40 ("July Gagne Decl."); Decl. Lila Landis Further Supp'n [Pl. Mot.], July 10, 2024, ECF No. 40 ("July Landis Decl."). Specifically, Seko claims it has lost e-commerce clients since suspension from the programs, [[      ]] of which has returned.[9] July Gagne Decl. at ¶¶ 9–10. From this statement, Seko asks the Court to infer that it will

---

[9] Seko specifies that it has lost "at least [[                 ]]" since suspension. July Gagne Decl. at ¶ 9.

Court No. 24-00097                                                                                                                             Page 15
**PUBLIC VERSION**

continue to lose customers absent injunctive relief. However, it is not clear when Seko lost its customers. If Seko lost its customers as a result of the suspensions, it does not follow that it would lose more customers based on its conditional reinstatement as opposed to its unconditional reinstatement. Nor does it follow that the requested injunctive relief would lead to the return of those customers. Seko offered no witnesses to testify as to precisely when or why business ties with Seko were severed, or under what circumstances they would be restored. Instead, Seko infers that its continued conditional reinstatement will result in the harm that it predicts and asks the Court to do the same.

Similarly, the evidence supplied by Seko that suspension from the programs has irreparably damaged its reputation within the customs brokerage industry, resulting in a loss of business, is inadequate. July Gagne Decl. at ¶ 11 (claiming the suspensions have labeled Seko as an "unacceptable compliance risk," as deemed by CBP). It is unclear whether the conditional reinstatement had any impact on its reputation. Again, Seko asserts a harm in a declaration, but when given the opportunity to be heard, offered no live testimony to further substantiate the claim. Seko further states that it has lost at least [[          ]] for potential business with a client, as well as [[              ]] for an e-commerce client" being placed on "hold" as a result of the T86 suspension. Id. at ¶ 12. But again, Seko offered no

Court No. 24-00097                                                                                                          Page 16
**PUBLIC VERSION**

witnesses or evidentiary support to substantiate any of the alleged harms in the declarations.  See generally Oral Arg.[10]

Second, even ignoring the weak evidentiary showing, the purported injuries Seko claims, i.e., interference with business and harm to reputation, do not warrant an injunction in this case.  Potential economic loss alone is insufficient to warrant the extraordinary remedy of injunctive relief.  See, e.g., Sampson, 415 U.S. at 90; Nat'l Min. Ass'n, 768 F. Supp. 2d at 52–53.  Any regulation can impose costs upon businesses, and to invoke that cost as a form of irreparable harm would create a "per se irreparable harm rule" which "would lie in tension with the [regulation] itself." Ninestar, 687 F. Supp. 3d at 1341 (finding that loss of "business opportunities and corporate reputation[] are obvious consequences that would be true of any entity" that did not comply with regulatory standards, and an insufficient showing for irreparable

---

[10] Seko's invocation of American Customs Brokers Co. v. United States Customs Services fails to persuade.  See Pl. Reply at 5, 14 (citing 10 CIT 385, 637 F. Supp. 218 (1986)); Oral Arg. at 21:50, 55:45. In American Customs Brokers Co., the court found that the plaintiff would suffer irreparable harm absent injunctive relief after the U.S. Customs Service ("Customs") indefinitely discontinued the plaintiff's immediate delivery privilege due to erroneous information in the plaintiff's entry papers.  See 10 CIT at 387, 637 F. Supp. at 221.

Unlike the plaintiff in that case, however, Seko has been conditionally reinstated into both the CTPAT and T86 programs, thus allowing it to resume its business operations involving T86 entries.  See CTPAT & T86 Reinstatement at 1. Moreover, the Court in American Customs Brokers Co. made a factual finding, lacking here, after assessing affidavits and detailed testimony that the harm the plaintiff suffered rose to the level required for injunctive relief.  See 10 CIT at 387, 637 F. Supp. at 221.

harm).[11] Indeed, Seko's economic loss stemming from regulatory action is a cost that many businesses face, and it is a consequence for which Seko had notice. See T86 Announcement, 84 Fed. Reg. at 40,082 (prescribing T86 program requirements and penalties); T86 Modification, 89 Fed. Reg. at 2,634 (clarifying T86 penalties); 6 U.S.C. § 963 (prescribing CTPAT minimum requirements); 6 U.S.C. § 967 (prescribing consequences for non-compliance with CTPAT requirements). Participation in the programs is predicated on remaining in good standing by following the rules and

---

[11] This Court has rejected a per se irreparable harm rule, noting that it nullifies the irreparable harm requirement for preliminary injunctions. Ninestar, 687 F. Supp. 3d at 1341. In Ninestar, the plaintiff-corporation was added to the Uyghur Forced Labor Prevention Act ("UFLPA") Entity List, which prohibits "the importation into the United States of any goods produced by [an entity on the list.]". Id. at 1314–15 (citing Notice Regarding the Uyghur Forced Labor Prevention Act Entity List, 88 Fed. Reg. 38,080, 38,082 (Dep't Homeland Sec. June 12, 2023)). The plaintiff sought a preliminary injunction to vacate the listing decision, alleging that its inclusion on the list caused loss of reputation, goodwill, and loss of business opportunities. Id. at 1315, 1340. The Court denied injunctive relief, noting that a finding of irreparable harm under the circumstances would "nullify" the element within injunctive relief analysis, and the harms alleged would "be the same for all other similarly situated plaintiffs." Id. at 1341.

     Here, although the facts are mirrored such that Seko alleges harm involving suspension from (and conditional reinstatement to) an advantageous list (rather than inclusion on a detrimental list, as in Ninestar), there exists the same danger of implementing a per se rule for irreparable harm. Suspension from a privileged list, like the CTPAT or T86 programs, will "necessarily have an adverse effect" on a brokerage firm. Corus Grp. PLC v. Bush, 26 CIT 937, 944, 217 F. Supp. 2d 1347, 1356 (2002) (holding that a finding of irreparable harm caused by an increase in duty rate would create an impermissible per se irreparable harm rule, which is "contrary to the extraordinary nature of the remedy"), aff'd in part sub nom. Corus Grp. PLC. v. Int'l Trade Comm'n, 352 F.3d 1351 (Fed. Cir. 2003). Nonetheless, here, and similar to Ninestar, suspension from the programs alone cannot satisfy the irreparable harm requirement.

standards that CBP established, all of which must be achieved before allowed entry into the programs. See T86 Announcement, 84 Fed. Reg. at 40,082; 6 U.S.C. § 963.

Seko's alleged harm to its reputation also fails to support its motion. To the extent that Seko has been labeled an "unacceptable compliance risk" by CBP, see July Gagne Decl. at ¶ 11, that harm has already occurred, and Seko fails to substantiate a claim that it currently faces an imminent harm from the conditional reinstatement under which it now operates. Indeed, Seko's request that CBP agree to stay the proceedings in this Court multiple times after filing the motion suggests that it is not suffering from irreparable harm by virtue of its current conditional reinstatement. See Seko June 28 Letter at 2–3 (indicating that Seko expressed interest in a stay of the proceedings in letters to CBP dated June 13, 2024, and June 21, 2024). Accordingly, Seko's motion is denied.

## CONCLUSION

Therefore, Seko fails to make a sufficient showing to warrant granting its application for temporary restraining order and its motion for a preliminary injunction. In light of the foregoing, it is

**ORDERED** that Seko's application for temporary restraining order and motion for preliminary injunction, see ECF No. 21, are denied.

　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Claire R. Kelly
　　　　　　　　　　　　　　　　　　　　　　　　　Claire R. Kelly, Judge

Dated:　　　July 15, 2024
　　　　　　New York, New York