**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, JUDGE**

SEKO CUSTOMS BROKERAGE, INC.,
                                          *Plaintiff,*
                v.

UNITED STATES,
                                          *Defendant.*

**Court No.  24-cv-00097**

**NON-CONFIDENTIAL**

## PROPOSED ORDER

Upon consideration of Defendant's Motion to Dismiss, Plaintiff's Response, and all of

the pleadings and papers on file herein, and after due deliberation, it is hereby —

**ORDERED** that Defendant's Motion to Dismiss is DENIED.

_____
                    HON. CLAIRE R. KELLY, JUDGE

Dated: New York, New York

This _____day of _____, 2024.

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, JUDGE**

SEKO CUSTOMS BROKERAGE, INC.,

*Plaintiff,*

v.

UNITED STATES,

*Defendant.*

Court No. **24-cv-00097**

**NON-CONFIDENTIAL**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

Eric R. Rock
Serhiy Kiyasov
Austin J. Eighan
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

Dated: ___August 5, 2024___

*Counsel For Plaintiff SEKO Customs*
*Brokerage, Inc.*

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................. ii

STATEMENT OF FACTS ...................................................................................................... 2

I.      SEKO's Longstanding Collaboration with CBP through the T86 and CTPAT Programs . 2

II.     CBP's Suspension of SEKO's Participation in the T86 and CTPAT Programs ............... 4

III.    CBP's "Conditional" Reinstatement of SEKO into the T86 and CTPAT Programs.......... 7

STANDARD OF REVIEW ..................................................................................................... 9

SUMMARY OF THE ARGUMENT ..................................................................................... 11

ARGUMENT ......................................................................................................................... 12

I.      SEKO's Claims are Ripe for Judicial Review ................................................................. 12

II.     SEKO Challenged Final Agency Action ......................................................................... 17

III.    SEKO's Claims Are Not Moot ........................................................................................ 21

IV.     SEKO Had No Administrative Remedies to Exhaust...................................................... 26

V.      Two Exhaustion Requirement Exceptions Apply............................................................ 27

        A.      Lack of Timely Access to the Confidential Record............................................. 27

        B.      Raising the Issue at the Administrative Level Would Have Been Futile ............. 28

VI.     SEKO Maintains a Property Interest in Continued Participation in the T86 Program ..... 30

CONCLUSION...................................................................................................................... 33

# **TABLE OF AUTHORITIES**

## **Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967).....................................................................12, 20

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)....................................................................................21

*Am. Customs Brokers Co. v. U.S. Customs Serv.*, 637 F. Supp. 218 (Ct. Int'l Trade 1986) .........31

*Am. Petroleum Inst. v. E.P.A.*, 683 F.3d 382 (D.C. Cir. 2012).......................................................14

*American Customs Brokers Co. v. United States Customs Serv.*, 637 F. Supp. 218 (Ct. Int'l Trade 1986)  ....................................................................................................................................................31

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ..........................................................................................10

*Barnes v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012).......................................................................31, 32

*Barry v. Barchi*, 443 U.S. 55 (1979)...................................................................................................31, 32

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972)..............................................................30

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................................................10

*Bell v. Hood*, 327 U.S. 678 (1946)........................................................................................................9

*Bennett v. Spear*, 520 U.S. 154 (1997) .........................................................................................17, 19

*Blackwell Coll. of Bus. v. Attorney General*, 454 F.2d 928 (1971)  .................................................31

*Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ...............................................10

*Clarke v. CFTC*, 74 F.4th 627 (5th Cir. 2023).................................................................................31

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) .................................................30

*Cooper v. Pate*, 378 U.S. 546 (1964)..................................................................................................10

*Corus Grp. PLC v. Int'l Trade Comm'n*, 352 F.3d 1351 (Fed. Cir. 2003) ..................................26

*Darby v. Cisneros*, 509 U.S. 137 (1993)..............................................................................................17

*Former Emples. of Quality Fabricating, Inc. v. United States DOL*, 343 F. Supp. 2d 1272 (Ct. Int'l Trade 2004) ..............................................................................................................................10

*Franklin v. Massachusetts*, 505 U.S. 788 (1992)...............................................................................17

*FTC v. Standard Oil Co.*, 449 U.S. 232 (1980) .................................................................................20

*Full Value Advisors, LLC v. S.E.C.*, 633 F.3d 1101 (D.C. Cir. 2011) ..........................................16

*Gallagher & Ascher Co. v. Simon*, 687 F.2d 1067 (7th Cir. 1982) .................................................10

*Henke v. United States*, 60 F.3d 795 (Fed. Cir. 1995 .......................................................................10

*Honig v. Doe*, 484 U.S. 305 (1988) ...............................................................................................21, 26

*Int'l Erectors, Inc. v. Wilhoit Steel Erectors and Rental Serv. et al.*, 400 F.2d 465 (5th Cir. 1968) . ...............................................................................................................................................................10

*Mallinckrodt Inc. v. United States FDA*, Civil Action No. DKC 14-3607, 2015 U.S. Dist. LEXIS 193019 (D. Md. July 29, 2015) ...................................................................................................31, 32

*McInnis-Misnor v. Maine Medical Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003) .....................................12

*Ninestar Corp. v. United States*, 687 F.Supp.3d 1308 (Ct. Int'l Trade 2024) .............26, 27, 28, 29

*Pentax Corp. v. Robison*, 125 F.3d 1457 (Fed. Cir. 1997) .............................................................9

*Pillsbury Co. v. United States*, 18 F. Supp. 2d 1034 (Ct. Int'l Trade 1998)............................10, 31

*Public Citizen, Inc. v. Fed. Energy Regul. Comm'n*, 92 F.4th 1124 (D.C. Cir. 2024) ............21, 26

*Richardson v. Town of Eastover*, 922 F.2d 1152 (4th Cir. 1991)..................................................31, 32

*Role Models Am., Inc. v. White*, 317 F.3d 327 (D.C. Cir. 2003) ...................................................19

*Soundboard Ass'n v. FTC*, 888 F.3d 1261 (D.C. Cir. 2018) ..........................................................18

*Strickland v. United States*, 32 F.4th 311 (4th Cir. 2022).................................................................30

*U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590 (2017) ...................................................19

*United States Auto Parts Network, Inc. v. United States*, 319 F. Supp. 3d 1303 (Ct. Int'l Trade 2018) ........................................................................................................................................10
*United States v. Wanxiang Am. Corp.*, 654 F. Supp. 3d 1279 (Ct. Int'l Trade 2023) ...................23
*Wally Packaging, Inc. v. United States*, 578 F. Supp. 1408 (Ct. Int'l Trade 1984).......................9
*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001) ...............................................................17

## Constitutional Provisions

United States Constitution, Amendment V.......................................................1, 10, 22, 23, 30, 31

## Statutes

6 U.S.C. § 961 ..................................................................................................................................2
5 U.S.C. 558(c) .................................................................................................................................2
5 U.S.C. § 706(2)(C).........................................................................................................................2
5 U.S.C. § 706(2)(A).........................................................................................................................1
5 U.S.C. § 551(8) ............................................................................................................................31
28 U.S.C. § 2637(d) ............................................................................................................27, 28, 29
28 U.S.C. § 1581(i)......................................................................................................................9, 10
19 U.S.C. § 1641......................................................................................................................3, 6, 24
19 U.S.C. § 1592(a) ........................................................................................................................23
19 U.S.C. §1484.......................................................................................................................3, 6, 24

## Rules

USCIT Rule 8(a)(2) .........................................................................................................................10
USCIT Rule 12(b)(1) .....................................................................................................................1, 9
USCIT Rule 12(b)(6) .....................................................................................................................1, 9

## Other Authorities

19 C.F.R. § 10.151 ...................................................................................................................3, 6, 24
19 C.F.R. § 10.153 ...................................................................................................................3, 6, 24
19 C.F.R. § 143.26(b) ..............................................................................................................3, 6, 24
Cargo Systems Messaging Service ("CSMS") 60144714 ...............................................................24
CBP, *CBP Expands 321 Data Pilot Participation* (February 16, 2023) ........................................30
CBP, *CTPAT Bulletin - Suspension Removal Appeals and Reinstatement Processes* (August 1, 2021) ................................................................................................................................................2
CBP, *E-Commerce*, June 27, 2024, https://www.cbp.gov/trade/basic-import-export/e-commerce ..
..........................................................................................................................................................24
CBP, *Test Concerning Entry of Section 321 Low-Value Shipments Through the Automated Commercial Environment (ACE) (Also Known as Entry Type 86); Republication With Modifications*, 89 Fed. Reg. 2630 (January 16, 2024) ("T86 Modification Notice")....3, 20, 24, 32
Mara Lee, CBP: *Brokers Not Responsible for Contraband, but Must Have Proper Names, Addresses, Descriptions*, International Trade Today, June 21, 2024............................................25

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, JUDGE**

SEKO CUSTOMS BROKERAGE, INC.,
                                    *Plaintiff,*
              v.

UNITED STATES,
                                    *Defendant.*

Court No. **24-cv-00097**

**NON-CONFIDENTIAL**

### PLAINTIFF'S RESPONSE IN OPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS

In accordance with Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of International Trade ("USCIT"), Plaintiff, SEKO Customs Brokerage, Inc. ("Plaintiff" or "SEKO"), hereby respectfully submits its Response in opposition to Defendant's, United States Customs and Border Protection's ("Defendant" or "CBP"), filing on July 1, 2024 ("Def.'s MTD"). In the dispositive motion section of Def.'s MTD, Defendant requests that the Court dismiss this action for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.[1] *See* ECF Nos. 35-38. However, as shown below, Plaintiff's Complaint sets out a plausible claim that Defendant's failure to provide Plaintiff with an adequate means to refute alleged third-party violations, which are unfounded in law, violates the Due Process protections of the Fifth Amendment to the United States Constitution and Administrative Procedure Act ("APA") under 5 U.S.C. § 706(2)(A). Plaintiff's Complaint also sets out a plausible claim that Defendant's decision to hold Plaintiff liable for alleged third-party

---

[1] As noted in Plaintiff's Motion for Leave to File its Reply (ECF No. 37), Defendant's July 1, 2024, filing combines two distinct sections: (1) a dispositive motion section (the Motion to Dismiss); and (2) a non-dispositive motion section (Defendant's Opposition to Plaintiff's Application For Temporary Restraining Order And Motion For Preliminary Injunction). *See* ECF Nos. 35-36. This Response only addresses the dispositive motion section of Defendant's July 1, 2024, filing.

violations and suspend Plaintiff from the Automated Commercial Environment Entry Type 86 Test ("T86") and Customs-Trade Partnership Against Terrorism ("CTPAT") programs, while placing certain unattainable conditions on reinstatement, violates the Due Process protections of the Fifth Amendment and the APA under §§ 558(c) and 706(2)(C).

## STATEMENT OF FACTS

I.     **SEKO's Longstanding Collaboration with CBP through the T86 and CTPAT Programs**

SEKO has participated in both the T86 and CTPAT programs from their inception, and the company has built a strong relationship with the agency through their collaborative efforts to modernize the *de minimis* entry filing process, facilitate the efficient movement of cargo, and ultimately secure the nation's borders. *See* Complaint at ¶¶ 28, 32; Complaint, Exhibit ("Ex.") A at ¶¶ 7 and 9; Def.'s MTD at 3.

The CTPAT program fosters a "partnership between CBP and the trade community in which CBP grants participants increased benefits…so long as participants meet certain security criteria and other requirements." Def.'s MTD at 3; *see* SAFE Port Act, P.L. 109-347, Title II, Subtitle B (Oct. 13, 2006) codified at 6 U.S.C. § 961 *et seq*. CTPAT participants are considered low-risk by CBP, which expedites cargo clearance based on the company's security profile and compliance history. *See* H.R. Conf. Rpt. No. 114-376, at 157 (2015); 6 U.S.C. §§ 961(a), 963(1)-(4); Def.'s MTD at 3. Should any of a CTPAT participant's practices fail to meet the program's minimum security standards or any other particular weaknesses in the participant's security profile be identified, CBP's CTPAT Bulletin states that a "review is almost always conducted by CTPAT prior to taking an action to suspend a Partner in order to determine how and why the breach [of CTPAT protocols] occurred." CBP, *CTPAT Bulletin - Suspension Removal Appeals and Reinstatement Processes*, at 3 (August 1, 2021).

In particular to this case, SEKO was last validated as a customs broker and consolidator as having met or exceeded CTPAT's minimum security requirements on July 7, 2021. *See* Plaintiff's Application For Temporary Restraining Order And Motion For Preliminary Injunction (ECF Nos. 8 and 21) ("Plaintiff's Motion for TRO/PI"), Ex. B at ¶¶ 12–13. Further, SEKO's CTPAT security profile was approved by CBP as of May 31, 2024, without any exceptions or compliance issues raised. *Id.* at ¶ 15.

Since 2019, SEKO has worked with CBP under the T86 program to file [█████████████ ████]] of entries yearly in accordance with all applicable statutes, regulations, and guidelines. *See* Plaintiff's Motion for TRO/PI, Ex. A at ¶¶ 9 and 11. However, instead of just functioning as a customs broker and filer when submitting T86 entries, the terms of the T86 program require that entry filers also serve as the importer of record ("IOR") for each T86 entry they file. *See* Plaintiff's Motion for TRO/PI, Ex. B at ¶ 8; *see also* CBP, *Test Concerning Entry of Section 321 Low-Value Shipments Through the Automated Commercial Environment (ACE) (Also Known as Entry Type 86); Republication With Modifications*, 89 Fed. Reg. 2630, 2633 (January 16, 2024) ("T86 Modification Notice"). Under current customs statutes and regulations for *de minimis* value entries, though, no IOR is required under any circumstances outside of the T86 environment. *See* 19 U.S.C. §§ 1484 and 1641; 19 C.F.R. §§ 10.151, 10.153, and 143.26(b).

Despite the initial "voluntary" sentiment of participation in both the CTPAT and T86 programs, both programs have now become a business necessity for customs brokers to stay competitive as the program's benefits have evolved into clients' expected minimal level of service. *See* Plaintiff's Motion for TRO/PI, Ex. A at ¶¶ 8, 13; Plaintiff's Reply In Support of Plaintiff's Application For Temporary Restraining Order And Motion For Preliminary Injunction (ECF Nos. 40 and 41), Ex. A ¶ 7. Due to improved entry filing efficiency, visibility, and speed,

participation in the T86 program has become a *de facto* industry standard for customs brokers with clients in e-commerce. *Id.* T86 program participation must be typically demonstrated as part of any bid process to obtain business and adhere to applicable service contracts. *Id.*

**II.    CBP's Suspension of SEKO's Participation in the T86 and CTPAT Programs**

On July 17, 2023, CBP conducted its first of two T86 entry audits and requested the entry documentation associated with each entry, which included [█████████████████████

███████████████████████████████████████████████████████

████████████████████████]] *See* Complaint at ¶ 36; Complaint, Ex. C; Def.'s MTD at 12. In that letter, CBP noted that the objective of conducting the judgement sample review was to "determine whether Seko Brokerage Inc is compliant with Code of Federal Regulations (C.F.R §111 subpart C) and requirements of the Section 321 Data Pilot, Federal Register Notice (FRN) 84 FR 35405" because the agency "expects all filers and self-filers to exercise reasonable care and fulfill their responsibility with the statutory limitation." *See* Complaint, Ex. C.

On September 29, 2023, CBP alleged that the agency's review of the entry documents associated with the first T86 judgement sample revealed [["███████████████████"]], although CBP failed to draw a clear nexus between this vague allegation and any particular set of facts for any of the particular entries reviewed. *See* Complaint, Ex. D; Complaint at ¶ 37. Notably, CBP failed to inform SEKO that the first judgment sample consisted entirely of merchandise that had been seized by the agency. This was only later identified in a response to the Court's request for a list of violations where seizures were finally identified per entry to SEKO on June 11, 2024.

On October 24, 2023, SEKO submitted its first detailed remedial action plan in response to CBP's alleged T86 entry filing violations. *See* Complaint, Ex. B at 3–4. However, CBP failed to issue any response to SEKO's proposed remedial actions or provide SEKO with any of the

4

facts upon which CBP claimed SEKO had committed such T86 entry filing violations including which specific entries were subject to seizure and how, if at all, SEKO was liable for those violations. *See Id.* at 4.

On January 22, 2024, CBP requested all associated documentation to review a second set of ten entries. *See* Complaint, Ex. F. Similar to the first judgement sample request, CBP's stated objective was "to determine whether Seko Customs Brokerage Inc is compliant with Part 111 of Customs Regulations and the specific requirements of the Entry Type 86 Test, published in the Federal Register at 84 FR 40079." *Id.* CBP also noted that the "[s]ubmission of a [T86 entry] requires all brokers and self-filers to exercise reasonable care and comply with all applicable statutory and regulatory requirements." *Id.* Otherwise, T86 participants could be subject to potential penalties, sanctions, or liquidated damages for, "failure to follow the rules, requirements, terms, and conditions of the test; failure to exercise reasonable care in the execution of participant obligations; and/or failure to abide by applicable laws and regulations that have not been waived." *Id.* After SEKO's submission of requested entry documentation CBP failed to issue any form of audit report to SEKO identifying violations within the second judgment sample or to provide any further specificity with regards to the first sample.

Without having issued any audit report to SEKO, CBP issued SEKO letters on May 17, 2024 ("CTPAT Suspension Letter"), and May 20, 2024 ("Type 86 Suspension Letter"), (referred to collectively hereafter as "Suspension Letters") suspending SEKO from the CTPAT and T86 programs, respectively. *See* Complaint, Exs. A and G. The CTPAT Suspension Letter specifically states that SEKO was suspended from CTPAT due to submitting [[ ███████████ ███████████ ]] *See* Complaint, Ex. A. Thus, CTPAT suspension was due to T86 violations alone, notwithstanding CBP's approval of SEKO's CTPAT security profile days later

on May 31, 2024. Further, in the T86 Suspension Letter, CBP alleged that "as importer of record, [SEKO] demonstrated a lack of exercised reasonable care sufficient to know what was being imported." *See* Complaint, Ex. G. Most notably, CBP indicated that agency [██████████

████████████████████████████████████████████████████████████████

████████]]. *See* Complaint, Ex. G. We note that SEKO was neither the owner, consignee, shipper, receiver, or purchaser of the merchandise and did not otherwise have knowledge of or control over the contents of the merchandise. We also note that SEKO was acting on behalf of the freight forwarder under a power of attorney as a grant of authority to file the entry for any of the cargo that was seized. SEKO was not acting as an agent for the shipper or recipient of the imported merchandise seized. SEKO was reported as importer of record solely for purpose of T86 prototype and no importer of record is generally required for *de minimis* entries. *See* 19 U.S.C. §§ 1484 and 1641; 19 C.F.R. §§ 10.151, 10.153, and 143.26(b). However, as noted above, CBP attributes the shipment of illicit merchandise as being "from SEKO."

On May 23, 2024, SEKO submitted correspondence to CBP requesting a delay in the suspensions until CBP provided the specific facts upon which the agency based its violation allegations. *See* Complaint, Ex. B. Since no substantive response had been received, SEKO renewed its request on May 29, 2024, because CBP continued to withhold the requested specific facts upon which the agency based its violation allegations. *See* Plaintiff's Motion For Leave To File Reply In Support Of Plaintiff's Application For Temporary Restraining Order And Motion For Preliminary Injunction (ECF No. 37), Ex. A at 2. As SEKO was continuing to suffer substantial, irreparable harm while awaiting any evidentiary proof that SEKO had committed the entry filing violations alleged by CBP, SEKO had no choice but to request relief from this Court through the initiation of this lawsuit on June 1, 2024. *See* Summons (ECF No. 1).

### III.    CBP's "Conditional" Reinstatement of SEKO into the T86 and CTPAT Programs

On May 31, 2024, CBP issued SEKO conditional reinstatements into the T86 and

CTPAT programs but continued to withhold the most substantive facts (i.e., the statutory and

regulatory basis) upon which the agency based its violation allegations. *See* Complaint, Ex. I.

Instead, CBP required not only that SEKO submit a remedial action plan to correct the alleged

violations, but that CBP first approve of SEKO's proposed actions. *See* Complaint, Ex. I. Only

with CBP's approval and "substantiating evidence of [SEKO's] successful implementation

within 30 days" would the agency "assess whether SEKO is eligible to fully resume participation

in the [T86 program] and provide a date for reinstatement." *Id.* Otherwise, SEKO could be

"resuspended from the [T86 program]" or completely "removed" from the CTPAT program. *Id.*

On June 11, 2024, only after being specifically compelled by this Court, CBP issued

SEKO a letter in which the agency alleges its suspension of SEKO from the T86 and CTPAT

programs was based on an analysis of two judgment samples of T86 entries, each consisting of

ten individual entries, as well as references to two separately noted shipments. *See* Defendant's

Response to Plaintiff's Motion for Expedited Briefing and Expedited Consideration, Ex. A (ECF

No. 30) ("Violations Letter"). While CBP cited specific entries for which T86 filing violations

were alleged in the Violations Letter, CBP failed to identify any violations of customs laws as a

result of SEKO's alleged noncompliance. *Id.* The Violations Letter also omits how SEKO failed

to exercise reasonable care.

In the Violations Letter, CBP primarily identifies seizures of contraband and vague

commodity descriptions as the sources of the alleged violations, while the agency also cites one

case of an alleged value-limit violation. *Id.* The alleged seizures of contraband are associated

with the first ten T86 entries, i.e. those contained within the first judgment sample. Accordingly,

CBP identified no further alleged seizures of contraband that was entered after SEKO submitted

its response to the first judgement sample review and implemented its first remedial action plan. *Id.*; *see also* Complaint, Ex. B. Further, CBP cited a number of commodity descriptions that were allegedly "too vague." *See* Violations Letter at 2-8. However, because CBP never stated that it had inspected such "vaguely" described cargo, CBP never proved that such descriptions were indeed incorrect or did not match the Harmonized Tariff Schedule of the United States ("HTSUS") classification provided in the T86 entry. *Id.* Thus, CBP's asserted allegations of incorrect HTSUS codes were never proven in fact leaving only seizures and the *de minimis* filing abuse – third-party fraud – as the sole proven violations listed for the subject entries. It is this third-party fraud that SEKO is being compelled to address.

Due to the lack of a clear evidentiary link between CBP's violation allegations and the entries cited as the basis for the agency's suspension decisions, on June 28, 2024, SEKO renewed its request for unconditional reinstatement into both programs or, in the alternative, a stay in the lawsuit to discuss and receive from the agency the statutory or regulatory basis upon which CBP attempts to hold SEKO liable for alleged third-party fraud now that the agency identified certain specific violations or seizures. *See* Plaintiff's Motion for Leave to File Reply In Support Of Plaintiff's Application For Temporary Restraining Order And Motion For Preliminary Injunction, Ex. A (ECF No. 37). On July 3, 2024, CBP denied this request. *See* Defendant's Response To The Court's Request, Ex. A (ECF No. 42).

On July 24, 2024, SEKO submitted a second remedial action plan to CBP in light of the alleged T86 entry filing violations identified in the Violations Letter. *See* Second Remedial Action Plan (attached hereto as Ex. A).

On August 1, 2024, SEKO conducted a meeting with CBP to review its proposed second remedial action plan. During this meeting, CBP confirmed that the Second Remedial Action Plan

had been reviewed by the agency and denied without any substantive explanation as to why SEKO should be held liable for the alleged third-party violations based on statutory or regulatory requirements concerning SEKO's role as a T86 entry filer. *See* Ex. B (attached hereto as CBP Response to Meeting on Second Remedial Action Plan). Prior to the August 1, 2024, meeting, SEKO prepared a specific list of questions highlighting the areas needed for SEKO to understand the alleged third-party violations and the basis for CBP holding SEKO liable for such violation. *See* Ex. C (attached hereto as SEKO's List of Questions for August 1, 2024, Meeting). During the meeting CBP did not substantively address any of the areas requested by SEKO and refused to discuss seizures. Consequently, CBP has yet again postponed the purported administrative proceeding without identifying any meaningful way for SEKO to conclude this process outside of judicial intervention. *See* Ex. B.

## STANDARD OF REVIEW

Where, as here, Defendant has interposed motions to dismiss under both USCIT Rules 12(b)(1) (lack of jurisdiction) and 12(b)(6) (failure to state a claim), the Court must dispose of the 12(b)(1) motion before proceeding to the 12(b)(6) motion. *Bell v. Hood*, 327 U.S. 678 (1946).

Defendant notes that "[w]here jurisdiction is challenged pursuant to USCIT Rule 12(b)(1), the burden rests on the plaintiff to establish the basis for jurisdiction." Def.'s MTD at 17 (citing *Pentax Corp. v. Robison*, 125 F.3d 1457, 1462 (Fed. Cir. 1997), *modified, in part*, 135 F.3d 760 (Fed. Cir. 1998); *Wally Packaging, Inc. v. United States*, 578 F. Supp. 1408, 1410 (Ct. Int'l Trade 1984)). In this case, Plaintiff demonstrated in its Complaint and as further explained *infra* that this Court has jurisdiction under 28 U.S.C. § 1581(i) to review CBP's unlawful enforcement actions, which caused Plaintiff substantial injury. Specifically, CBP's suspension of

SEKO from the T86 and CTPAT programs, as well as CBP holding SEKO liable for third-party violations and requiring a remedial action, arose out of "administration and enforcement" of matters concerning "revenue from imports or tonnage [and] tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i). Further, because this case involves CBP's actions as they relate to violations of the Constitution and the APA, Plaintiff has affirmed this Court's subject matter jurisdiction under 28 U.S.C. § 1581(i). *See United States Auto Parts Network, Inc. v. United States*, 319 F. Supp. 3d 1303 (Ct. Int'l Trade 2018); *Pillsbury Co. v. United States*, 18 F. Supp. 2d 1034 (Ct. Int'l Trade 1998); *see also Gallagher & Ascher Co. v. Simon*, 687 F.2d 1067 (7th Cir. 1982).

As to Rule 12(b)(6), dismissal under this rule is generally disfavored by the courts and is therefore rarely granted. *See Former Emples. of Quality Fabricating, Inc. v. United States DOL*, 343 F. Supp. 2d 1272, 1289 (Ct. Int'l Trade 2004); *see also Int'l Erectors, Inc. v. Wilhoit Steel Erectors and Rental Serv. et al.*, 400 F.2d 465, 471 (5th Cir. 1968) ("Dismissal of a claim on the basis of a bare bones pleading is a precarious disposition with a high mortality rate."). Thus, USCIT Rule 8(a)(2) requires only that the pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995); *see also Cooper v. Pate*, 378 U.S. 546 (1964); *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009). As explained *infra*, Plaintiff's Complaint contains sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Thus, this Court should not dismiss the Complaint because Plaintiff met its threshold under both Rule 12(b)(1) and Rule 12(b)(6).

## SUMMARY OF THE ARGUMENT

SEKO challenges CBP's actions to suspend it from the T86 program and the CTPAT program because the agency has concealed facts and the statutory basis used to suspend SEKO from these programs. These harms also continue under its conditional reinstatement into these programs because CBP is compelling SEKO to address violations for which the company does not hold liability or that were never proven to be violations in fact, while still depriving SEKO of any meaningful way to confer on the basis for mandating remedial action.

SEKO contends any administrative process that might have existed was concluded when CBP suspended SEKO from both T86 and CTPAT programs on May 20, 2024, and May 17, 2024, respectively. CBP made the suspension determination without any evidence presented and without affording SEKO an opportunity to be heard or present any evidence that would rebut CBP's allegations.

There was no statutory or regulatory administrative process available to SEKO to appeal its suspension from the T86 program, which also resulted in its suspension from CTPAT. In the absence of any administrative remedy, SEKO appealed CBP's decision to the USCIT by initiating this action. At that time, CBP attempted to artificially create a procedural hurdle to prevent SEKO from litigating this case by conditionally reinstating SEKO in the T86 program simultaneously creating a condition that is impossible for SEKO to comply with by requiring an unwarranted remedial action plan without any way to contest this requirement.

SEKO has repeatedly requested the agency to provide facts and the underlying statutory and regulatory basis for its actions to no avail in this matter. SEKO will prove that there is no

11

legitimate administrative process at work currently that addresses these matters thereby necessitating this Court's review.

**<u>ARGUMENT</u>**

The Court should deny Defendant's motion to dismiss because it lacks merit and because Plaintiff's claims: (1) are ripe for judicial review; (2) are not premature because Plaintiff challenged final agency action as required by the APA; (3) are not moot because there is further relief the Court can provide; and (4) are not premature because plaintiff had no administrative remedies to exhaust, or, alternatively, several exhaustion exceptions apply.

## I.      SEKO's Claims are Ripe for Judicial Review

When determining whether an issue is ripe, courts must evaluate "both the fitness of the issues for judicial review and the hardship to the parties of withholding consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). SEKO's claims are ripe for judicial review because they are "fit … for judicial review" and hardship will be caused upon SEKO if consideration is withheld. *See Abbott Labs.*, 387 U.S. at 149.

As to the "fitness of the issues for judicial review" Defendant cites to the following standard: "[T]he critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." Def.'s MTD at 20, *McInnis-Misnor v. Maine Medical Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003). In this case, SEKO's claim does not involve "uncertain and contingent events that may not occur as anticipated or may not occur at all." *Id.* In fact, SEKO's claims include an event that had already occurred and was further acted upon by CBP. First, CBP arbitrarily and capriciously suspended SEKO from both T86 and CTPAT programs. Def.'s MTD at 13-14. Subsequently, CBP arbitrarily and capriciously concluded that SEKO was liable for third-party fraud without presenting any evidence and without providing SEKO an opportunity to be heard and required

12

SEKO to develop a remedial action plan to prevent such third-party fraud (of which SEKO had no knowledge and no control over). Def.'s MTD at 14. Finally, CBP continues to hold SEKO liable for third-party fraud without any meaningful explanation or statutory or regulatory basis despite SEKO's repeated attempts to seek evidence, information, and legal basis for CBP's findings. *See* Ex. B.

Specifically, on July 25, 2024, SEKO reached out to CBP with a list of questions to accommodate the meeting between SEKO and CBP scheduled for August 1, 2024. *See* Ex. C. However, CBP provided virtually no responses. During the August 1, 2024, meeting CBP yet again refused to answer SEKO's questions about seizures, missing seizure notices, merchandise descriptions, and alleged weight discrepancies and how these alleged violations can be attributed to SEKO. CBP refused to describe what best practices SEKO can engage in to prevent third-party fraud. On August 2, 2024, CBP issued a letter acknowledging the meeting and explaining that one of the objectives of the meeting was to discuss "SEKO responsibilities to maintain sufficient controls to mitigate risk." *See* Ex. B. This is a rather bizarre statement because CBP declined to address seizures, and these were the most significant violations at issue. Thus, this is yet another action that CBP has already taken to hold SEKO liable for third-party fraud without justifying its rationale.

Defendant also argues that the administrative process is ongoing, and the Court is being drawn into this process. Def.'s MTD at 19-20. SEKO contends that the Court here is not being drawn into any legitimate ongoing administrative process. CBP has already concluded that SEKO must provide the agency with a remedial action plan as a condition to reinstatement from its initial suspension on grounds that it has unacceptably allowed specific third-party violations to occur. Def.'s MTD at 13-14.

CBP's decision to suspend and later demand a remedial action plan are final agency actions that "crytalliz[ed] its policy before that policy [was] subjected to judicial review…" *Am. Petroleum Inst. v. E.P.A.*, 683 F.3d 382, 387 (D.C. Cir. 2012). There was no statutory or regulatory administrative process available to SEKO to appeal its suspension from the T86 program or the remedial action plan requirement, which also resulted in its suspension from CTPAT. In the absence of any administrative remedy, SEKO appealed CBP's decision to the USCIT by initiating this action. At that time, CBP attempted to artificially create a procedural hurdle to prevent SEKO from litigating this case by conditionally reinstating SEKO in the T86 program simultaneously creating a condition that is impossible for SEKO to comply with, specifically, the remedial action plan to prevent third-party fraud.

CBP is now using the unlawful conditional reinstatement and remedial action plan requirement to impermissibly prevent SEKO from litigating this matter. There is no statute or regulation that permits CBP to hold SEKO liable for third-party violations without any basis, evidence, or an opportunity to be heard. This results in an unlawful artificial administrative hurdle that CBP can invoke at any time (because there is no statute or regulation governing it) and, thus, preventing SEKO from litigation this or any related matter perpetually. This is also confirmed in CBP's August 2, 2024, letter where CBP continues to hold SEKO liable for third-party fraud requiring a remedial action plan and extending the purported administrative process even further. *See* Ex. B. Again, no such administrative process is provided anywhere in the law and CBP is using such an artificial measure to prevent SEKO from litigating this matter.

Assuming, *arguendo*, that there is an administrative process to some degree, which is not the case, CBP has refused to cooperate with SEKO and refused to substantiate any of the alleged

violations for which it requires a remedial action with concrete evidence or statutory or regulatory basis to confirm that those are violations that can be attributed to SEKO.

If the violations that led to SEKO's suspension are erroneous or not violations that SEKO carries liability for, how would the current alleged administrative process allow a hearing on that matter? Indeed, CBP has already sped past that point arguing this Court should not review the basis for that action because it is discussing it with SEKO. Def.'s MTD at 20. Yet, this ignores the fact SEKO has formally requested information and challenged CBP about the requirement for a remedial action plan on two occasions and CBP has refused comment or a dialogue on this matter and refused to explain how, if at all, third-party violations can be attributed to SEKO. *See* Complaint, Ex. B; *see also* Plaintiff's Motion For Leave To File Reply In Support Of Plaintiff's Application For Temporary Restraining Order And Motion For Preliminary Injunction (ECF No. 37), Ex. A at 2. CBP's refusal to cooperate and provide explanation was once again evidenced during the August 1, 2024, meeting between SEKO and CBP.

The administrative process that CBP alleges exists already contains concrete enforcement actions and legal consequences for SEKO for which it still cannot obtain a fair and equitable hearing on. If this Court fails to act, then CBP will be allowed to assert violations and require unwarranted remedial actions unchecked without an administrative review process provided for by statute or regulation. Further, to postpone judicial review here would impose an undue harm on SEKO as it is required to impossibly address violations for which it has no control over. Thus, Plaintiff's claims involve specific unlawful acts on behalf of CBP that already occurred and continue to harm Plaintiff.

As to the "hardship to the parties of withholding consideration," Defendant claims that courts "do not consider direct hardship, but rather whether postponing judicial review would

impose an undue burden on the parties or would benefit the court." Def.'s MTD at 20; *Full Value Advisors, LLC v. S.E.C.*, 633 F.3d 1101, 1106 (D.C. Cir. 2011). Pursuant to that standard, Defendant claims the following:

> Here, postponing review until the agency has concluded its administrative process will not impose an undue burden on plaintiff because plaintiff has received its requested relief: plaintiff is currently able to participate in both CTPAT and the ET86 Test and has the information it requested from CBP to facilitate its development of a remedial plan to meet CBP's conditions of reinstatement.

Def.'s MTD at 20. In stating this, Defendant misleads the Court and completely mischaracterizes what has occurred in this case. Specifically, an undue burden has already been imposed on Plaintiff by requiring it to develop a remedial action plan that prevents third-party fraud by unrelated parties of which Plaintiff has no knowledge and no control over. Moreover, an undue burden has been imposed on Plaintiff by CBP holding it liable for third-party fraud without any statutory or regulatory basis. Finally, CBP has not provided any information to Plaintiff that would effectively facilitate its development of a remedial plan to meet CBP's unlawful conditions of reinstatement. There is nothing in the information provided to Plaintiff to date that would somehow facilitate Plaintiff's prevention of fraud committed by unrelated third parties.

Thus, postponing judicial review would impose an undue burden on Plaintiff because it is being held accountable for violations it did not commit and has no information at its disposal to develop a remedial action plan to prevent third-party fraud of which it has no knowledge and no control over.

Because SEKO's claims are both fit for judicial review and significant hardship will be caused upon SEKO if the Court's consideration is withheld, SEKO's claims are ripe for this Court's review.

## II.    SEKO Challenged Final Agency Action

CBP has taken "final action" when it decided to hold SEKO accountable for third-party fraud and require a remedial action plan. The demand for a remedial action plan is a definitive position taken by the agency which has direct legal consequences to SEKO affecting its rights and obligations. Further, CBP is not actively engaged in a legitimate administrative process with respect to this matter.

When determining whether agency action is final, two conditions must be satisfied:

First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations and internal quotation marks omitted). Defendant states that when evaluating finality, "the core question is whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties." Def.'s MTD at 22; *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992); *see also Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001).

First, CBP has already completed its decision-making process and "arrived at a *definitive* position on the issue[s]" in this case. *Darby v. Cisneros*, 509 U.S. 137, 144 (1993) (emphasis added). Specifically, CBP arbitrarily and capriciously suspended SEKO from both T86 and CTPAT programs. Def.'s MTD at 13-14. In doing so, CBP arbitrarily and capriciously took a "definitive position" that SEKO was liable for third-party fraud without presenting any evidence and without providing SEKO an opportunity to be heard and required SEKO to develop a remedial action plan to prevent such third-party fraud (of which SEKO had no knowledge and no control over). Def.'s MTD at 14. CBP continues to hold SEKO liable for third-party fraud

without any meaningful explanation or statutory or regulatory basis despite SEKO's repeated attempts to seek evidence, information, and legal basis for CBP's findings.

The government has argued that SEKO's T86 and CTPAT suspensions were temporary in the first place and therefore not the consummation of the agency's action in this matter (*see* Def's MTD at 23); however, the identification of violations used against SEKO reflects decision making that led to an agency action unchecked and unsubstantiated without SEKO given an opportunity to refute them. More importantly, the requirement for it to implement remedial action is a final decision that SEKO must take accountability for CBP's unverified legal conclusions. CBP has obfuscated any substantive review of whether the violations that led to the initial suspension were properly attributed to SEKO. The requirement to provide a remedial action plan presupposes that SEKO is in fact responsible for those violations and if it cannot address them to CBP's satisfaction, it will remain suspended from the T86 program.

Here, there is no "decision-making processes set out in an agency's governing statutes [or] regulations" which could be used to determine that "an action is properly attributable to the agency itself." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1271 (D.C. Cir. 2018). Defendant claims that its "publicly available guidance" is somehow a "'key'" in determining the finality of the agency action. Def.'s MTD at 14. This claim has no merit, because "publicly available guidance" is neither a statute nor a regulation and, at best, CBP's own preference of what the law and procedure should be. Further, as to the T86 suspension, there is not a single statute or regulation that outlines an appeal process. Thus, Defendant's attempts to refer to some vague "publicly available guidance" is nothing more than an attempt to steer this Court away from the central issue – that CBP is holding SEKO liable for third-party violations without any statutory or regulatory basis, without an opportunity to be heard, and without a legitimate appeal process.

Thus, CBP's holding SEKO liable for third-party fraud and requiring the development of a remedial action plan marked the consummation of the agency's decision-making process and was not of a merely tentative or interlocutory nature.

As to the second prong, Defendant states that courts look to whether the action has "direct and appreciable legal consequences," *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2017) (quoting *Bennett*, 520 U.S. at 178), including by "impos[ing] an obligation, deny[ing] a right, or fix[ing] some legal relationship." *Role Models Am., Inc. v. White*, 317 F.3d 327, 331-32 (D.C. Cir. 2003) (citation omitted). Def.'s MTD at 22.

CBP holding SEKO liable for third-party fraud is a "direct and appreciable legal consequences" to SEKO denying its right to be presented with evidence and legal basis and an opportunity to be heard and imposing a specific obligation to develop a remedial action plan for third-party violations of which SEKO has no knowledge and no control over.

Defendant argues that CBP's actions did not have "direct and appreciable consequences" for Plaintiff because "CBP lifted plaintiff's suspensions within days and has conditionally reinstated plaintiff into both programs" and Plaintiff is free to participate in both programs. Def.'s MTD at 24. Even though, under a threat of litigation, CBP reinstated SEKO in the T86 and CTPAT programs it did not relieve SEKO of the alleged liability for third-party fraud and the requirement for the remedial action plan. Put differently, CBP simply relabeled (reclassified) its action (from suspending SEKO to reinstating it), without affectively changing the outcome of its arbitrary and capricious decision in violation of the APA and the Fifth Amendment. Had CBP intended to truly reverse its decision, CBP should have reversed its finding that SEKO is liable for third-party fraud and should have abolished the remedial action requirement. CBP did not do so. Instead, CBP artificially reinstated SEKO into both T86 and CTPAT programs – which it

claims are intended to strengthen, improve, and secure United States border security and facilitate movement of secure cargo (*see* Def.'s MTD at 2-11) – while holding SEKO responsible for third-party fraud, essentially allowing a party whom CBP suspended just days before for being an "unacceptable compliance risk" to participate in these programs. This is a travesty, given that the parties who actually committed the fraud were not prosecuted.

Finally, under this second prong of the finality test, an agency action is also considered final if it is "definitive and has a direct and immediate … effect on the day-to-day business" of the party challenging the agency action. *FTC v. Standard Oil Co.*, 449 U.S. 232, 239 (1980) (quoting *Abbott Labs.*, 387 U.S. at 151-52 ) (internal quotations omitted). Here, CBP's arbitrary and capricious decision to suspend SEKO's participation in the T86 and CTPAT programs went beyond falsely labeling SEKO as an "unacceptable compliance risk," it substantially and irreparably harmed SEKO's business and reputation by precluding it from being able to service its e-commerce clients. *See* Def.'s MTD at 11; CBP, *Test Concerning Entry of Section 321 Low-Value Shipments Through the Automated Commercial Environment (ACE) (Also Known as Entry Type 86); Republication With Modifications*, 89 Fed. Reg. 2630 (January 16, 2024) ("T86 Modification Notice"). In particular, between May 27 and May 31, 2024, SEKO lost approximately [[███████████]] of its established business associated with filing T86 entries for customers in the e-commerce industry. *See* Plaintiff's Application For Temporary Restraining Order And Motion For Preliminary Injunction (ECF Nos. 8 and 21) at 9-10; *Id.* Ex. A at ¶ 16. Therefore, this irreparable harm to SEKO's operations presents "direct and immediate … effect on" SEKO's "day-to-day business" and future financial wellbeing. *FTC v. Standard Oil Co.*, 449 U.S. at 239 (quoting *Abbott Labs.*, 387 U.S. at 151-52 ) (internal quotations omitted).

As such, SEKO challenged final CBP action holding SEKO liable for third-party fraud and requiring a remedial action plan, which marked the consummation of the agency's action, and which resulted in direct and immediate legal consequences to SEKO.

## III.    SEKO's Claims Are Not Moot

Plaintiff has not yet received the relief it seeks from the Court and, therefore, Plaintiff's claims are not moot. In this case, the Court is yet to decide "'actual, ongoing controversies.'" *Public Citizen, Inc. v. Fed. Energy Regul. Comm'n*, 92 F.4th 1124, 1127 (D.C. Cir. 2024) (citing *Honig v. Doe*, 484 U.S. 305, 317 (1988)).

"Under [the mootness] doctrine even where litigation poses a live controversy when filed, a federal court must refrain from deciding the dispute if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Public Citizen, Inc.*, 92 F.4th at 1127 (citations and internal quotation marks omitted and alterations adopted); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.") (citation and internal quotation marks omitted).

Defendant makes an unsubstantiated claim that "[h]ere, no 'actual, ongoing controvers[y]' exists between the parties for which the court may provide relief at this time." Def.'s MTD at 26. Defendant goes on to state that Plaintiff has already received the requested relief by describing the relief sought by Plaintiff as follows:

> Plaintiff initiated this lawsuit to seek both reinstatement into CTPAT and the ET86 Test and an order requiring CBP to provide plaintiff with the facts underlying plaintiff's ET86 Test violations that formed the basis for CBP's decision to temporarily suspend Plaintiff from both CTPAT and the ET86 Test in the first instance.

21

Def.'s MTD at 26. This is not a complete and accurate description of Plaintiff's relief sought in this case. Defendant singles out and narrows Plaintiff's claims and misleads the Court as to what Plaintiff's actual and complete claims are in this matter. As such, contrary to Defendant's contention, there remains an "actual ongoing controversy … between the parties for which the court may provide relief at this time" and the dispute is, in fact, "embedded in [the] actual controversy about the plaintiffs' particular legal rights."

Specifically, SEKO pled in its Complaint (ECF Nos. 2, 19) that "CBP arbitrarily alleged T86 entry filing violations in its CTPAT Suspension Letter (issued on May 17, 2024), T86 Suspension Letter (issued on May 20, 2024), and CBP's Conditional Reinstatement Letters (issued on May 31, 2024)." Complaint, ¶ 56. Also, "SEKO has a statutory right under the APA to an opportunity to refute the allegations made using the evidence upon which CBP based its conclusions." Complaint, ¶ 62. Further, "CBP's suspension of SEKO's participation in the T86 and CTPAT programs ***and conditional reinstatement*** are fundamentally unfair and a violation of the Due Process Claus of the Fifth Amendment of the United States Constitution." Complaint, ¶ 67 (emphasis added). Finally, SEKO specifically asked the Court to enter a judgment in its favor "***fully*** reinstating SEKO into the T86 and CTPAT programs." Complaint, Request for Relief (c) (emphasis added).

Thus, Plaintiff's claims go beyond simply seeking reinstatement in the programs and facts that resulted in the suspension. Rather, Plaintiff explained that CBP's T86 entry filing violations, which included holding SEKO liable for third-party fraud and requiring to develop a remedial action plan, were arbitrary. *See* Complaint, ¶ 56. SEKO also sought an opportunity to be heard and refute the alleged violations as it is SEKO's statutory right under the APA. *See* Complaint, ¶ 62. Further, SEKO's conditional reinstatement issued by CBP, which in effect continued to hold

SEKO liable for third-party fraud, was fundamentally unfair and a violation of the Due Process Claus of the Fifth Amendment of the United States Constitution." *See* Complaint, ¶ 67. None of these issues have been addressed by the Court and, thus, there is an "actual, ongoing controversy … between the parties for which the court may provide relief at this time."

While the reinstatement does allow SEKO to resume T86 entry filings, it is being allowed to do so only under the grant that it is willing to accept liability for the third-party violations cited, which SEKO still challenges, has not had an opportunity to be heard upon or rebut in any way, and which are not and cannot be supported under the law.

The act of shipping prohibited merchandise using a fictitious description is fraud. 19 U.S.C. § 1592(a); *see also United States v. Wanxiang Am. Corp.*, 654 F. Supp. 3d 1279 (Ct. Int'l Trade 2023). As explained *supra*, entries cited in the June 11, 2024, letter from CBP to SEKO involve violations undertaken by third parties of which SEKO had no knowledge or control over, and, thus, no culpability. SEKO was never notified of the seizures or any other alleged violations when they occurred and was not issued any form of civil penalty related to this cargo. However, CBP relies on these seizures and other alleged violations to cite SEKO as an "unacceptable compliance risk" and compel SEKO to develop a remedial action plan to prevent third-party fraud it is not liable for and which it cannot possibly address. CBP has also indicated that if it is not satisfied with SEKO's remedial action plan, it can once again suspend or remove SEKO from the T86 program. Of note is that CBP has already rejected a remedial action plan provided by SEKO regarding the June 11, 2024, letter without any meaningful explanation and yet again extended the purported administrative process without providing any statutory or regulatory basis to further continue the artificial roadblock, which CBP argues prevents SEKO from litigating this matter. *See* Ex. B.

The tone of CBP action here is not to mutually discuss with SEKO opportunities to reduce the risks of fraud under the T86 program as partners in trade compliance. Rather, CBP suspended SEKO from the T86 program heavily relying on the seizures and other alleged violations resulting from third-party fraud as the basis for this action. Seizures accounted for ten of twenty total entries noted in the June 11, 2024, letter. One alleged violation was specifically attributed to the "$800 daily limit per ultimate consignee" abuse, and the remaining violations were associated with "vague descriptions" which were never proven improper through examination of the merchandise and are now even cited by CBP as acceptable descriptions under the agency's own guidelines published after the June 11, 2024, Violations Letter. *See* CBP, E-Commerce, June 27, 2024, https://www.cbp.gov/trade/basic-import-export/e-commerce; *see also* Cargo Systems Messaging Service ("CSMS") 60144714.

With regard to the alleged violation where parties abused the "$800 daily limit per ultimate consignee" ("*de minimis*"), the shippers and consignees proceeded to make such claims under the e-commerce retail platforms used to sell the merchandise. However, in this instance, CBP holds neither the shipper, consignee, or e-commerce retailer accountable, and looks to hold SEKO liable for the third-party fraud without any consequence for the so-called "bad actors" CBP should have focused upon under the law.

It appears that CBP is intending to move this liability to SEKO because SEKO has been reported on the customs entry as the importer of record. *See* Suspension Letters and Ex. B. However, there is no statutory or regulatory requirement for an importer of record to be reported on "*de minimis*" shipments. *See* 19 U.S.C. §§ 1484 and 1641; 19 C.F.R. §§ 10.151, 10.153, and 143.26(b). This requirement was artificially inserted by CBP under the T86 program solely for accomplishing an automated entry transmission. *See* T86 Modification Notice. However, it

would be unlawful for CBP to hold a T86 broker acting as an importer of record to the same standard as a traditional importer of record when the T86 broker is not the owner, purchaser, shipper, or consignee in this case; nor are they even acting on their behalf to file the entry. Had CBP intended to hold T86 brokers accountable as importers of record under the T86 program, the agency should have indicated as much in the implementing and modifying Federal Register notices for this program. It did not do so. Indeed, this is at the core of SEKO's complaint: SEKO cannot be held accountable for third-party fraud – an issue that neither the Court nor CBP addressed – and, if CBP's position is that SEKO is liable as the importer of record without any statutory or regulatory basis, there is no legitimate appeal process to challenge these allegations.

CBP's answer is likely that SEKO should resume T86 entry filing and tell the agency how it – rather than CBP – will stop the "bad actors." However, this contradicts CBP's actual stance and policy on this issue. Specifically, CBP holding SEKO liable for third-party fraud perpetrated by the shippers, consignees, and/or e-commerce platforms contradicts the very policy pronounced by CBP's e-commerce and small business branch chief, Ms. Christine Hogue, who recognized this discrepancy and stated that the agency will not hold brokers responsible for contraband inside a box when the exporter lied about its contents. *See* Mara Lee, *CBP: Brokers Not Responsible for Contraband, but Must Have Proper Names, Addresses, Descriptions*, INTERNATIONAL TRADE TODAY, June 21, 2024.

The issue of whether SEKO should be liable for and compelled to address third-party violations remains at the core of this case and was not rendered moot by virtue of SEKO being conditionally reinstated into the programs and provided a summary list of violations without any basis asserted as to how SEKO is liable for such third-party violations as a licensed customs broker. As such, Plaintiff has not yet received the relief it seeks from the Court and, therefore,

Plaintiff's claims are not moot as the Court is yet to decide "'actual, ongoing controversies'"

discussed *supra*. *Public Citizen, Inc.*, 92 F.4th at 1127 (citing *Honig*, 484 U.S. at 317).

## IV.    SEKO Had No Administrative Remedies to Exhaust

There are no statutory or regulatory administrative remedies to exhaust in this case.

Specifically, this action stems from CBP's suspension of SEKO from the T86 program alleging

that SEKO is liable for third-party violations, which also resulted in SEKO's suspension from

CTPAT. Plaintiff notes that while the T86 program suspension led to the CTPAT suspension,

CTPAT issue is only secondary with the main dispute stemming from the T86 suspension and

alleged violations. There is nothing in the law that specifically provides, implies, or suggests an

administrative remedy for CBP's decision to hold SEKO liable for third-party violations. As a

result, Plaintiff cannot be required to exhaust any further administrative remedies when none

exist here, as also concluded by this Court in *Ninestar Corp. v. United States*, 687 F.Supp.3d

1308 (Ct. Int'l Trade 2024).

Assuming, *arguendo*, administrative remedies exist, which is not the case, "the court

should [not] insist that parties exhaust their remedies before the pertinent administrative

agencies" because there is "a strong contrary reason." *Ninestar Corp.*, 687 F. Supp. 3d at 1324

(quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)). Specifically,

the requirement to provide a remedial action plan presupposes that SEKO is responsible for the

third-party violations and if it cannot address them to CBP's satisfaction, it will remain

suspended from the T86 program. As explained *supra*, CBP has not afforded SEKO an

opportunity to be heard on the issue of liability for third-party violations, has not presented any

legal basis as to how SEKO can be held liable for such violations, and has refused to engage in

any discussion with SEKO that would allow SEKO to rebut these allegations. CBP has already

determined that SEKO is liable for third-party violations and has not afforded SEKO an

opportunity to challenge this determination. As such, contrary to Defendant's assertion, this scenario clearly shows that there is "a strong contrary reason" in this case and, thus, SEKO should not be required to exhaust purported administrative remedy, which is effectively nonexistent.

**V.    Two Exhaustion Requirement Exceptions Apply**

Should this Court determine that there is a legitimate administrative remedy available by statute or regulation, and that such remedy has not yet been exhausted, which is not so, the Court should not require exhaustion pursuant to 28 U.S.C. § 2637(d) because certain exceptions apply. Specifically, "CIT has not required exhaustion pursuant to § 2637(d) under four circumstances: when (1) plaintiff's argument involves a pure question of law; (2) there is lack of timely access to the confidential record; (3) a judicial decision rendered subsequent to the administrative determination materially affected the issue; or (4) raising the issue at the administrative level would have been futile." *See Ninestar*, 687 F.Supp.3d at 1324 (citations and internal quotation marks omitted); Def's. MTD at 28. In this case, Plaintiff lacked timely access to the confidential record and raising the issue at the administrative stage would have been futile.

**A.    *Lack of Timely Access to the Confidential Record***

SEKO's lack of timely access to the confidential record, upon which CBP based its decision to hold it liable for third-party violations, is clearly evidenced by the agency's continued refusal to provide further information regarding specific transactions and underlying facts used to identify alleged T86 third-party violations. On May 23, 2024, SEKO submitted correspondence to CBP requesting a delay in the suspensions until CBP provided the specific facts upon which the agency based its violation allegations. *See* Complaint, Ex. B. Since no substantive response had been received, SEKO renewed its request on May 29, 2024, because CBP continued to withhold the requested specific facts and legal basis upon which the agency based its violation

allegations. *See* Plaintiff's Motion For Leave To File Reply In Support Of Plaintiff's Application For Temporary Restraining Order And Motion For Preliminary Injunction (ECF No. 37), Ex. A at 2. As SEKO was continuing to suffer substantial, irreparable harm while awaiting any evidentiary and legal proof that SEKO had committed the entry filing violations alleged by CBP, SEKO had no choice but to request relief from this Court through the initiation of this lawsuit on June 1, 2024. *See* Summons (ECF No. 1). On June 11, 2024, CBP issued SEKO a letter in which the agency alleges its suspension of SEKO from the T86 and CTPAT programs was based on an analysis of two judgment samples of T86 entries, each consisting of ten individual entries, as well as references to two separately noted shipments. *See* Defendant's Response to Plaintiff's Motion for Expedited Briefing and Expedited Consideration, Ex. A (ECF No. 30) ("Violations Letter"). While CBP cited specific entries for which T86 filing violations were alleged in the Violations Letter, CBP failed to identify any violations of customs laws as a result of SEKO's alleged noncompliance. *Id.* The Violations Letter does not provide any legal basis as to how SEKO can be held liable for third-party fraud and does not have any information that would allow SEKO to develop a remedial action plan to address such alleged violations.

By withholding from SEKO material information and legal basis upon which the agency based its allegations for weeks, and continuing to do so, CBP's actions directly fall within the first exhaustion requirement exception and, thus, exhaustion of the administrative remedies should not be required. *See* 28 U.S.C. § 2637(d); *Ninestar,* 687 F.Supp.3d at 1324.

**B.      *Raising the Issue at the Administrative Level Would Have Been Futile***

The second applicable exhaustion requirement exception arises out of the inherent futility of raising the issue with the agency. *Id.* In this case, appeals concerning CBP's decision to hold SEKO liable for third-party violations are not provided for in any of the applicable statutes or regulations.

Defendant continuous to mistakenly refer to the CTPAT statute as the source of administrative remedy in this case. Dft.'s MTD at 28. Of note, the CTPAT and T86 suspensions are intrinsically linked, because CBP based SEKO's suspension from the CTPAT program on alleged T86 third-party entry violations. *See* Complaint, Exs. A and G. Defendant confirms that CBP's May 17, 2024 CTPAT Suspension Letter declared that SEKO was [[████████████

████████████████████████████████████.*"]] ***specifically because*** [["████████

████████████████████████████████████████

████████████████████████████████.*"]] *Id.* at 13; Complaint, Ex. A at 1 (ECF No. 19). Accordingly, the issues in this case arise specifically under the purported third-party violations of the T86 program. Without a viable means of appealing such T86 alleged violations, any further attempt at an administrative remedy would be futile. *See* 28 U.S.C. § 2637(d); *Ninestar,* 687 F.Supp.3d at 1324.

Moreover, CBP failed to identify specific statutory or regulatory violations, as well as material facts, that can be attributed to SEKO despite SEKO's continuous requests to do so. Specifically, SEKO has asked CBP three times to identify statutory and regulatory basis that CBP relied upon to hold it liable for third-party violations, the latest being during the meeting held on August 1, 2024. *See* Ex. B; *see also* Complaint, Ex. B; *see also* Plaintiff's Motion For Leave To File Reply In Support Of Plaintiff's Application For Temporary Restraining Order And Motion For Preliminary Injunction (ECF No. 37), Ex. A at 2. However, CBP still failed to identify material facts, legal basis for alleging liability for third-party violations, and any statute or regulation that would provide for an administrative appeal under the T86 program. Put simply, CBP refused to engage in any meaningful dialogue, CBP failed to consider facts and legal

arguments presented by SEKO and refused SEKO an opportunity to be heard on the issue of third-party liability.

As such, CBP's conduct has clearly shown that raising this issue at the administrative stage is, in fact, futile, as evidenced by SEKO's multiple efforts and CBP's refusal to substantiate its actions. Thus, exhaustion of the administrative remedies should not be required.

## VI.    SEKO Maintains a Property Interest in Continued Participation in the T86 Program

SEKO has a constitutionally protected property interest under the Fifth Amendment in continued participation in the T86 program as explained in detail below. U.S. CONST. Amend. V ; *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972). Any deprivation of this right without notice and opportunity to respond to the charges violates these procedural safeguards. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532 (1985).

Fifth Amendment procedural protections attach to property interests if there is more than a "unilateral expectation of it" and a "legitimate claim of entitlement to it." U.S. CONST. Amend. V; *Strickland v. United States*, 32 F.4th 311, 348 (4th Cir. 2022) (quoting *Bd. of Regents of State Colls.*, 408 U.S. at 577[2]). Plaintiff satisfies both prongs.

Here, CBP's admittance of SEKO into the T86 program created a mutual understanding between the parties that SEKO would submit more entry data elements than required by law in exchange for expeditious processing and clearance of these *de minimis* entries under the T86 program. *See* CBP, *CBP Expands 321 Data Pilot Participation* (February 16, 2023), available at https://www.cbp.gov/newsroom/national-media-release/cbp-expands-321-data-pilot-

---

[2] Notably, "property interests are not created by the constitution, but rather are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*.

participation. Thus, participation in the T86 program is more than a unilateral expectation and SEKO has a legitimate claim to CBP's grant of participation in the T86 program.

"Moreover, courts have recognized that a government-issued permit or license 'which can be suspended or revoked only upon a showing of cause creates a property interest protected' by the Due Process Clause." *Mallinckrodt Inc. v. United States FDA*, Civil Action No. DKC 14-3607, 2015 U.S. Dist. LEXIS 193019 (D. Md. July 29, 2015) (quoting *Richardson v. Town of Eastover*, 922 F.2d 1152, 1156 (4th Cir. 1991); *Barnes v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012); *see also Barry v. Barchi*, 443 U.S. 55, 64 (1979)).

CBP's grant of participation in the T86 entry program to SEKO constitutes a license. As determined by this Court in *Am. Customs Brokers Co. v. U.S. Customs Serv.*, 637 F. Supp. 218 (Ct. Int'l Trade 1986), the grant of special entry procedures takes the form of a "license" under the APA. *See* 5 U.S.C. § 551(8) (defining "license"). In that case, this Court granted the customs broker's request for a preliminary injunction to enjoin the U.S. Customs Service from the revocation of brokers immediate delivery privileges. Multiple courts share the same understanding that a property interest in the form of a "license" vests under the APA upon the issuance of a special grant of permission. *See, e.g., Pillsbury Co. v. United States*, 18 F. Supp. 2d 1034 (Ct. Int'l Trade 1998) (ruling that by bestowing of authority on the claimant to use Exporter's Summary Procedures, CBP granted a "license," which could not be revoked without adherence to the APA and the agency's own rules); *Blackwell Coll. of Bus. v. Attorney General*, 454 F.2d 928 (1971) (revoking appellant school's approved status as a school for alien students violated due process because the status was a "valuable asset in the nature of a license which the governmental proceedings threatened to terminate"); *Clarke v. CFTC*, 74 F.4th 627 (5th Cir. 2023) (noting that a no-action letter which grants permission to avoid compliance with

administrative requirements is a "form of permission," and therefore a "license"). Similarly, in this case, CBP's grant of participation in the T86 program to SEKO takes the form of a "license" under the APA.

Further, participation in the T86 entry program can be suspended or revoked only upon a showing of cause. Specifically, the T86 Modification Notice dictates that:

> A test participant may be subject to civil and criminal penalties, administrative sanctions, or liquidated damages, as provided by law, for any of the following:
>
> (1)    Failure to follow the rules, requirements, terms, and conditions of this test;
> (2)    Failure to exercise reasonable care in the execution of participant obligations; or
> (3)    Failure to abide by applicable laws and regulations that have not been waived.

*Id.* at 2634. The Notice goes on to state that "***CBP may suspend or remove a filer*** from further participation in the [T86 program] ***based on a determination*** that that filer's participation in the test poses an unacceptable compliance risk." *Id.* (Emphasis added). It follows that participation in the T86 entry program may only be revoked upon showing (determining) that the filer's participation is "an unacceptable compliance risk." *Id.* To do so, CBP would necessarily need to show cause as to why the filer is "an unacceptable compliance risk." *Id.* To date, CBP has not made such a showing even though SEKO has already been suspended from the program and is being held liable for alleged third-party violations with a requirement to develop a remedial action plan.

Because grant of participation in T86 program is a "government-issued ... license 'which can be suspended or revoked only upon a showing of cause,'" it creates a "'property interest protected' by the Due Process Clause." *Mallinckrodt Inc.*, Civil Action No. DKC 14-3607, 2015 U.S. Dist. LEXIS 193019 (quoting *Richardson*, 922 F.2d at 1156; *Barnes*, 669 F.3d 1295; *see also Barry*, 443 U.S. at 64).

Defendant highlights SEKO's reliance on "the importance of its participation in the [T86 program] to plaintiff's business" and claims that this fact does not support creation of the property interest because it only relates to the benefit of the recipient. Def.'s MTD at 30-31. However, Defendant fails to address the key role of the T86 program in the trade industry and e-commerce overall. As previously discussed, SEKO has been a participant in the T86 program since 2019 and annually files, on average, [██████████] T86 entries. *See* Plaintiff's Motion for TRO/PI, Ex. A at ¶¶ 9 and 11. SEKO is only one of the many global participants in this program. The fact that this program has been in force for over five years and the multimillion volume of imports processed through this program indicate that the T86 program is the *de facto* standard for handling e-commerce imports into the U.S. in the trade industry. *See* Gagne Dec. at ¶ 7. Any suspension or condition placed on the participation in this program affects not only SEKO's legitimate claim of entitlement to participation in the T86 program, but the trade industry and e-commerce overall.

Accordingly, Plaintiff has a property interest in CBP's grant of participation in the T86 program and its Due Process claim must therefore be sustained.

<u>**CONCLUSION**</u>

For the reasons set forth herein, Plaintiff, SEKO Customs Brokerage, Inc., respectfully requests that this Court deny Defendant's Motion to Dismiss.

Respectfully submitted,

Dated:   August 5, 2024

_____
Eric R. Rock, Attorney

Serhiy Kiyasov
Austin J. Eighan
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff SEKO Customs*
*Brokerage, Inc.*

# Exhibit A















# Exhibit B

Exhibit C









## <u>CERTIFICATE OF COMPLIANCE</u>

I, Eric R. Rock, hereby certify that this brief complies with the 14,000 word-count limitation of the United States Court of International Trade set forth in Standard Chambers Procedure § 2(B)(1) because this brief contains 10,455 words. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

Respectfully submitted,

Dated:    August 5, 2024

Eric R. Rock, Attorney

Serhiy Kiyasov
Austin J. Eighan
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff SEKO Customs Brokerage, Inc.*

## CERTIFICATE OF SERVICE

I, Eric R. Rock, one of the attorneys for the Plaintiff, certify that a copy of the foregoing was served on all parties by filing a copy via the U.S. Court of International Trade's CM/ECF System, this Monday, August 5, 2024.

Attorney-in-Charge
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza - Room 346
Civil Division
New York, NY 10278
(212) 264-9230
civil.itfoecf@usdoj.gov

Edward F. Kenny
Senior Trial Counsel
International Trade Field Office
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-0480 or (202) 305-5216
edward.kenny@usdoj.gov

Nico Gurian
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-0583 or 9230
nico.gurian@usdoj.gov

Alexandra Khrebtukova
U.S. Customs & Border Protection
26 Federal Plaza, Suite 258
New York, NY 10278
(202) 845-6431
alexandra.khrebtukova@cbp.dhs.gov

Zachary Simmons
U.S. Customs & Border Protection
26 Federal Plaza, Suite 258
New York, NY 10278
(646) 341-2726
zachary.s.simmons@cbp.dhs.gov

Jennifer L. Petelle
U.S. Customs and Border Protection
Office of the Chief Counsel
1300 Pennsylvania Ave., NW
Washington, D.C. 20229
(202) 344-2940
jennifer.l.petelle@cbp.dhs.gov

Respectfully submitted,

Dated:   August 5, 2024

_____
Eric R. Rock, Attorney

Serhiy Kiyasov
Austin J. Eighan
Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6191 (telephone)
erock@rocktradelaw.com (e-mail)

*Counsel For Plaintiff SEKO Customs Brokerage, Inc.*

2